FRANKLIN | SOTO LLP
Joshua D. Franklin (SBN 264536)
josh@franklinsoto.law
Cheryl Dunn Soto (SBN 250892)
cheryl@franklinsoto.law
445 Marine View Avenue, Suite 300
Del Mar, California 92014
Tel: 619.872.2520
Fax: 619.566.0221

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION,

Plaintiff,

v.

IRONSHORE SPECIALTY INSURANCE COMPANY,

Defendant.

Case No: 19-CV-02369-WQH-NLS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Filed concurrently with Notice of Motion and Motion for Partial Summary Judgment; Statement of Undisputed Material Facts; Declaration of Richard Salpietra; Appendix of Exhibits]

Judge: Hon. William Q. Hayes
Courtroom: 14B
Date: May 4, 2020

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

# TABLE OF CONTENTS

I. INTRODUCTION....1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ....2

A. The Crosby's Policy ....2

B. The Avaron Lawsuit....3

C. The Crosby's Tender and Ironshore's Response....4

III. APPLICABLE LEGAL STANDARDS....5

A. Standard for Partial Summary Judgment....5

B. California Law Governing the Intepretation of Insurance Policies....6

IV. ARGUMENT ....7

A. The Allegations in the Avaron Lawsuit Triggered an Immediate Duty to Defend Under the Policy ....7

B. Ironshore Breached Its Duty to Defend The Crosby Against the Avaron Lawsuit ....9

C. Ironshore Was Not Entitled to Impose a Retention Because the Policy Does Not Clearly Condition Its Duty to Defend on Satisfaction of a Retention. ....10

V. CONCLUSION....15

# TABLE OF AUTHORITIES

## STATE RULES


Cal. Code. Civ. P. § 412.20 .......... 3, 10

Cal. Code. Civ. P. § 415.30 .......... 10


## FEDERAL RULES


Fed. R. Civ. P. 56 .......... 5, 6


## FEDERAL CASES


*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 6

*Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049 (9th Cir. 2002) .......... 7

*Braden Partners, LP v. Twin City Fire Ins. Co.*, Case No. 14-cv-01689, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017) .......... 13

*Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir.1985) .......... 6

*Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331 (9th Cir. 1985) .......... 6

*Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp.*, No. 11CV2611 JAH KSC, 2012 WL 7808097 (S.D. Cal. Sept. 28, 2012) .......... 11, 12, 14

*Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989) .......... 13

*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010) .......... 7

*McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) .......... 6

*Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998) .......... 6

*Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618 (9th Cir. 1996) .......... 6

*State of Cal. v. Campbell*, 138 F.3d 772 (9th Cir. 1998) .......... 6

*Travelers Indemnity Co. of Ct. v. Centex Homes*, No. 11-CV-03638-SC, 2015 WL 5836947 at *4-5 (N.D. Cal. Oct. 7, 2015) .......... 10

**STATE CASES**

*Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38 (1997) ................. 9

*Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500 (2001)............................... 7

*Buss v. Superior Court*, 16 Cal. 4th 35 (1997) ............................................ 7, 8, 9, 10

*Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945 (2001) ........................................................................................ 9

*Cty. of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406 (2005)..................... 7

*Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466 (2010)............. 11

*Harris v. Glens Falls Ins. Co.*, 6 Cal. 3d 699 (1972) .................................................. 7

*Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198 (2004) .......................................... 11

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) .......................... 7

*Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677 (2010)............. 11, 14

*MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635 (2003) ...................................... 6

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993).................. 7, 8, 9, 10

*Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847 (2000)........................................................................... 10

*State Farm Mut. Auto Ins. Co. v. Partridge*, 10 Cal. 3d 94 (1973) ............................. 6

*White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985)............................................... 6

## I. INTRODUCTION

This action arises out of Defendant Ironshore Specialty Insurance Company's ("Ironshore") failure to defend a lawsuit brought against its insured, Plaintiff The Crosby Estate at Rancho Santa Fe Master Association ("The Crosby"). After being sued by a neighboring community's homeowners association, The Crosby immediately tendered the defense of that lawsuit to Ironshore on June 4, 2018, pursuant to the terms of Ironshore's policy and within the policy period. In response, Ironshore dragged its feet, issued multiple denials it would later reverse, and, inexplicably, stated it *did not* have a duty to defend, contrary to the express terms of the policy. Ironshore ultimately agreed on August 20, 2018 to "provide a defense," but failed to pay a dime in defense costs until more than a year after The Crosby's tender. The undisputed facts establish Ironshore breached its duty to defend.

In addition, Ironshore erroneously required The Crosby to satisfy a $50,000 retention as a condition of Ironshore's duty to defend. While the policy does require exhaustion of a retention before Ironshore must reimburse or advance an insured's cost of defense – a separate and distinct coverage obligation – it is silent as to whether the retention applies where, as here, an insured tenders the defense of a claim and Ironshore has a duty to defend. Under applicable California law, because the Policy does not clearly advise that the duty to defend is conditioned on The Crosby's satisfaction of a retention, Ironshore owed a first-dollar defense.

Through this motion, The Crosby respectfully requests that the Court rule as a matter of law that Ironshore breached its contractual obligations by failing to provide the Crosby an immediate, first-dollar defense. The Crosby also seeks a declaration that the Policy's Retention provision does not apply where Ironshore's duty to defend, as opposed to its duty to advance defense costs, is triggered.

//

//

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Crosby's Policy.

The Crosby is the homeowners association for a residential community in Rancho Santa Fe, California. Ironshore, a Liberty Mutual Company, issued Policy Number 00208480, a Not-For-Profit Entity and Directors, Officers Liability Insurance Policy covering Policy Period July 2, 2017 – July 2, 2018 and providing a $1,000,000.00 limit of liability to The Crosby (the "Policy"). [*See* Statement Undisputed Material Facts ("UMF") No. 1] The Policy obligates Ironshore to pay "all **Loss** which [The Crosby] shall be legally obligated to pay as a result of a **Claim** . . . first made against [The Crosby] during the **Policy Period** . . . for a **Wrongful Act** . . . ." [UMF No. 2 & Ex. 1 at 008] The Policy defines the term "**Claim**" in relevant part as "a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading . . . ." [UMF No. 3 & Ex. 1 at 009] And the Policy defines "**Wrongful Act**" in relevant part as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty . . . by [The Crosby]." [UMF No. 4 & Ex. 1 at 012]

Section VI(C) of the Policy provides, in part:

> The **Insured**, and not the **Insurer**, have the duty to defend all claims, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. *The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim***. Such a tender of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. *Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend.*

[UMF No. 7 & Ex.1 at 016 (emphasis added)]

The Policy provides for a Retention in the amount of $50,000 for a "**Claim** other than an **Employment Practices Claim**," which applies to "all covered **Loss**, including **Costs of Defense**." [UMF Nos. 5, 6 & Ex. 1 at 003] The Policy does not contain language conditioning the Not-For-Profit Entity's right to tender the defense of a Claim to Ironshore, or Ironshore's duty to defend, on satisfaction of the Retention. [UMF No. 9]

**B. The Avaron Lawsuit.**

On May 25, 2018, Avaron Community Association ("Avaron") filed a complaint against The Crosby and AMS Paving, Inc. in an action styled *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association, et al*. and assigned San Diego County Superior Court Case Number 37-2018-00026012-CU-BC-NC (the "Avaron Lawsuit"). [UMF No. 10] The Avaron Lawsuit asserted causes of action against The Crosby for Intentional Tort, Breach of Contract, Nuisance, and Destruction of Property, alleging among other things that The Crosby (1) planned to remove speed bumps on Avaron's property without approval, which removal would allow The Crosby's residents to speed through the area, in turn endangering the health, welfare, and safety of Avaron's residents; and (2) instigated and caused the creation of "Operation Honk," an alleged coordinated effort through which residents of The Crosby repeatedly honked their car horns when they passed over speed bumps located on Avaron's property, infringing on Avaron's residents' quiet use and enjoyment of their property. [UMF No. 11] Avaron also filed an *ex parte* application for an injunction, which was served on The Crosby on June 6, 2018 and scheduled for hearing on June 7, 2018. [UMF Nos. 14, 17, 18]

On July 11, 2018, The Crosby executed a Notice and Acknowledgment of Receipt with respect to the Summons and Complaint for the Avaron Lawsuit. [UMF No. 21] Upon executing the Notice and Acknowledgment of Receipt for the Avaron Lawsuit, The Crosby understood a responsive pleading would be due on August 10, 2018, pursuant to California Code of Civil Procedure § 412.20(a)(3). [UMF No. 22]

On or about September 18, 2018, Avaron filed a first amended complaint. [UMF No. 26] The first amended complaint supplemented Avaron's original nuisance allegations by, among other things, alleging residents of The Crosby engaged in "organized efforts to intentionally disturb, harass and annoy the Avaron members and residents, including but not limited to throwing food and trash from their cars." [UMF No. 26]

**C. The Crosby's Tender and Ironshore's Response.**

On June 4, 2018, ten days after the Avaron Lawsuit was filed and before it was served, The Crosby tendered the defense of the Avaron Lawsuit to Ironshore through Ironshore's third-party claim administrator, York Pro, Inc. [UMF No. 15] In an email dated June 4, 2018, which attached the Avaron Lawsuit, The Crosby's counsel stated, in part:

> Pursuant to the terms of its policy, *The Crosby hereby tenders its defense* to its insurance carriers, and request [sic] that counsel be appointed within a reasonable time so that the proper responsive pleading may be filed within the time allowed by the Code of Civil Procedure. <u>It is our understanding that a TRO in this matter is scheduled for Thursday, June 7, 2018</u>. The Board will have the firm of Procopio, Hargreaves & Savitch LLP represent it at the TRO hearing if a defense attorney is not appointed in time.

[UMF No. 16 & Ex. 3 at 001 (italics added) (underscore in original)]

Ironshore first responded to The Crosby's tender on July 9, 2018, and in an email dated July 9, 2019, Ironshore's claims handler stated, in part:

> We hope to have coverage determined by the end of this week. Under the Policy, ***Ironshore does not have a duty to defend*** and the Insured has a retention. As such, the Insured can continue to use its counsel of choice pending review by Ironshore.

[UMF Nos. 19, 20 & Ex. 5 at 001 (emphasis added)]

On July 13, 2018, Ironshore denied coverage of the Avaron Lawsuit, citing the Policy's exclusions for breach of contract (Exclusion N) and damage to or destruction of property (Exclusion D). [UMF No. 23] Ironshore subsequently denied The Crosby's request for reconsideration and, on July 24, 2018, denied coverage again, citing the Policy's Pollution exclusion, among others. [UMF No. 24]

On August 20, 2018, Ironshore reversed its coverage position – specifically stating it was "not denying coverage" – and agreed to provide a defense to the Avaron Lawsuit, subject to a reservation of rights. [UMF No. 25] After Ironshore advised The Crosby it would provide a defense for the Avaron Lawsuit, it never offered to assign counsel to defend The Crosby. [UMF No. 27]. Nor did Ironshore pay for any of The Crosby's defense costs incurred in defending the Avaron Lawsuit until July 30, 2019, at which time Ironshore reimbursed only a portion of such costs at significantly reduced rates, not the actual rates paid by The Crosby. [UMF No. 28]

In August 2019, The Crosby entered into an agreement to settle the Avaron Lawsuit and Ironshore declined The Crosby's request to contribute toward the settlement. [UMF No. 30] Ironshore still has not reimbursed The Crosby for all of its defense costs incurred in defending the Avaron Lawsuit. [UMF No. 29]

# III. APPLICABLE LEGAL STANDARDS

## A. Standard for Partial Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party "may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The standard for a motion for partial summary judgment or summary adjudication is the same as for a motion for summary judgment: "the Court may grant summary adjudication upon a showing that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law." *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998) (citing Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)); *see also State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). After the moving party satisfies its initial burden of demonstrating it is entitled to summary adjudication, the burden shifts to the nonmoving party to show summary adjudication is not appropriate. *See Mora*, 16 F. Supp. 2d at 1200.

California substantive law applies to this diversity action. *See Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985). However, "[i]n diversity cases, whether an issue is one of law for the court to decide or one of fact for the jury to determine is governed by federal law." *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1335 (9th Cir. 1985). And in this insurance coverage litigation, "the interpretation of the insurance policy is a question of law for the court . . . ." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (citing *Stanford Ranch, Inc. v. Maryland Cas. Co*., 89 F.3d 618, 624 (9th Cir. 1996)).

**B. California Law Governing the Interpretation of Insurance Policies.**

"Interpretation of any insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647 (2003). "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Id*. However, insurance coverage provisions are construed broadly "to afford the greatest possible protection to the insured," whereas exclusions are construed narrowly against the insurer. *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985); *see also State Farm Mut. Auto Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-102 (1973) (same).

A policy provision is ambiguous "when it is capable of two or more constructions, both of which are reasonable." *MacKinnon*, 31 Cal. 4th at 648. If an ambiguity "is not eliminated by the language and context of the policy, courts then

will invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Cty. of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406, 415 (2005); *see also Harris v. Glens Falls Ins. Co*., 6 Cal. 3d 699, 701 (1972) (acknowledging "the settled rule that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer;" noting rule "is particularly applicable to exclusions, since the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language").

## IV. ARGUMENT

### A. The Allegations in the Avaron Lawsuit Triggered an Immediate Duty to Defend Under the Policy.

Insurers have a "very broad duty to defend" under California law. *Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). Whether an insurer "owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The duty to defend is triggered when a complaint contains allegations against the insured that are "potentially" covered by the policy – that is, where there is a "possibility" of coverage. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993); *see also Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001) (noting duty to defend "arises when the facts alleged in the underlying complaint give rise to a potentially covered claim"). "It arises as soon as tender is made." *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997).

To prevail on summary judgment on the duty to defend, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Montrose*, 6 Cal. 4th at 300; *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) ("The carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.") (quoting

*Montrose*, 6 Cal. 4th at 295) (emphasis in original). "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose*, 6 Cal. 4th at 300. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id*. at 299–300.

Here, the Avaron Lawsuit sought monetary and nonmonetary relief against The Crosby for alleged acts, omissions, and breaches of duty – "Wrongful Acts" as defined by the Policy – including (1) the planned removal of speed bumps on Avaron's property without approval, which removal would allow The Crosby's residents to speed through the area, in turn endangering the health, welfare, and safety of Avaron's residents; and (2) instigating and causing the creation of "Operation Honk," an alleged coordinated effort through which residents of The Crosby honked their car horns as they passed over speed bumps in the easement area of Avaron's property. [UMF No. 11 & Ex. 2 at 005] Avaron's complaint further alleged these acts "infringe[d] upon the quiet use and enjoyment of the residents of Avaron," and asserted causes of action for Intentional Tort, Breach of Contract, and Nuisance, among others. [UMF Nos. 11, 12] The Avaron Lawsuit was filed on May 25, 2018, within the applicable Policy Period of July 2, 2017 – July 2, 2018. [UMF Nos. 1, 10]

Accordingly, because the Avaron Lawsuit constituted a "Claim" against The Crosby first made during the Policy Period,[1] and contained allegations of "Wrongful Acts" that were, at a minimum, potentially covered under the Policy, Ironshore owed an immediate duty to defend when The Crosby tendered the defense of the Claim, as authorized by the Policy, on June 4, 2018. *See Buss v. Superior Court*, 16 Cal. 4th 35, 59 (1997) ("To defend meaningfully, the insurer must defend immediately.");

---

[1] The Policy defines "Claim," in part, to include a civil proceeding "made against any Insured seeking monetary or non-monetary relief . . . ." [UMF No. 3]

*Montrose*, 6 Cal. 4th at 295 ("The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded . . . or until it has been shown that there is *no* potential for coverage . . . .") (emphasis in original).

**B. Ironshore Breached Its Duty to Defend The Crosby Against the Avaron Lawsuit.**

The duty to defend is an immediate duty that commences upon the tender of an insured's defense. *See Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Id*. To that end, the duty "entails the rendering of a service, viz., the mounting *and funding* of a defense . . . ." *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001) (quoting *Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 58 (1997) (emphasis added); *see also Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) (same).

Here, Ironshore failed to even acknowledge the June 4, 2018 tender until July 9, 2018. [*See* UMF Nos. 19, 20] At that time, Ironshore indicated it was still evaluating coverage and, importantly, disavowed its duty to defend by misrepresenting that "[u]nder the Policy, *Ironshore does not have a duty to defend* and the Insured has a retention." [UMF No. 20 & Ex. 5 (emphasis added)] On July 13, 2018, Ironshore denied coverage of the Avaron Lawsuit. [*See* UMF No. 23 & Ex. 7] And on July 24, 2018, Ironshore rejected The Crosby's request for reconsideration and denied coverage again. [*See* UMF No. 24 & Ex. 8]

Although Ironshore purported to reverse its coverage decision through an August 20, 2018 letter stating it would provide The Crosby a defense, the letter failed to cure Ironshore's initial breach, inasmuch as it came after after a responsive

pleading to the Avaron Lawsuit was due.[2] *See Travelers Indemnity Co. of Ct. v. Centex Homes*, No. 11-CV-03638-SC, 2015 WL 5836947 at *4-5 (N.D. Cal. Oct. 7, 2015) (holding insurer breached its duty to defend and lost its right to control the defense of two actions against the insured by failing to accept tender until after insured's responsive pleadings were due). And, in any event, Ironshore failed to pay *any* defense costs until July 30, 2019, more than one year after The Crosby's tender. UMF Nos. 15, 16, 28]. Ironshore's belated payment of a small portion of defense costs, roughly a year after such costs were incurred, did not cure its breach of the duty defend. *See Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 881 (2000) (noting "a belated offer to pay the costs of defense may mitigate damages but will not cure the initial breach of duty" to defend).

In summary, Ironshore (1) failed to respond to The Crosby's June 4, 2018 tender for more than one month; (2) stated it had no duty to defend under the Policy; (3) denied coverage on July 13, 2018 and July 24, 2018; and (4) failed to pay a dime in defense costs until more than a year after the tender. [*See* UMF Nos. 19, 20, 23, 24, 28] These undisputed facts leave no doubt that Ironshore breached its duty to defend and, accordingly, The Crosby is entitled to summary adjudication of its first cause of action for breach of contract (defense costs).

### C. Ironshore Was Not Entitled to Impose a Retention Because the Policy Does Not Clearly Condition Its Duty to Defend on Satisfaction of a Retention.

Again, under California law, the duty to defend is an immediate duty. *See Montrose*, 6 Cal. 4th at 295; *Buss*, 16 Cal. 4th at 59 . On the other hand, "[t]he term

---

[2] On July 11, 2018, The Crosby executed a Notice and Acknowledgment of Receipt with respect to the Summons and Complaint for the Avaron Lawsuit. [UMF Nos. 21, 22] Consequently, The Crosby's responsive pleading was due on August 10, 2018. *See* Cal. Code. Civ. P. §§ 412.20(a)(3), 415.30(c).

'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy." *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1474 (2010) (emphasis in original). It is, therefore, difficult to reconcile a requirement that an insured fully satisfy a retention as condition of an insurer's *immediate* duty to defend a claim.

For that reason, in *Legacy Vulcan Corp. v. Superior Court*, the California Court of Appeal held "in the absence of clear policy language so providing, to require the exhaustion of a self-insured retention before an insurer will have a duty to defend would be contrary to the reasonable expectations of the insured to be provided an immediate defense in connection with its primary coverage." *Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677, 696 (2010). In other words, "a 'retained limit' or 'self-insured retention' provision in a policy providing primary coverage relieves the insurer of the duty to provide an immediate, 'first dollar' defense *only if the policy expressly so provides*." *Id.* at 682 (emphasis added); *see also Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (requiring coverage limitations be "conspicuous, plain and clear"); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured . . . .").

Similarly, in *Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp.*, No. 11CV2611 JAH KSC, 2012 WL 7808097, at *8 (S.D. Cal. Sept. 28, 2012), this Court, following *Legacy Vulcan*, held an insurer's duty to defend was not conditioned on exhaustion of the self-insured retention ("SIR") where the policy "d[id] not expressly state the SIR must be exhausted to trigger the duty to defend" – *even though* the policy stated (1) the SIR applied to "Damages and Claim Expenses resulting from any Claim" and (2) the insurance provided was "in excess of the

amount of the applicable self-insured retention of [the] Policy and any other valid insurance available to the Insured. . . ." 2012 WL 7808097, at *8.

Like *Endurance*, the Policy here contains no language expressly conditioning Ironshore's duty to defend upon the insured's satisfaction of retention. The Policy provides by default that "[t]he **Insured**, and not the **Insurer**, have the duty to defend all claims;" however, Section VI(C) also allows the insured Not-For-Profit Entity to *tender the defense* of a Claim within the first 90 days, upon which tender Ironshore must assume the duty to defend:

> The **Insured**, and not the **Insurer**, have the duty to defend all claims, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. *The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim***. Such a tender of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. *Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend*.

[UMF No. 7 & Ex. 1 at 016 (emphasis added).]

Importantly, the Policy imposes no additional conditions on an insured's right to tender the defense of a Claim. In fact, the Policy makes *no other reference to the duty to defend*. In other words, while the Policy requires the Retention to be satisfied before Ironshore is required to reimburse or advance Costs of Defense, [UMF No. 8], it is silent as to whether the Retention applies where, as here, an insured elects to tender the defense of a Claim so as to trigger Ironshore's duty to defend.

For example, Section V(A) of the Policy provides in relevant part that the Retention "shall apply to all covered **Loss**, including **Costs of Defense**." [UMF No. 6 & Ex. 1 at 015] Similarly, Section VI(F) provides in part:

> The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any **Claim**, provided such **Claim** is covered by this Policy. Any advancement shall be on the condition that:
>
> (1) the appropriate Retention has been satisfied, provided, however, that this condition shall not apply in the event of the Financial Insolvency of the Not-For-Profit Entity;

[UMF No. 8 & Ex. 1 at 016]

Notably, Section VI(F) clarifies that satisfaction of the Retention is a condition of Ironshore's obligation to "*advance*" Costs of Defense but makes no reference to Ironshore's *duty to defend* a Claim where, as here, it has contractually assumed that duty. "The duty to defend and the duty to advance defense costs are conceptually distinct[,]" *Braden Partners, LP v. Twin City Fire Ins. Co.*, Case No. 14-cv-01689, 2017 WL 63019 at *10 (N.D. Cal. Jan. 5, 2017), and, indeed, the duty to advance Costs of Defense arises in *the absence of* a duty to defend, *see Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989) (holding insurer had no duty to defend but "had a duty to pay legal expenses as they are incurred"). Thus, by stating that satisfaction of the Retention is a condition of Ironshore's advancement of Costs of Defense, the Policy does not clearly express that the duty to defend is subject to that same condition, as required by *Legacy Vulcan*.

In summary, there is no dispute here that (1) The Crosby satisfied the Policy's sole condition for tendering the defense of a Claim – that such tender be made within 90 days of providing notice of the Claim; (2) the Policy's only provision referencing Ironshore's *duty to defend* makes no mention of the Retention; and (3) the Policy describes the Retention in connection with Ironshore's *duty to advance defense costs* – the Policy's default reimbursement coverage – but does not state in any manner that the Retention must be satisfied where Ironshore is required to assume the duty to

defend. Because the Policy does not clearly advise that the duty to defend is conditioned on The Crosby's satisfaction of a Retention, Ironshore owed a first-dollar defense, which it failed to provide, in breach of its contractual duty to defend. *See Legacy Vulcan*, 185 Cal. App. 4th at 697 (holding duty to defend was not subject to the retained limit where policy "did not state that the duty to defend was limited by the retained limit in any manner"); *Endurance*, 2012 WL 7808097 at *8 (holding insurer's duty to defend was not conditioned on exhaustion of SIR even though policy provided that SIR applied to "Damages and Claim Expenses resulting from any Claim").

Accordingly, the Court should rule that The Crosby is entitled to partial summary judgment as to its Third Claim for Relief for Breach of Contract (Retention) and its Fifth Claim for Relief for Declaratory Judgment because the Policy does not clearly condition Ironshore's duty to defend on satisfaction of a retention.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## V. CONCLUSION

For the foregoing reasons, Plaintiff The Crosby respectfully requests that the Court rule as follows:

(1) The Crosby is entitled to partial summary judgment as to its First Claim for Relief for Breach of Contract (Defense Costs) due to Ironshore's breach of the duty to defend and its subsequent decision to impose a retention as a condition of its duty to defend;

(2) The Crosby is entitled to partial summary judgment as to its Third Claim for Relief for Breach of Contract (Unauthorized Retention) due to Ironshore's decision to impose a retention as a condition of its duty to defend following its initial breach of the duty to defend;

(3) The Crosby is entitled to partial summary judgment as to its Fifth Claim for Relief for Declaratory Judgment because the Policy does not clearly condition Ironshore's duty to defend on satisfaction of a retention.

Dated: March 30, 2020

Respectfully submitted,

FRANKLIN | SOTO LLP

*/s/ Joshua D. Franklin*

Joshua D. Franklin
Email: josh@franklinsoto.law
Cheryl Dunn Soto
Email: cheryl@franklinsoto.law

*Attorneys for Plaintiff The Crosby Estate at Rancho Santa Fe Master Association*