FRANKLIN | SOTO LLP
Joshua D. Franklin (SBN 264536)
josh@franklinsoto.law
Cheryl Dunn Soto (SBN 250892)
cheryl@franklinsoto.law
445 Marine View Avenue, Suite 300
Del Mar, California 92014
Tel: 619.872.2520
Fax: 619.566.0221
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION,

Plaintiff,

v.

IRONSHORE SPECIALTY INSURANCE COMPANY,

Defendant.

Case No: 19-CV-02369-WQH-NLS

**PLAINTIFF'S APPENDIX OF EXHIBITS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Judge: Hon. William Q. Hayes
Courtroom: 14B
Date: May 4, 2020

[Filed concurrently with Notice of Motion for Partial Summary Judgment; Memorandum of Points and Authorities; Statement of Undisputed Material Facts; Declaration of Richard Salpietra]

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

Plaintiff The Crosby Estate at Rancho Santa Fe Master Association ("The Crosby") hereby submits the following Appendix of Exhibits in Support of Plaintiff's Motion for Partial Summary Judgment.

| Exhibit Number | Description | Foundation |
|---|---|---|
| 1. | Ironshore Specialty Insurance Company Policy Number 00208480 | Declaration of Richard Salpietra ("Salpietra Decl.") ¶ 2 |
| 2. | May 25, 2018 Complaint filed in *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association, et al.*, San Diego County Superior Court Case Number 37-2018-00026012-CU-BC-NC (the "Avaron Lawsuit") | Salpietra Decl. ¶ 3 |
| 3. | June 4, 2018 Email Claim Tender from Richard Salpietra to York Pro, Inc. | Salpietra Decl. ¶ 5 |
| 4. | June 9, 2018 Correspondence from Samuel Conanan to Vartan Yacoubian | Salpietra Decl. ¶ 7 |
| 5. | June 9, 2018 Email Correspondence from Ashley Grater to Richard Salpietra | Salpietra Decl. ¶ 8 |
| 6. | July 11, 2018 Notice and Acknowledgment of Receipt in Avaron Lawsuit | Salpietra Decl. ¶ 9 |

| | | |
|---|---|---|
| 7. | July 13, 2018 Correspondence from Ashley Grater to The Crosby Estate at Rancho Santa Fe Master Association | Salpietra Decl. ¶ 11 |
| 8. | July 24, 2018 Correspondence from Ashley Grater to Richard Salpietra | Salpietra Decl. ¶ 13 |
| 9. | August 20, 2018 Correspondence from Tracy Lewis to Richard Salpietra | Salpietra Decl. ¶ 14 |
| 10. | September 18, 2018 First Amended Complaint filed in Avaron Lawsuit | Salpietra Decl. ¶ 15 |

Dated: March 30, 2020

Respectfully submitted,

FRANKLIN | SOTO LLP

*/s/ Joshua D. Franklin*

Joshua D. Franklin
Email: josh@franklinsoto.law
Cheryl Dunn Soto
Email: cheryl@franklinsoto.law

*Attorneys for Plaintiff The Crosby Estate at Rancho Santa Fe Master Association*

# EXHIBIT 1

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**NOTICE:**

**1. THE INSURANCE POLICY THAT YOU (HAVE PURCHASED) (ARE APPLYING TO PURCHASE) IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**
**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**
**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**
**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**
**5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**
**6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**
**7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.**
**8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO**

**HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

**Date: ______________**

**Insured: ____________**

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Policy** #: 002084803
**Expiring Policy** #: 002084802

# NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY INCLUDING EMPLOYMENT PRACTICES CLAIMS COVERAGE WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY

## DECLARATIONS

**This is a Claims Made and Reported Policy, please read it carefully. Amounts incurred as Costs of Defense shall reduce the limit of liability available to pay judgments or settlements and shall also be applied against the retention. This Policy does not provide for any duty by the Insurer to defend those Insured under the Policy.**

| | |
|---|---|
| **ITEM 1: NOT-FOR-PROFIT ENTITY NAME AND PRINCIPAL ADDRESS:**<br><br>Crosby Estate At Rancho Santa Fe<br>Del Dios Hwy<br>Rancho Santa Fe, CA 92067 | **ITEM 2: POLICY PERIOD:**<br><br>**(a) Inception Date -** July 02, 2017<br><br>**(b) Expiration Date -** July 02, 2018<br><br>at 12:01 a.m. both dates at the Principal Address in ITEM 1. |
| **ITEM 3. LIMIT OF LIABILITY** (inclusive of **Costs of Defense**):<br><br>$1,000,000 aggregate limit of liability for all Claims made or deemed made during the Policy Period. | |
| **ITEM 4. RETENTIONS:**<br><br>(a) **Claim** other than an **Employment Practices Claim**: $50,000<br><br>(b) **Employment Practices Claim**: N/A<br><br>(c) A Retention shall not apply to a Non Indemnifiable Loss. | |

**ITEM 5.**

**Premium:**

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

| | |
|---|---|
| Premium: | $18,854.00 |
| ---------------------- | ----------------- |
| Total Amount Due: | $18,854.00 |

*See Invoice for the date Premium is due and payable. Failure to pay the premium in full may result in voidance of coverage.*

**ITEM 6. FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:**

1. IRON.PN.001 (0513) OFAC Compliance Notice
2. IRON.END.ALL.016 (0317) Insurer Street Address Change
3. IRON.END.ALL.004 (0317) Service of Suit Endorsement
4. NFP.END.003 (0614) Bankruptcy Insolvency and Creditor Exclusion
5. NFP.END.010 (0614) Deletion of Coverage For Employment Practices Claims
6. NFP.END.022 (0614) Regulatory Exclusion
7. NFP.END.027 (0614) Professional Services Exclusion
8. NFP.END.052 (0615) Sexual Misconduct and Child Abuse Exclusion
9. NFP.END.053 (1111 Ed.) Specific Entity Exclusion
10. NFP.END.054 (1111 Ed.) Specific Investigation Claim Litigation Event or Act Exclusion
11. NFP.END.057 (0614) Pollution Coverage Amended (Insuring Agreement A Only)
12. NFP.END.060 (0614) Definition of Not-For-Profit Entity (Named Insured Only)
13. NFP.END.065 (0614) Community Association Management Additional Insured Endorsement
14. NFP.END.067 (0614) Bond Exclusion
15. NFP.END.081 (0614) Condo, Co-op, Homeowners Association Amendatory
16. NFP.EX.002 (1007 Ed.) Advertising Broadcasting and Publishing Exclusion
17. NFP.EX.005 (1007 Ed.) Captive Insurance Entity Exclusion
18. NFP.EX.006 (1007 Ed.) Commission Exclusion
19. NFP.EX.021 (1007 Ed.) Medical Malpractice Exclusion
20. NFP.EX.023 (1007 Ed.) Nuclear Energy Liability Exclusion
21. NFP.EX.025 (1007 Ed.) Prior Act Exclusion (Backdated)

**ITEM 7. PENDING AND PRIOR DATE:** July 02, 2014

**ITEM 8. INSURER:**

ADDRESS: c/o Ironshore Insurance Services, LLC
One State Street Plaza
8th Floor
New York, NY 10004

**ITEM 9. BROKER**
**ADDRESS:**

Karen Kutger
Wholesale Trading Co-Op Insurance Services, LLC
301 Carnegie Center, Blvd,
SUITE NO 100
Princeton, NJ 08540

**ITEM 10. SURPLUS LINES BROKER & MAILING ADDRESS:**

Marcus M Pender
The Capacity Group of Companies
One International Boulevard
3rd Floor
Mahwah, NJ 07495

The Declarations, the signed and completed **Application** and the Policy, with endorsements, will constitute the contract between the **Insured** and the **Insurer** and this Policy is not valid unless signed below by a duly authorized representative of the Insurer.

**Date:** June 30, 2017

**By:** ______________________
**Authorized Representative**

# CALIFORNIA CONSUMER SERVICES NOTICE

Your policy has been issued by:

**Ironshore Specialty Insurance Company**
**75 Federal Street**
**5th Floor**
**Boston, MA 02110**

If you are having problems, you can contact **Ironshore Specialty Insurance Company** at the following address and telephone number:

**75 Federal Street**
**5th Floor**
**Boston, MA 02110**
**(877) IRON-411**

**THE FOLLOWING ADDRESS AND TOLL-FREE TELEPHONE NUMBER ARE AVAILABLE FOR YOUR USE IN THE EVENT A SATISFACTORY SOLUTION CANNOT BE OBTAINED FROM YOUR INSURANCE AGENT OR COMPANY REGARDING ANY PROBLEMS YOU MAY EXPERIENCE:**

**THE DEPARTMENT OF INSURANCE**
**CONSUMER SERVICES**
**300 SOUTH SPRING STREET**
**LOS ANGELES, CA 90013**
**1-800-927-HELP**

# OFFEREE DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

**(new policies and renewals with no terrorism exclusion or sublimit and no premium charge)**

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you insurance for losses arising out of certain acts of international terrorism. The policy you are purchasing already includes insurance for such acts. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of the offered policy's annual premium that is attributable to insurance for acts of terrorism is: **$ -0-.**

If you have any questions about this notice, please contact your agent or broker.

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Insured Name:** Crosby Estate At Rancho Santa Fe
**Policy Number:** 002084803

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY**
**PLEASE READ THE ENTIRE POLICY CAREFULLY**

# NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY

INCLUDING EMPLOYMENT PRACTICES CLAIMS COVERAGE WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer** shown in the Declarations, including the statements made in the **Application**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and **Insurer** agree:

## SECTION I INSURING AGREEMENTS

**A.** The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against the **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, except for any **Loss** which the **Not-For-Profit Entity** actually pays as indemnification.

**B.** The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against an **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, but only to the extent the **Not-For-Profit Entity** is required or permitted by law, to the fullest extent possible, to indemnify the **Insured Person**.

**C.** The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII.

## SECTION II DEFINITIONS

**A.** "**Application**" shall mean each and every signed application submitted to the **Insurer** for consideration of insurance together with any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy.

"**Application**" shall also mean any public documents filed by the **Not-For-Profit Entity** within the past 36 months with any federal, state, local or foreign governmental entity.

**B.** **"Claim"** shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body or other written demand for monetary or non-monetary relief made against any **Insured**. However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

**C.** "**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim**, including the costs of an appeal bond, attachment bond or similar bond (but the **Insurer** shall not have any obligation to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with any **Insured**.

**D.**. "**Domestic Partners**" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Not-For-Profit Entity**.

**E.** "**Employee**" shall mean any past, present or future employee of the **Not-For-Profit Entity**, whether such **Employee** is a supervisor, co-worker or subordinate position, including any full-time, part-time, seasonal and temporary employee in their capacity as such. Any person leased to the **Not-For-Profit Entity** shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies such leased person in the same manner as is provided to its permanent employees. Any person hired by contract to perform work for the **Not-For-Profit Entity**, or who is an independent contractor for the **Not-For-Profit Entity**, shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies the person in the same manner as is provided to the permanent employees of the **Not-For-Profit Entity**.

**F.** "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future **Employee** of the **Not-For-Profit Entity** or **Outside Entity**, or any applicant for employment with the **Not-For-Profit Entity** or **Outside Entity** alleging an **Employment Practices Wrongful Act**. **Employment Practices Claim** shall also mean a **Claim** brought by any student, patient, member, customer, client or supplier of the **Not-For-Profit Entity** alleging discrimination, sexual harassment or violation of the civil rights of an individual relating to such discrimination or sexual harassment.

**G**. "**Employment Practices Wrongful Act**" shall mean:

**(1)** adverse or unfair reprimand of an **Employee**;

**(2)** denial of interview or position;

**(3)** denial of training to an **Employee**;

**(4)** derogatory or disparaging remarks to an **Employee**;

**(5)** discrimination;

**(6)** employment-related misrepresentations

**(7)** employment-related libel, slander, defamation, or invasion of privacy;

**(8)** failure to grant tenure;

**(9)** failure to provide an adequate workplace, or employment policy or procedure for **Employees**;

**(10)** imposing mandatory arbitration of an **Employment Practices Claim;**

**(11)** improper denial of time off or vacation time to an **Employee**;

**(12)** improper disciplinary action of an **Employee**;

**(13)** improper performance review of an **Employee**;

**(14)** improper transfer, change of position or change of work hours or shift of an **Employee**;

**(15)** improper treatment of an **Employee** for his/her actions as a whistleblower;

**(16)** negligent evaluation of an **Employee**;

**(17)** negligent release of medical information of an **Employee**;

**(18)** **Retaliation** against an **Employee**;

**(19)** sexual or workplace harassment of any kind;

**(20)** violation of the Equal Pay Act;

**(21**) wrongful deprivation of career opportunity of an **Employee**, including defamatory statements made in connection with an **Employee** reference;

**(22)** wrongful dismissal, discharge or termination of employment, whether actual or constructive, of an **Employee**;

**(23)** wrongful failure to promote, transfer or employ; and

**(24)** violation of an **Employee's** civil rights relating to any of the above.

**H**. "**Financial Insolvency**" shall mean the **Not-For-Profit Entity** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Not-For-Profit Entity.**

**I**. "**Insured**" shall mean an **Insured Person** and the **Not-For-Profit Entity**.

**J**. "**Insured Person**" shall mean a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Not-For-Profit Entity**), staff or faculty member (salaried or non-salaried), **Employee** or volunteer of the **Not-For-Profit Entity**. Coverage will automatically apply to all new persons who become **Insured Persons** after the inception date of this Policy.

**K. "Insurer"** shall mean the company stated in Item 8 of the Declarations.

**L**. "**Loss**" shall mean compensatory damages (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and **Costs of Defense**. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

**Loss** shall not include: **(1)** civil or criminal fines or penalties imposed by law; **(2)** taxes; **(3)** any amount for which the **Insured** is not financially liable or which is without legal recourse to the **Insured**; **(4)** employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages

orbonus compensation; **(5)** any liability or costs incurred by any **Insured** to modify any buildings or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**; or **(6)** matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**M**. "**Management Control**" shall mean: **(1)** owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a corporation, organization, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or **(2)** having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an organization, to elect, appoint or designate a majority of the Board of Directors of a corporation, organization, the management committee of a joint venture or partnership or the management board of a limited liability company.

**N**. "**Not-For-Profit Entity**" shall mean the **Not-For-Profit Entity** named in Item 1 of the Declarations and any **Subsidiary**.

**O**. "**Outside Entity**" shall mean any not-for-profit entity other than the **Not-For-Profit Entity** named in Item 1 of the Declarations and any for-profit entity but only if such for-profit entity is specifically added by written endorsement to this Policy.

**P**. "**Policy Period**" shall mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in Item 2 of the Declarations, or its earlier termination if applicable.

**Q**. "**Pollutants**" shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**R**. "**Pollution**" shall mean the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere.
**Pollution** shall also mean any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

**S**. "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are the same, related or continuous, or **Wrongful Acts** which arise from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

**T**. "**Retaliation**" shall mean a **Wrongful Act** of an **Insured** relating to or alleged to be in response to any of the following activities: **(1)** the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; **(2)** the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; **(3)** the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or **(4) Employee** strikes.

**U**. "**Subsidiary**" shall mean:

**(1)** any not-for profit entity and any for-profit organization of which the **Not-For-Profit Entity** has **Management Control** ("Controlled Entity") on or before the inception of the **Policy Period,** either directly or indirectly, through one or more other Controlled Entities;

**(2)** automatically any not-for-profit organization whose assets total less than 30% of the total consolidated assets of the **Not-For-Profit Entity** as of the inception date of this Policy which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period**, either directly or indirectly, through one or more other Controlled Entities. The **Not-For-Profit Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; or

**(3)** **a**utomatically any for-profit entity whose assets total less than 20% of the total consolidated assets of the **Not-For-Profit Entity** as of the inception date of this Policy which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period,** either directly or indirectly, through one or more other Controlled Entities. The **Not-For-Profit Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; or

**(4)** an organization which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period** (other than an organization described in paragraph (2) or (3) above), either directly or indirectly, through one or more other Controlled Entities, but only upon the condition that within 90 days of its becoming a **Subsidiary**, the **Not-For-Profit Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium or amendment of the provisions of this Policy required by the **Insurer** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Not-For-Profit Entity** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

**(5)** An organization becomes a **Subsidiary** when the **Not-For-Profit Entity** has **Management Control** of such **Subsidiary**, either directly or indirectly, through one or more of its Controlled Entities. An organization ceases to be a **Subsidiary** when the **Not-For-Profit Entity** ceases to have **Management Control** in such **Subsidiary**, either directly, or indirectly through one or more of its Controlled Entities.

**(6)** In all events, coverage as is afforded under this Policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time the **Not-For-Profit Entity** obtained **Management Control** of such **Subsidiary**, and prior to the effective time that the **Not-For-Profit Entity** no longer has **Management Control** over such **Subsidiary**.

**X**. "**Wrongful Act**" shall mean:

**(1)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by any **Insured Person** in their capacity as such with the **Not-For-Profit Entity**;

**(2)** any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Not-For-Profit Entity**;

**(3)** any matter claimed against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the request of the **Not-For-Profit Entity**; or

**(4)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by the **Not-For-Profit Entity**.

**(5)** **Wrongful Act** shall specifically include:

(a) Non-Employment Discrimination;

(b) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;

(c) libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

(d) wrongful entry or eviction or other invasion of the right of occupancy;

(e) false arrest or wrongful detention;

(f) plagiarism; and

(g) infringement of copyright or trademark or unauthorized use of title.

**SECTION III EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**A.** alleging, arising out of, based upon or attributable to:

**(1)** an **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; provided however, this exclusion shall only apply where it is finally adjudicated that such conduct occurred; or

**(2)** the deliberately fraudulent or criminal acts of an **Insured**; provided, however, this exclusion shall only apply where it is finally adjudicated that such conduct occurred.

Provided, however, for the purpose of determining the applicability of Exclusion A.(1) and (2) it is understood and agreed that the **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

**B.** alleging, arising out of, based upon or attributable to, any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

**C.** alleging, arising out of, based upon or attributable to, any pending or prior civil, criminal, administrative or investigative proceeding involving the **Not-For-Profit Entity** and/or any **Insured Person** as of the Pending and Prior date stated in Item 7 of the Declarations, or any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation underlying or alleged in such proceeding;

**D.** for any actual or alleged:

**(1)** bodily injury, sickness, disease, or death of any person;

**(2)** damage to or destruction of any tangible property, including the loss of use thereof; or

**(3)** mental anguish, emotional distress, or malicious prosecution, however, this subsection (D) (3) does not apply to an **Employment Practices Claim**.

**E.** for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

**F.** for any **Claim** arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured** to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any **Claim** seeking earned Wages because any **Employee** or purported employee was improperly classified or mislabeled as "exempt";

**G**. alleging, arising out of, based upon or attributable to, any **Wrongful Act** of any **Insured Person** serving as a director, officer, trustee, governor or employee of any entity other than the **Not-For-Profit Entity** or an **Outside Entity**, even if such service is at the direction of the **Not-For-Profit Entity**, unless otherwise endorsed on this Policy;

**H**. for any **Wrongful Act** of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; provided, however, this exclusion shall not apply to any **Employment Practices Claim**;

**I.** which is brought by or on behalf of the **Not-For-Profit Entity** or by any **Insured Person**; provided however, this exclusion shall not apply to:

**(1)** any **Employment Practices Claim** brought by an **Insured Person,** other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Not-For-Profit Entity**;

**(2)** any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this Policy;

**(3)** any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator or creditors' committee (or any assignee thereof) of the **Not-For-Profit Entity,** in any bankruptcy proceeding by or against the **Not-For-Profit Entity**;

**(4)** any **Claim** made on behalf of the **Not-For-Profit Entity** by a member, an attorney general or other such representative party unless such **Claim** is instigated and continued with the solicitation of, or assistance of, or active participation of, or intervention of, the **Not-For-Profit Entity** or any **Insured Person**;

**(5)** any **Claim** brought by any past director or officer of the **Not-For-Profit Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for the **Not-For-Profit Entity** for at least four (4) years prior to such **Claim** being first made against any person;

**(6)** any **Claim** brought by a director or officer (or equivalent position) of a **Company** formed and operating in a foreign jurisdiction against such **Company** or any **Insured Person**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

**(7)** any **Claim** brought against an **Insured Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any state, local or foreign laws.

**J.** alleging, arising out of, based upon or attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**, including but not limited to, any **Claim** for financial loss to the **Not-For-Profit Entity**, its members or its creditors;

**K.** for any **Wrongful Act** of any **Subsidiary** or the **Insured Person** of such **Subsidiary** or any entity that merges with the **Not-For-Profit Entity** or the **Insured Person** of such entity that merges with the **Not-For-Profit Entity** occurring:

**(1)** prior to the date such entity becomes a **Subsidiary** or is merged with the **Not-For-Profit Entity**;

**(2)** subsequent to the date such entity became a **Subsidiary** or was merged with the **Not-For-Profit Entity** which, together with a **Wrongful Act** occurring prior to the date such entity became a

**Subsidiary** or was merged with the **Not-For-Profit Entity**, would constitute **Related Wrongful Acts**; or

**(3)** subsequent to the date the **Not-For-Profit Entity** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary**;

**L.** which is insured in whole or in part by another valid policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise.

**M**. alleging, arising out of, based upon or attributable to any public offering of securities by the **Not-For-Profit Entity**, an **Outside Entity** or an affiliate or alleging a purchase or sale of such securities subsequent to such public offering; provided, this exclusion will not apply to the sale or offer to sell tax exempt bonds;

**N.** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not-For-Profit Entity** or any **Insured Person** under any express contract or agreement. This exclusion shall not apply to an **Employment Practice Claim** to the extent liability does not arise under an express contract or agreement;

**O**. alleging, arising out of, based upon or attributable to, any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

**SECTION IV LIMIT OF LIABILITY**

**A**. The **Insurer** shall be liable to pay **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

**B**. **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in Item 3 of the Declarations. Such **Costs of Defense** shall serve to reduce the Limit of Liability.

**C**. The liability of the **Insurer** for all **Loss** arising from any and all **Claims** first made and reported pursuant to Section VII of the Policy shall be the amount shown in Item 3 of the Declarations which shall be the maximum aggregate Limit of Liability of the **Insurer** for the **Policy Period** and Discovery Period, if applicable, regardless of the time of payment or the number of **Claims**.

**SECTION V. RETENTION.**

**A**. The Retention stated in Item 4 of the Declarations shall apply to all covered **Loss**, including **Costs of Defense**.

**(1)** The Retention specified in Item 4 of the Declarations shall apply as follows:

a. Item 4(a) Retention is applicable to **Loss** as a result of a **Claim** other than an **Employment Practices Claim**;

b. Item 4(b) Retention is applicable to **Loss** resulting from an **Employment Practices Claim**.

**B**. One Retention shall apply to **Loss** arising from each **Claim** alleging the same **Wrongful Act** or **Related Wrongful Acts**. The **Not-For-Profit Entity** shall be responsible for, and shall hold the **Insurer** harmless from, any amount within the Retention.

**C**. More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**. All such claims constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: **(1)** the earliest date on which any such **Claim** was first made; or **(2)** the earliest date on which any

such **Wrongful Act** or **Related Wrongful Act** were reported under this Policy or any other policy providing similar coverage.

**D**. For the purposes of the application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. In the event the **Not-For-Profit Entity** is unable to indemnify an **Insured Person** solely by reason of its **Financial Insolvency**, the **Insurer** shall, pursuant to the terms and conditions of Section VI.F., advance **Costs of Defense** incurred by an **Insured Person** without first requiring payment of the Retention applicable to a **Claim** covered by Insuring Agreement I.B.

The certificate of incorporation, charter or other organization documents of the **Not- For-Profit Entity**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** to the **Insured Person** to the fullest extent permitted by law.

**SECTION VI. COSTS OF DEFENSE AND SETTLEMENTS**

**A.** The **Insured** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld.

The **Insured** shall provide the **Insurer** with all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the consent of the **Insurer**, shall not be covered hereunder.

**B**. Notwithstanding Section VI. A. above, if all **Insureds** are able to settle all **Claims** that are subject to an applicable Retention for an amount that, together with the **Costs of Defense**, does not exceed the applicable Retention, the **Insured** may agree to such a settlement without the prior written consent of the **Insurer**.

**C.** The **Insured**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim**. Such a tender of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend.

**D.** The **Insurer** shall at all times have the right, but not the duty, to associate with the **Insured** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply. The **Insured** shall cooperate with the **Insurer** and provide the **Insurer** such information as it may reasonably require in the investigation, defense or settlement of any **Claim**.

**E**. If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others not insured, the **Insured** and the **Insurer** recognize that there must be an allocation between covered and uncovered **Loss**. The **Insured** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered **Loss**, taking into account the relative legal and financial exposures, and the relative benefits obtained by each **Insured** as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure. If the **Insured** and the **Insurer** are not able to come to some agreement regarding the amount of the allocation, then the **Insurer** shall pay only those amounts, excess of the applicable retention amount, which the **Insurer** deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and the above standards.

**F**. The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any **Claim**, provided such **Claim** is covered by this Policy. Any advancement shall be on the condition that:

**(1)** the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Not-For-Profit Entity**;

**(2)** any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

**(3)** the **Not-For-Profit Entity** and **Insured Person** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insured**, provided, however, if there is no such agreement, the **Insurer** shall pay, excess of the retention, what it determines fair and reasonable until such is otherwise established; and

**(4)** in the event it is finally established that the **Insurer** has no liability under thePolicy for such **Claim**, the **Not-For-Profit Entity** and **Insured Person** will repay the **Insurer** all **Costs of Defense** advanced by virtue of this provision.

**SECTION VII NOTICE OF CLAIM**

**A.** The **Insured** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim** which is made during the **Policy Period**. Such notice shall be given as soon as practicable but in no event later than thirty (30) days after the end of the **Policy Period** or Discovery Period, if applicable. If notice is provided pursuant to this Section, any **Claim** subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the prior noticed **Claim** or alleging any **Related Wrongful Act**, shall be considered related to the prior **Claim** and made at the time notice of the prior **Claim** was first provided.

**B.** If during the **Policy Period** or during the Discovery Period (if applicable) the **Not-For-Profit Entity** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Wrongful Act**, shall be considered made at the time such notice of such circumstances was given. Notice of any such subsequent **Claim** shall be given to the **Insurer** as soon as practicable.

**C**. In addition to furnishing the notice as provided in Section VII, the **Insured** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

**D**. Notice to the **Insurer** as provided in Section VII shall be given to the **Insurer** identified in, and at the address set forth in, Item 8 of the Declarations;

**SECTION VIII DISCOVERY PERIOD**

**A**. In the event the **Insurer** or the **Not-For-Profit Entity** refuses to renew this Policy, the **Not-For-Profit Entity** shall have the right, upon payment of one hundred percent (100%) of the annual premium, (or if the **Policy Period** is other than annual, one hundred percent (100%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months after the end of the **Policy Period** and reported to the **Insurer** **p**ursuant to the provisions of this Policy, but only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**. This twelve (12) month period shall be referred to in this Policy as the Discovery Period.

**B.** As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid and a written request, together with payment of the appropriate premium for the Discovery Period, must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period**.

**C.** The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the **Policy Period**.

**SECTION IX GENERAL CONDITIONS**

**A**. Cancellation or Non-Renewal

**(1)** This Policy may be cancelled by the **Not-For-Profit Entity** at any time by written notice to the **Insurer**. Upon cancellation, the **Insurer** shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX.D. wherein the entire premium for this Policy shall be deemed earned.

**(2)** This Policy may only be cancelled by the **Insurer** if the **Not-For-Profit Entity** does not pay the premium when due. The **Insurer** shall mail or deliver notice of cancellation to the **Not-For-Profit Entity** at least ten (10) days before the effective date of cancellation.

**(3)** If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Not-For-Profit Entity** with no less than sixty (60) days advance notice thereof.

**B**. Application

It is agreed by the **Not-For-Profit Entity** and the **Insured Person** that the particulars and statements contained in the **Application** and any information provided therewith (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Not-For-Profit Entity** and all **Insured Persons** that the statements in the **Application** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations. Knowledge of any **Insured Person** of a misstatement or omission in the **Application**, shall not be imputed to any other **Insured Person** for purposes of determining the validity of this Policy as to such other **Insured Person**.

**C**. Action Against the Insurer

**(1)** No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the obligation of the **Insured** to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured**, claimant and the **Insurer**.

**(2)** No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

**D**. Conversion to Run-Off Coverage

If, during the **Policy Period**, a transaction occurs wherein the **Not-For-Profit Entity** shall change to a for-profit entity or another entity gains control of the **Not-For- Profit Entity** through the ownership of more than fifty percent (50%) of the voting stock or membership interest of the **Not-For-Profit Entity**, or the **Not-For-Profit Entity** merges into another entity or consolidates with another entity such that the **Not-For-Profit Entity** is not the surviving entity, then:

**(1)** this Policy shall only apply to **Wrongful Acts** actually or allegedly committed on or before the effective date of such transaction; and

**(2)** the entire premium for this Policy shall be deemed earned as of the date of such transaction.

**E.** Outside Entity Provision

In the event a **Claim** is made against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, officers, trustees or governors

**F.** Coverage Extensions

**(1)** Lawful Spouse or Domestic Partner Provision

The coverage provided by this Policy shall also apply to the lawful spouse or **Domestic Partner** of an **Insured Person**, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of such **Insured Person**.

**(2)** Worldwide Provision

The coverage provided under this Policy shall apply worldwide. The term **Insured Person** is deemed to include individuals who serve in equivalent positions in foreign Subsidiaries.

**(3)** Estates and Legal Representatives

a. The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives or assigns of any **Insured Person** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Person**.

b. In the event a bankruptcy proceeding shall be instituted by or against the **Not-For-Profit Entity**, the resulting debtor-in-possession (or equivalent status outside the United States of America) shall be deemed to be the **Not-For-Profit Entity**, but only with respect to coverage provided under Insuring Agreements I. B. and C.

**G.** Priority of Payments

**(1)** In the event of **Financial Insolvency**, or the refusal of the **Not-For-Profit Entity** to indemnify or advance the indemnification of an **Insured Person** and there is **Loss** arising from one or more covered **Claims** for which payment is due under this Policy, the **Insurer** shall:

a. first pay such **Loss** for which coverage is provided under Section I.(A) of this Policy; then

b. with respect to whatever remaining amount of the Limit of Liability is available after payment of Section G.(1)(a) above, pay such **Loss** for which coverage is provided under any other Insuring Agreements of this Policy.

**(2)** Subject to the provisions of paragraph **(1)** above, the **Insurer** shall, at the written request of the **Not-For-Profit Entity**, delay payment of **Loss** for which coverage is provided under any Insuring Agreement other than Section I.(A) until such time as the **Not-For-Profit Entity** designates; provided the liability of the **Insurer** with respect to such delayed payment shall not be increased, and shall not include any interest as a result of such delay. The **Not-For-Profit Entity** shall provide written notice to the **Insurer** when such delayed payment shall be made. Such written notice shall be deemed consent from all **Insureds**, including all **Insured Persons**, to release such payment and the **Insurer** shall have no further obligation under this Policy with respect to such funds.

**H.** Subrogation

In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured.** The **Not-For-Profit Entity** and **Insured Person** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Person** or the **Not-For-Profit Entity**.

**I.** Dispute Resolution

In the event any dispute arises in connection with this Policy that cannot be resolved, the **Insurer** and the **Insured** shall participate in a non-binding mediation in which the **Insurer** and the **Insured** shall attempt in good faith to resolve such dispute. Either the **Insured** or the **Insurer** shall have the right to commence a judicial proceeding or, if the parties agree, a binding arbitration, to resolve such dispute. However, no judicial proceeding or arbitration shall be commenced until termination of the mediation and until at least 90 days has passed from the termination of the mediation. Each party will bear its own legal fees and expenses. The costs and expenses of a mediation, or an arbitration, shall be split equally by the parties.

**J.** Assignment

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**K.** Conformity to Statute

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**L.** Entire Agreement

By acceptance of this Policy, the **Insured** and the **Insurer** agree that this Policy (including the Declarations, Application submitted to the **Insurer** and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**M.** Corporation Represents Insured

By acceptance of this Policy, the **Not-For-Profit Entity** shall be designated to act on behalf of all **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.** Representative of the Insurer

Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004 shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of **Claims** shall be given pursuant to Section VII. of the Policy.

**O.** Service of Suit

In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer** at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States. Nothing in this condition constitutes or shall be understood to constitute a waiver of the right of the **Insurer** to commence an action in any court of competent jurisdiction within the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in any such suit may be made upon Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004. In any suit instituted against the **Insurer** upon this Policy the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this Policy, and hereby designates the above named Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004 as the entity to whom said officer is authorized to mail such process or a true copy thereof.

**P**. Bankruptcy

Bankruptcy or insolvency of the **Not-For-Profit Entity** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this Policy.

**Q**. Headings

The descriptions in the headings of this Policy form no part of the terms and conditions of the coverage under this Policy.

Ironshore Specialty Insurance Company by:

Secretary

President

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 1

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

# OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 2

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSURER STREET ADDRESS CHANGE

There is no change in the mailing address or telephone number shown above.

It is hereby understood and agreed that the street address of the Insurer's main administrative office is changed to:

28 Liberty Street, 5th Floor
New York, NY 10005

The street address for delivery of any Notice to Insurer, Representative of the Insurer and Notice of Claim reporting is changed to:

c/o Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
New York, NY 10005

The street address for the Service of Process/Suit provision in this policy is changed to:

c/o Ironshore Insurance Services LLC.
28 Liberty Street, 4th Floor
New York, NY 10005

For the purposes of this endorsement:

1. "Insurer" means the "Insurer", "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

2. "Notice of Claim reporting" means any "notice of claim/circumstance", "notice of loss", "notice of wrongful act", or other such reference in the policy designated for the reporting of claims, loss, acts, occurrences or situations that may give rise or result in loss under this policy.

3. "Policy" means the policy, bond or other insurance product to which this endorsement is added.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

| | |
|---|---|
| Authorized Representative | June 30, 2017<br>Date |

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 3

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT ENDORSEMENT

It is hereby understood and agreed as follows:

SERVICE OF SUIT

In the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States. Nothing in this condition constitutes or shall be understood to constitute a waiver of the right of the Insurer to commence an action in any court of competent jurisdiction within the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in any such suit may be made upon Ironshore Insurance Services LLC., 28 Liberty, 4th Floor, New York, NY 10005. In any suit instituted against the Insurer upon this Policy the Insurer will abide by the final decision of such court or of any appellate court in the event of any appeal.

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy, and hereby designates the above named Ironshore Insurance Services LLC., 28 Liberty, 5th Floor, New York, NY 10005 as the entity to whom said officer is authorized to mail such process or a true copy thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 4

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BANKRUPTCY, INSOLVENCY AND CREDITOR EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is understood and agreed that **Section III Exclusions** is amended to include the following exclusions:

**1.** alleging, arising out of, based upon, or attributable to:

(i) any **Wrongful Act** which is alleged to have led to or caused, directly or indirectly, wholly or in part, the bankruptcy or insolvency of the **Not-For-Profit Entity**, or to the **Not-For-Profit Entity** filing a petition, or a petition being filed against the **Not-For-Profit Entity**, pursuant to the federal Bankruptcy Code or any similar state law, or the **Not-For-Profit Entity** assigning its assets for the benefit of its creditors; or

(ii) the **Not-For-Profit Entity** having sustained a financial loss due, directly or indirectly, wholly or in part, to a **Wrongful Act** of the **Insured**, but only if such **Claim** is made after the **Not-For-Profit Entity** has been determined to be insolvent, or has filed a petition for bankruptcy, or a petition has been filed against it, or the **Not-For-Profit Entity** has assigned its assets for the benefit of its creditors; or

**2.** brought by or on the behalf of any creditor or debt-holder of the **Not-For-Profit Entity**, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to a **Claim** alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or a **Claim** alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the **Not-For-Profit Entity**.

**3.** brought by or on the behalf of any creditor or debt-holder of the **Not-For-Profit Entity**, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to a **Claim** alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or a **Claim** alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the **Not-For-Profit Entity**.

It is further understood and agreed that **Section III Exclusions**, **I.** shall be deleted in its entirety and replaced with the following:

**I**. which is brought by or on behalf of the **Not-For-Profit Entity** or by any **Insured Person**; provided however, this exclusion shall not apply to:

**(1)** any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Not-For-Profit Entity**;

**(2)** any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this Policy;

**(3)** any **Claim** made on behalf of the **Not-For-Profit Entity** by a member, an attorney general or other such representative party unless such **Claim** is instigated and continued with the solicitation of, or assistance of, or active participation of, or intervention of, the **Not-For-Profit Entity** or any **Insured Person**;

**(4)** any **Claim** brought by any past director or officer of the **Not-For-Profit Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for the **Not-For-Profit Entity** for at least four (4) years prior to such **Claim** being first made against any person;

**(5)** any **Claim** brought by a director or officer (or equivalent position) of a Not-For-Profit Entity formed and operating in a foreign jurisdiction against such Not-For-Profit Entity any **Insured Person**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

**(6)** any **Claim** brought against an **Insured Person** arising out of or based upon any protected activity specified in any “whistleblower” protection pursuant to any state, local or foreign laws.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 5

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DELETION OF COVERAGE FOR EMPLOYMENT PRACTICES CLAIMS

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Employment Practices Claim** made against any **Insured**.

It is further understood and agreed that **Section I Insuring Agreements** is deleted its entirety and replaced with the following:

**Section I Insuring Agreements**

A. The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** first made against the **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, except for any **Loss** which the **Not-For-Profit Entity** actually pays as indemnification.

B. The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** first made against an **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, but only to the extent the **Not-For-Profit Entity** is required or permitted by law, to the fullest extent possible, to indemnify the **Insured Person**.

C. The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII.

It is further understood and agreed that **Section II Definitions**, **B**. "**Claim**" is deleted in its entirety and replaced with the following:

**B.** "**Claim**" shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a

complaint or similar pleading, the return of an indictment, or the receipt or the filing of a notice of charges or similar document, or other written demand for monetary or non-monetary relief made against any **Insured**. However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

It is further understood and agreed that **Section II Definitions**, **X**. "**Wrongful Act**" is deleted in its entirety and replaced with the following:

**X**. "**Wrongful Act**" shall mean:

**(1)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in their capacity as such with the **Not-For-Profit Entity**;

**(2)** any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Not-For-Profit Entity**;

**(3)** any matter claimed against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the request of the **Not-For-Profit Entity**; or

**(4)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Not-For-Profit Entity**.

**(5)** **Wrongful Act** shall specifically include:

(a) Non-Employment Discrimination;

(b) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;

(c) libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

(d) wrongful entry or eviction or other invasion of the right of occupancy;

(e) false arrest or wrongful detention;

(f) plagiarism; and

(g) infringement of copyright or trademark or unauthorized use of title.

It is further understood and agreed that all references in the Policy to "**Employment Practices Claim**" and "**Employment Practices Wrongful Act**" shall be deleted, except the definitions of each term set forth in **Section II**, **I**. and **J**. respectively, solely for purposes of the terms and conditions of this endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 6

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REGULATORY EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

alleging, arising out of, based upon, or attributable to any violation of any local, state or federal administrative or regulatory statute, code, rule or regulation, or procedure as well as any **Claim** brought by any local, state or federal governmental body and/or any agency or subdivision thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 7

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

> alleging, arising out of, based upon or attributable to the **Not-For-Profit Entity's** or any **Insured Person's** performance of or failure to perform professional services for others, or any act, error or omission relating thereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 8

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed the following exclusion is added to Section III. Exclusions:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

Section II. Definitions is amended to include the following definition:

"**Sexual Misconduct**" means any lewd, lascivious, licentious, immoral or sexual behavior, sexual conduct, sexual abuse, sexual assault, sexual act or molestation of any kind, intended or unintended, that does or may lead to or culminate in any sexual act against any individual(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 9

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIC ENTITY EXCLUSION

It is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** brought by or on behalf of or made against any entity listed below and/or any director, officer, partner, management committee member or member of the Board of Managers or employee of any entity listed below:

1. Crosby National Golf Club (including any subsidiary or affiliate thereof)
2. Starwood Hotels & Resorts Worldwide, Inc. (including any subsidiary or affiliate thereof)
3. Escalante Crosby National, L.P. (including any subsidiary or affiliate thereof)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

______________________________ June 30, 2017
Authorized Representative Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 10

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION

It is hereby understood and agreed that, without limiting the effectiveness of exclusions B or C of the Policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**, notice, event, investigation or action referred to below (hereinafter "Event"); the prosecution, adjudication, settlement, disposition, resolution or defense of any Event; any **Claim** arising from an Event; or any **Claim** alleging the same Wrongful Act or Related Wrongful Acts, or any fact, circumstance or situation in any way relating to any Event.

EVENT :

EVENT

| Claim Number | Claimant Name | Date of Loss | Loss Type | Status |
|---|---|---|---|---|
| LXCM-0329A2 | Avaron Community Association | 7/3/2009 | Negligent Acts & Ommissions | Closed |
| LXCM-0465A2 | Salatino, Randell | 1/22/2010 | Claimant alleges damage to his property due to faulty storm drain | Closed |
| 965-593-695 | Avaron Community Association | 3/30/2010 | Other Issues | Closed |
| 965-598-395 | Starwood Developemtn, Et Al | 11/16/2011 | HOA | Closed |
| 965-602-725 | Crosby National Golf Club | 7/3/2013 | Breach of bylaws/rule/reg | Open |
| LXCM-0308A9 | Crosby Estates, the J.D. Richardson Company | 1/22/2010 | Slope failure due to storm drain malfuntion | Closed |
| 5759 | Avaron Community Association | 7/9/2009 | For Record Only – Negligent Acts Omissions | Record Only |
| 537510268 | Club, The Crosby National Goldf | 9/6/2013 | Intentional Interference & Breach of Contract | Closed |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

| | |
|---|---|
| Authorized Representative | June 30, 2017<br>Date |

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 11

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTION COVERAGE AMENDED (INSURING AGREEMENT A ONLY)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed as respects any **Claim** under **Insuring Agreement** A. of this Policy only, this Policy is amended as follows:

1. **Section II Definitions** is amended to include the following definitions:

   **aa.** "**Cleanup**" means to test for, monitor, clean up, remove, contain, treat, neutralize, detoxify or assess the effects of **Pollutants**.

   **bb.** "**Cleanup Costs**" means expenses (and legal and professional fees) incurred in **Cleanup**.

   **cc.** "**Continuity Date**" means the effective date of this endorsement.

   **dd.** "**Governmental Authority**" means any federal, state or local authority, agency or body in the United States of America, its territories or possessions or any political subdivision thereof, other than the Securities and Exchange Commission, Commodities Futures Trading Commission or any other authority which regulates securities or commodities markets.

   **dd.** "**Pollution Condition**" means the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** into or upon, or the presence of **Pollutants** in or upon land, the atmosphere or any watercourse or body of water.

2. **Section III Exclusions** is amended as follows:

   (a) Paragraph **J.** is amended to include the following paragraphs at the end of thereof:

   This exclusion shall not apply to any non-indemnifiable **Loss** arising from a **Claim** made against an **Insured Person**, other than non-indemnifiable **Loss** constituting **Cleanup Costs**, but only if such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured** or the **Not-For-Profit Entity**, or any affiliate of the **Not-For-Profit Entity**.

Further provided that for the purposes of the applicability of the coverage provided for a **Claim** under **Insuring Agreement** A., the **Not-For-Profit Entity** will be conclusively deemed to have indemnified the **Insured Persons** to the fullest extent that the **Not-For-Profit Entity** is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract or the Charter or By-laws of the **Not-For-Profit Entity** (which are hereby deemed to adopt the broadest provisions of the law which determines or defines such rights of indemnity). The **Not-For-Profit Entity** hereby agrees to indemnify the **Insured Persons** to the fullest extent permitted by law including the making in good faith of any required application for court approval. In no event shall this endorsement be construed to apply to any **Claim** in which the **Not-For-Profit Entity** has indemnified or is permitted or required to indemnify the **Insured Persons**.

(b) It is further understood and agreed that solely in regard to the coverage provided by this endorsement, **Section III Exclusions** shall be amended to include the following exclusions:

**aa.** alleging, arising out of, based upon, or attributable to the liability of others for a **Pollution Condition** assumed by the **Not-For-Profit Entity** or any **Insured** under any contract or agreement unless such liability would attach in the absence of such contract or agreement;

**bb.** alleging, arising out of, based upon or attributable to: (1) asbestos or asbestos-containing materials, or (2) acid rain conditions;

**cc.** for **Cleanup** of **Pollutants** or to recover **Cleanup Costs**;

**dd.** alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

**(1)** any **Wrongful Act** occurring or **Pollution Condition** existing prior to the **Continuity Date** if as of the **Continuity Date**, the **Not-For-Profit Entity**, any **Insured** or any **Employee** of the **Not-For-Profit Entity** with managerial responsibilities over environmental affairs, control or compliance, knew or could reasonably have foreseen that such **Pollution Condition** or **Wrongful Act** could give rise to any **Claim** against the **Not-For-Profit Entity** or any director, officer or **Employee** thereof; or

**(2)** any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was listed on the United States Environmental Protection Agency's Comprehensive Environment Response Compensation and Liability Information System ("CERCLIS") or final or proposed National Priorities List or any similar system or list maintained by a **Governmental Authority**.

3. The coverage provided by this endorsement is specifically excess over any other valid or collectible insurance, and shall only drop down and become primary insurance in the event of exhaustion of such other insurance due to losses paid thereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 12

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEFINITION OF NOT-FOR-PROFIT ENTITY AMENDED (NAMED INSURED ONLY COVERAGE)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section II Definitions, N.** "**Not-For-Profit Entity**" is deleted in its entirety and replaced with the following:

**N.** "**Not-For-Profit Entity**" shall mean solely the **Not-For-Profit Entity** named in ITEM 1 of the DECLARATIONS.

It is further understood and agreed that **Section III Exclusions** is amended to add the following exclusion:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** which is made or brought by or on the behalf of any **Subsidiary** or any directors or officers thereof or any employees thereof or which is brought by any member, securities holder, an attorney general or other such representative party of any **Subsidiary**, whether directly, derivatively or by class action, unless such **Claim** is instigated and continued totally without the solicitation of, or assistance of, or intervention of, any **Insured Person**, the **Not-For-Profit Entity**, any **Subsidiary** or any directors or officers or employees of such **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 13

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMUNITY ASSOCIATION MANAGEMENT ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

1. It is hereby understood and agreed that the **Community Association Management Organization** named in paragraph 5. below shall be considered an **Insured** with respect to **Claims** (excluding **Employment Practices Claims**) otherwise covered by the Policy but only in accordance with paragraph 4. of this endorsement.

2. For purposes of this endorsement, the term **Community Association Management Organization** means only the entity named in paragraph 5. below and only to the extent that said entity provides real estate property management services to the **Not-For-Profit Entity** pursuant to a written contract with the **Non-For-Profit Entity**, but only in its capacity as property manager for the **Not-For-Profit Entity** and only in connection with property management services for the **Not-For-Profit Entity** that are enumerated in the written contract between the **Community Association Management Organization** and the **Not-For-Profit Entity** describing such property management services.

3. For the avoidance of doubt, coverage is not afforded to the **Community Association Management Organization** for **Employment Practices Claims** or for **Employment Practices Wrongful Acts** alleged to have been committed by the **Community Association Management Organization** or by any of its employees.

4. Coverage as is afforded under this endorsement with respect to any **Claim** made against a **Community Association Management Organization** shall apply only to the extent that:

   (i) such **Claim** relates to a **Wrongful Act** committed or allegedly committed by an **Insured** other than a **Community Association Management Organization**; and

   (ii) an **Insured**, other than a **Community Association Management Organization**, is and remains as a co-defendant in the **Claim** against the **Community Association Management Organization**.

5. **Community Association Management Organization:** Keystone Pacific Property Management, Inc.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 14

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BOND EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

> alleging, based upon, arising out of or attributable to the failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 15

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDOMINIUM, COOPERATIVE, HOMEOWNERS ASSOCIATION AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that this Policy is amended as follows:

I. AMENDMENTS TO DEFINITIONS

A. **Section II Definitions**, **E.** "**Employee**" is deleted in its entirety and replaced with the following:

"**Employee**" shall mean any past, present or future employee of the **Not-For-Profit Entity**, whether such **Employee** is a supervisor, co-worker or subordinate position, including any part-time, seasonal and temporary employee in their capacity as such. Any person leased to the **Not-For-Profit Entity** shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies such leased person in the same manner as is provided to its permanent employees. Any person hired by contract to perform work for the **Not-For-Profit Entity**, or who is an independent contractor for the **Not-For-Profit Entity**, shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies the person in the same manner as is provided to the permanent employees of the **Not-For-Profit Entity**. Provided, however, coverage as is afforded under this endorsement with respect to a **Claim** made against an independent contractor shall only apply if such **Claim** is also made and continuously maintained against the **Not-For-Profit Entity**.

It is further understood and agreed that the coverage provided by this endorsement for independent contractors and leased employees shall not apply to any **Claim** occurring at any time when the independent contractor or leased employee was not contracted to perform work for the **Not-For-Profit Entity**.

B. **Section II Definitions**, **F.**"**Employment Practices Claim**" is deleted in its entirety and replaced with the following:

"**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future **Employee** of the **Not-For-Profit Entity** or **Outside Entity**, or any applicant for employment with the **Not-For-**

**Profit Entity** or **Outside Entity** alleging an **Employment Practices Wrongful Act**. **Employment Practices Claim** shall also mean a **Claim** brought by any customer, supplier, invitee, potential renter or purchaser of apartments or units of the of the **Not-For-Profit Entity,** alleging discrimination, sexual harassment or violation of the civil rights of an individual relating to such discrimination or sexual harassment.

C. **Section II Definitions**, **L**. "**Loss**" shall be amended to include any "Excess Benefit" penalty assessed in the amount of ten percent (10%) by the Internal Revenue Service ("IRS") against any **Insured** for the involvement of management in the award of an Excess Benefit and the **Costs of Defense** attributable thereto. **Loss** shall specifically exclude: (1) any twenty-five percent (25%) penalty assessed by the IRS against an **Insured** deemed to have received an Excess Benefit; (2) **Costs of Defense** incurred to defend any **Insured** if it has been in fact determined that such individual received an Excess Benefit; and (3) any two hundred percent (200%) penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In all events, the assessment by the IRS of a two hundred percent (200%) penalty against any **Insured** shall void ab initio all coverage afforded pursuant to this paragraph.

For purposes of this endorsement, the term "Excess Benefit" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

II. AMENDMENTS TO EXCLUSIONS

A. **Section III Exclusions**, **D**. is deleted in its entirety and replaced with the following:

alleging, arising out of, based upon or attributable to bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

B. **Section III Exclusions**, **M**. is deleted in its entirety and replaced with the following:

alleging, arising out of, or in any way relating to any purchase or sale of securities by the **Not-For-Profit Entity**, **Subsidiary** or affiliate or any **Claim** brought by any securities holder of the **Not-For-Profit Entity** in their capacity as such;

C. **Section III Exclusions** is amended to include the following exclusions:

1. brought by, against, or on behalf of the developer of the condominium units, cooperative corporation property or other real or personal property managed by the **Insured** (hereafter the Property), which are brought by or on behalf of the sponsor for conversion of the Property to cooperative or condominium ownership; or alleging any **Wrongful Act** occurring prior to the date of first election of a Board of Directors of which the sponsor or developer of the Property does not elect or appoint a controlling number of Board members;
2. alleging, arising out of, based upon, attributable to any failure or omission on the part of any **Insured** to effect or maintain adequate insurance;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

Authorized Representative — June 30, 2017 (Date)

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 16

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADVERTISING, BROADCASTING AND PUBLISHING EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that Section II, Definitions X. "**Wrongful Act**" is amended by deleting subparagraph (5), subsections (c), (d), (e),(f) and(g) thereof in their entirety.

It is further understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to advertising, publishing, or broadcasting activities, including, but not limited to, any **Claim** alleging plagiarism, infringement of copyright, patent, title or slogan, piracy, unfair competition and idea misappropriation under an implied contract, false arrest, detention, imprisonment and malicious prosecution, wrongful entry, eviction or any other invasion of the right of private occupancy, the publication or utterance of a libel or slander or of any other defamatory or disparaging material, or a publication or utterance in violation of the right of privacy of an individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 17

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAPTIVE INSURANCE ENTITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to the ownership, management, operation or control by the **Not-For-Profit Entity** of any captive insurance entity, including but not limited to any **Claim** alleging the insolvency or bankruptcy of the **Not-For-Profit Entity** was a result of such ownership, management, operation or control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 18

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMISSION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to any:

(i) Payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time domestic or foreign government or any armed services official, agent, representative, employee or any member of their family or any entity with which they are affiliated; or

(ii) Payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time official, director, agent, partner, representative, principal shareholder, or owner or employee, or "affiliate" (as that term is defined in The Securities Exchange Act of 1934, including any officer, director, agent, owner, partner, representative, principal shareholder or employee of such affiliate) of any customer of the **Not-For-Profit Entity** or any member or any entity with which they are affiliated; or

(iii) Political contribution, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 19

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MEDICAL MALPRACTICE EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to medical or professional malpractice including, but not limited to, the rendering or failure to render of medical or professional service, treatment or advice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

______________________________
Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 20

**Policy Number:** 002084803 **Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

(1) nuclear material located at any nuclear facility owned by, or operated by or on behalf of, any **Insured**, or discharged or dispersed therefrom; or

(2) nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **Insured**; or

(3) the furnishing by any **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

(4) Claims for damages to the **Not-For-Profit Entity** or its shareholders alleging, arising out of, based upon, or attributed to, or in any way involving, directly or indirectly, the hazardous properties of nuclear material.

B.

(1) which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

(2) with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this Policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

IRONSHORE
A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 21

**Policy Number:** 002084803
**Effective Date of Endorsement:** July 02, 2017
**Insured Name:** Crosby Estate At Rancho Santa Fe

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIOR ACT EXCLUSION (BACKDATED)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Act** prior to July 02, 2014. **Loss** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be deemed to arise from the first such same **Wrongful Act**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

June 30, 2017
Date

# EXHIBIT 2

PLD-PI-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Mitchell S. Golub, Esq.
Law Offices of Golub & Associates, PLC
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
TELEPHONE NO: 858-457-0300 FAX NO. *(Optional):* 858-457-0301
E-MAIL ADDRESS *(Optional):* Mitch@GolubLawFirm.com
ATTORNEY FOR *(Name):* Plaintiff Avaron Community Association

*FOR COURT USE ONLY*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**05/25/2018** at 12:10:59 PM
Clerk of the Superior Court
By Veronica Navarro, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S Melrose Dr.
MAILING ADDRESS: 325 S Melrose Dr.
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF: Avaron Community Association

DEFENDANT: The Crosby Estate at Rancho Santa Fe Master Association; AMS Paving, Inc.

☑ DOES 1 TO 1000

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

☐ **AMENDED *(Number):***

**Type *(check all that apply):***

☐ **MOTOR VEHICLE** ☑ **OTHER *(specify):*** Contract; Nuisance

☑ **Property Damage** ☐ **Wrongful Death**

☐ **Personal Injury** ☑ **Other Damages *(specify):*** Injunction

**Jurisdiction *(check all that apply):***

☐ **ACTION IS A LIMITED CIVIL CASE**

**Amount demanded** ☐ **does not exceed $10,000**

☐ **exceeds $10,000, but does not exceed $25,000**

☑ **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**

☐ **ACTION IS RECLASSIFIED by this amended complaint**

☐ **from limited to unlimited**

☐ **from unlimited to limited**

CASE NUMBER:

37-2018-00026012-CU-BC-NC

1. **Plaintiff** *(name or names):* Avaron Community Association
alleges causes of action against **defendant** *(name or names):*
The Crosby Estate at Rancho Santa Fe Master Association; AMS Paving, Inc; and DOES 1-1000, inclusive
2. This pleading, including attachments and exhibits, consists of the following number of pages: 6
3. Each plaintiff named above is a competent adult
   a. ☑ **except** plaintiff *(name):* Avaron Community Association
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☑ other *(specify):* Non-Profit Mutual Benefit Corporation
   b. ☐ **except** plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Avaron Community Association v. The Crosby Estate at RSF Master | 37-2018-00026012-CU-BC-NC |

4. ☐ Plaintiff *(name):*
is doing business under the fictitious name *(specify):*

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. ☑ **except** defendant *(name):* The Crosby Estate
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity *(describe):*
      (4) ☐ a public entity *(describe):*
      (5) ☑ other *(specify):*
      Non-Profit Mutual Benefit Corporation
   b. ☑ **except** defendant *(name):* AMS Paving, Inc.
      (1) ☐ a business organization, form unknown
      (2) ☑ a corporation
      (3) ☐ an unincorporated entity *(describe):*
      (4) ☐ a public entity *(describe):*
      (5) ☐ other *(specify):*
   c. ☐ **except** defendant *(name):*
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity *(describe):*
      (4) ☐ a public entity *(describe):*
      (5) ☐ other *(specify):*
   d. ☐ **except** defendant *(name):*
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity *(describe):*
      (4) ☐ a public entity *(describe):*
      (5) ☐ other *(specify):*

☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☑ Doe defendants *(specify Doe numbers):* 1-1000 were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☑ Doe defendants *(specify Doe numbers):* 1-1000 are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

8. This court is the proper court because
   a. ☑ at least one defendant now resides in its jurisdictional area.
   b. ☑ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, **and**
   a. ☐ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because *(specify):*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Avaron Community Association v. The Crosby Estate at RSF Master | 37-2018-00026012-CU-BC-NC |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   - a. ☐ Motor Vehicle
   - b. ☐ General Negligence
   - c. ☑ Intentional Tort
   - d. ☐ Products Liability
   - e. ☐ Premises Liability
   - f. ☑ Other *(specify)*:

   Breach of Contract; Nuisance; Destruction of Property.

11. Plaintiff has suffered
   - a. ☐ wage loss
   - b. ☑ loss of use of property
   - c. ☐ hospital and medical expenses
   - d. ☑ general damage
   - e. ☑ property damage
   - f. ☐ loss of earning capacity
   - g. ☑ other damage *(specify)*:

   Attorneys' Fees and Costs

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   - a. ☐ listed in Attachment 12.
   - b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   - a. (1) ☑ compensatory damages
   - (2) ☑ punitive damages

   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
   - (1) ☑ according to proof
   - (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: May 25, 2018

Mitchell S. Golub, Esq.
(TYPE OR PRINT NAME)

/s/ Mitchell S. Golub
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

| SHORT TITLE: Avaron Community Association v. The Crosby Estate at RSF Master | CASE NUMBER: 37-2018-00026012-CU-BC-NC |
|---|---|

First (number) **CAUSE OF ACTION—Breach of Contract**

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* Avaron Community Association

alleges that on or about *(date):* April 25, 2007

a ☑ written ☐ oral ☐ other *(specify):*

agreement was made between *(name parties to agreement):*

Avaron Community Association and The Crosby Estate at Rancho Santa Fe Master

☐ A copy of the agreement is attached as Exhibit A, or

☑ The essential terms of the agreement ☐ are stated in Attachment BC-1 ☑ are as follows *(specify):*

This is a Shared Use Maintenance Agreement (SUMA) giving The Crosby an easement for ingress and egress over Averon's property. Avaron installed speed bumps to control speeding cars along the road.

BC-2. On or about *(dates):* May 24, 2018

defendant breached the agreement by ☐ the acts specified in Attachment BC-2 ☑ the following acts *(specify):*

The Crosby is planning to remove the speed bumps which are located on Avaron's real property without the approval of Avaron. On information and belief, the Crosby has hired a contractor to in fact remove the speed bumps so as to allow once again its members and their guests to speed through the residential community, endangering the residents of Avaron, which includes children. In addition, on May 25, 2018, the Crosby contractor, AMS Paving began removal.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement

☐ as stated in Attachment BC-4 ☑ as follows *(specify):*

If the speed bumps are removed, Avaron will have to replace them and its residents will be at risk for bodily injury. The one speed bump removed will have to be replaced. If the other remaining speed bumps are not removed, Avaron is suffering attorneys' fees and costs by the actions and continued breach of the SUMA by The Crosby.

BC-5. ☑ Plaintiff is entitled to attorney fees by an agreement or a statute

☐ of $

☑ according to proof.

BC-6. ☑ Other:

Avaron seeks a termination of The Crosby's Easement rights under the SUMA. An Injunction that prevents the members of The Crosby, its guests and vendors from passing through the Avaron.

PLD-PI-001(3)

| SHORT TITLE: Avaron Community Association v. The Crosby Estate at RSF Master | CASE NUMBER 37-2018-00026012-CU-BC-NC |
|---|---|

Second (number) **CAUSE OF ACTION—Intentional Tort** **Page** 5

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name)*: Avaron Community Association

alleges that defendant (*name*): The Crosby Estate at Rancho Santa Fe Master Association

☑ Does 1 to 1000

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on (*date*) May 20, 2018

at *(place)* In the Easement of Avaron

*(description of reasons for liability)*:

Instigated and caused to be created a Operation Honk" whereby residents of the Crosby coordinated to honk their horns in their cars when they passed over each speed bump in the Easement area. Project Honk was and is a coordinated and intentional effort by the Board of Directors of the Crosby and its members to infringe upon the quiet use and enjoyment of the residents of Avaron. On information and belief, Project Honk was disseminated via Facebook (Crosby official Facebook page) and emails to the community and its members.

On information and belief, Project Honk will continue until the Court issues an Order that restricts or otherwise enjoins this action and activity.

In addition, if The Crosby is able to remove the speed bumps, which were installed on the property owned by Avaron, and approved by the Fire Department, the residents and their guests at the Crosby will once again speed unabated through the Avaron endangering the health, welfare and safety of the residents, including young children who reside in Avaron.



Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION–Intentional Tort**

Code of Civil Procedure, § 425.12
*www.courtinfo.ca.gov*

PLD-PI-001(3)

| SHORT TITLE: Avaron Community Association v. The Crosby Estate at RSF Master | CASE NUMBER 37-2018-00026012-CU-BC-NC |
|---|---|

Third (number) **CAUSE OF ACTION—Intentional Tort** Page 6

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name)*: Avaron Community Association

alleges that defendant (*name*): The Crosby Estate at Rancho Santa Fe Master Association & AMS Paving

☑ Does 1 to 1000

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on *(date)*: May 25, 2018

at *(place)*: In the Easement of Avaron

*(description of reasons for liability)*:

Defendants Crosby and AMS Paving destroyed the property of Avaron by the intentional destruction and removal of one or more speed bumps. The destruction and removal was intentional and designed to cause harm to the members of Avaron and its community. The removal of the speed bumps is designed to once again allow the members and guests of the Crosby to drive as fast as they can through the easement without regard for the safety or well being of the residents and guests in Avaron.

Defendants embarked on the removal knowing full well that it was objected to by Avaron. The Crosby Board believes that it is above the law and above the rules and thus took it upon themselves to intentionally destroy the property of the Avaron. CMS Paving knew and was warned by a member of the Avaron Board of Directors that this was private property that did not belong to the Crosby, its client/customer. Despite this knowledge, CMS Paving showed up to destroy the property owned by Avaron.

The actions of both defendants is willful, oppressive and malicious. The aforementioned actions of the Defendants subjects said defendants to punitive damages to punish and make an example of said defendants.

# EXHIBIT 3

**From:** Dana Diset
**To:** Rick Salpietra, Esq.
**Cc:** Von Yacoubian
**Subject:** Avaron HOA v. Crosby HOA
**Date:** Tuesday, June 5, 2018 10:29:42 AM
**Attachments:** image002.png

---

Hi, Rick,

Claims have been filed on the association's GL and D&O policies and an adjuster from each will be assigned shortly. The association should provide their own defense until the carriers have time to review and determine coverage/assign defense. Thanks!

***Once you receive your claim number, be sure to reference that claim number and association name on all correspondence.***

Thank you,
Dana Diset
LaBarre/Oksnee Insurance
Claims Department
Direct phone: 949-215-9825
Direct fax: 949-382-6038
danad@hoa-insurance.com
Office Hours - Mon-Thurs/9:00am to 5:00pm, Friday/9:00am to 4:00pm

**The Crosby Estate at Rancho SF, THECR-3**

---

**From:** Rick Salpietra, Esq. [mailto:rsalpietra@salpietra.com]
**Sent:** Monday, June 4, 2018 4:47 PM
**To:** Andrea.Kleinman@yorkrsg.com
**Cc:** Dana Diset; Leslie O'Connor; Von Yacoubian
**Subject:** Avaron HOA v. Crosby HOA
**Importance:** High

Hello, Andrea,

As you know, this office represents The Crosby Estate at Rancho Santa Fe Master Association ("The Crosby") as its special counsel. The attached lawsuit was filed against the Crosbyon May 25, 2018, but has not yet been served. It is Superior Court Case No. 37-2018-00026012-CU-BC-NC.

By operation of law, a responsive pleading should be filed no later than 30 days after service. Pursuant to the terms of its policy, The Crosby hereby tenders its defense to its insurance carriers, and request that counsel be appointed within a reasonable time so that the proper responsive pleading may be filed within the time allowed by the Code of Civil Procedure. It is our understanding that a TRO in this matter is scheduled for Thursday, June 7, 2018. The Board will have the firm of Procopio, Cory, Hargreaves & Savitch LLP represent it at the TRO hearing if a defense attorney is not appointed in time.

Inasmuch as the Complaint alleges covered claims, the Crosby is owed a defense to the allegations of the entire Complaint, as well as any indemnity that may be owed on covered claims. Please confirm acceptance of this email in writing and advise us of the name of the appointed defense counsel as soon as possible. We are available to assist the retained counsel in this matter.

By copy of this email to Dana Diset and Leslie O'Conner, the Crosby requests all other Crosby insurers be put on notice of this claim.

In the meantime, please let me know if you have any questions.

Rick Salpietra, Esq. CCAL
Fellow, College of Community Association Lawyers
*****************************
Law Offices of Richard Salpietra
P.O. Box 9574
Rancho Santa Fe, CA 92067
(858)756-2233
salpietra.com
Description: RSE

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based on it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

---

Virus-free. www.avg.com

# EXHIBIT 4

A Liberty Mutual Company
Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
New York, NY 10005
Main #646-826-6600

# IronPro®

July 9, 2018

**VIA EMAIL: vyacoubian@keystonepacific.com**
**Vartan Yacoubian**
Keystone Pacific Prop Mgmt
16775 Von Karman Ave. Ste 100
Irvine, CA 92606

| | |
|---|---|
| **Re:** | |
| **Insured**: | Crosby Estate At Rancho Santa Fe |
| **Subject:** | Avaron Community Association V HOA |
| **Matter Number:** | PRO00076452 |
| **Policy Number:** | 002084803 |

Dear Vartan Yacoubian:

Please allow this letter to acknowledge IronPro's receipt of the above-captioned matter to which Matter Number(s) PRO00076452 has been assigned. Ironshore Specialty Insurance Company (Ironshore) issued Policy Number(s) 002084803 for the policy period of July 2, 2017 to July 2, 2018.

The following Claims Professional has been assigned to this matter for further handling and will be in contact with you shortly:

**Ashley Grater**
**SR. Claims Specialist**
**Direct Line: 212-365-3507**
**Email: Ashley.Grater@LibertyIU.com**

Please understand that Ironshore expressly reserves all of its rights under its policy, all underlying insurance (if applicable) and available law or equity. Ironshore similarly acknowledges that Crosby Estate At Rancho Santa Fe reserves its rights.

We look forward to working with you toward resolution of this matter. As customer service and satisfaction are important to us, please do not hesitate to contact us with any questions you may have.

Sincerely,

Sam Conanan, VP
Vice President, Claims
Ironshore Management
28 Liberty St, 4th Floor
New York, NY 10005
(646) 826-6741 Direct
Samuel.Conanan@ironshore.com

IRONSHORE
A Liberty Mutual Company
Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
New York, NY 10005
Main #646-826-6600

IronPro®

**CC (Via Email):**

**Insurance**
Keystone Pacific Prop Mgmt
insurance@keystonepacific.com

**Adisa Garnett**
Trivedi-Capacity Associates, LLC
agarnett@tcacoverage.com

# EXHIBIT 5

**From:** Grater, Ashley <Ashley.Grater@LibertyIU.com>
**Sent:** Monday, July 9, 2018 1:04 PM
**To:** Rick Salpietra, Esq.
**Subject:** RE: Claim PRO00076452 Avaron vs. Crosby

Rick – I understand. We hope to have coverage determined by the end of this week. Under the Policy, Ironshore does not have a duty to defend and the Insured has a retention. As such, the Insured can continue to use its counsel of choice pending review by Ironshore.

Ironshore expressly reserves all of its rights under the policy, in equity, and at law.

Please do not hesitate to contact me should you have any questions.

Warmest Regards,
Ashley

**Ashley T. Grater**
*Senior Claims Specialist*
Ironshore Insurance Services LLC.
28 Liberty Street, 5th floor
New York, NY 10005
T: 212 365 3507
Ashley.Grater@libertyiu.com
www.ironshore.com

IRONSHORE.
A Liberty Mutual Company

---

**From:** Rick Salpietra, Esq. [mailto:rsalpietra@salpietra.com]
**Sent:** Monday, July 09, 2018 3:30 PM
**To:** Grater, Ashley <Ashley.Grater@LibertyIU.com>
**Subject:** RE: Claim PRO00076452 Avaron vs. Crosby

Ashley,

The complaint was tendered over a month ago. Do you have an idea when coverage will be determined?

Thank you.

Rick Salpietra, Esq. CCAL
Fellow, College of Community Association Lawyers
*****************************
Law Offices of Richard Salpietra
P.O. Box 9574
Rancho Santa Fe, CA 92067
(858)756-2233
salpietra.com

CELEBRATING 20 YEARS

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based on it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

---

**From:** Grater, Ashley [mailto:Ashley.Grater@LibertyIU.com]
**Sent:** Monday, July 09, 2018 12:12 PM
**To:** Rick Salpietra, Esq.
**Subject:** RE: Claim PRO00076452 Avaron vs. Crosby

Thank you Rick. Coverage is still being evaluated at this point as the Complaint contains claims for breach of contract and for destruction of property including loss of use which is excluded under the Policy.

Once coverage is determined, we will address the Insured's inquiry regarding defense counsel.

Ironshore expressly reserves all of its rights under the policy, in equity, and at law.

Please do not hesitate to contact me should you have any questions.

Warmest Regards,
Ashley

**Ashley T. Grater**
*Senior Claims Specialist*
Ironshore Insurance Services LLC.
28 Liberty Street, 5th floor
New York, NY 10005
T: 212 365 3507
Ashley.Grater@libertyiu.com
www.ironshore.com

IRONSHORE.
A Liberty Mutual Company

---

**From:** Rick Salpietra, Esq. [mailto:rsalpietra@salpietra.com]
**Sent:** Monday, July 09, 2018 2:33 PM
**To:** Grater, Ashley <Ashley.Grater@LibertyIU.com>
**Subject:** Claim PRO00076452 Avaron vs. Crosby

Hello, Ashley,

Crosby just received this letter, and we look forward to working with you on this matter. Since Avaron filed for a TRO last month, the Crosby retained its own counsel to defend the TRO while a coverage investigation was being conducted by the carrier. Crosby retained Rebecca Reed of Procopio firm (http://www.procopio.com/attorneys/view/rebecca-l-reed ). If possible, the Crosby would like to keep her as defense counsel if they are acceptable to Ironshore.

If not, please let me know you the appointed defense counsel is and we can provide relevant information to them.

Thanks,

Rick Salpietra, Esq. CCAL
Fellow, College of Community Association Lawyers
*****************************
Law Offices of Richard Salpietra
P.O. Box 9574
Rancho Santa Fe, CA 92067
(858)756-2233
salpietra.com

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based on it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

Virus-free. www.avg.com

# EXHIBIT 6

POS-015

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Mitchell S. Golub, Esq.
Law Offices of Golub & Associates, PLC
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
TELEPHONE NO.: 858-457-0300 FAX NO. *(Optional)*: 858-457-0301
E-MAIL ADDRESS *(Optional)*: Mitch@GolubLawFirm.com
ATTORNEY FOR *(Name)*: Plaintiff Avaron Community Association

***FOR COURT USE ONLY***

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 325 S Melrose Dr.
MAILING ADDRESS: -same-
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER: Avaron Community Association

DEFENDANT/RESPONDENT: The Crosby Estate at Rancho Santa Fe Master Association, et al

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

CASE NUMBER: 37-2018-00026012-CU-BC-NC

TO *(insert name of party being served)*: The Crosby Estate at Rancho Santa Fe Master Association

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 6/6/18

Mitchell S. Golub, Esq.
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing)***:

1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify)*:
   Civil Case Cover Sheet; Notice of Assignment and CMC hearing; Stipulation for ADR

***(To be completed by recipient):***

Date this form is signed: July 11, 2018

Rebecca L. Reed, Esq.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ [signature]
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

# EXHIBIT 7

IRONSHORE.
A Liberty Mutual Company

Ironshore Insurance Services LLC
28 Liberty Street, 5th Floor
Mailstop - Claims 55
New York, NY 10005
Main #646-826-6600

Ashley Grater, Esq.
Senior Claims Specialist
Telephone: (212) 365-3507
Ashley.Grater@LibertyIU.com

July 13, 2018

VIA CERTIFIED MAIL (91 7199 9991 7036 8109 3933) & EMAIL:
insurance@keystonepacific.com
The Crosby Estate at Rancho Sante Fe
c/o Keystone Pacific Prop Mgmt
16775 Von Karman Ave. Ste 100
Irvine, CA 92606

| | |
|---|---|
| Re: | Private Advantage Policy |
| Insured: | Crosby Estate at Rancho Sante Fe |
| Insurer: | Ironshore |
| Policy No: | 002084803 |
| Policy Period: | July 2, 2017 to July 2, 2018 |
| Limit: | $1,000,000 |
| Matter: | Avaron Community Association |
| File No.: | PRO00076452 |

Dear Mr. Yavoubian:

Ironshore[1] acting on behalf of Liberty Insurance Underwriters Inc., ("Liberty"), is in receipt of correspondence dated June 11, 2018 enclosing a Complaint filed on May 25, 2018 in the Superior Court of California, County of San Diego by Avaron Community Association (the "Plaintiff") against The Crosby Estate at Rancho Sante Fe Master Association (the "Insured") and AMS Paving, Inc. (the "Complaint").

[1]Effective with Liberty Mutual's acquisition of Ironshore, Inc. in May 2017, most of Liberty International Underwriters' US business was merged with Ironshore's US business. The merged organizations operate under the Ironshore brand, and claims for Liberty Insurance Underwriters Inc. will largely be handled under the Ironshore brand going forward.

The above referenced matters have been submitted for coverage under the Private Advantage Policy, Policy No. 002084803 (the "Policy") issued to the Insured by Liberty. Please note that the terms in bold in this letter correspond to their definitions set forth in the Policy.

We have now reviewed and considered the provisions of the Policy in light the allegations made in the Complaint. Liberty recognizes of that any allegations of wrongdoing are entirely unsubstantiated and nothing contained in this letter is intended to imply that Liberty believes that the allegations have any factual or legal merit whatsoever.

The Policy

Consistent with its terms and conditions, the **Policy** provides that coverage applies only to **Claims** that are first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer pursuant to the terms of the Policy.

The **Policy** has a **Policy Period** of July 2, 2017 to July 2, 2018 and a **Limit of Liability** of $1,000,000 for the **Policy Period**. There is a $50,000 **Retention** applicable to each **Claim** pursuant to **Item IV** of the Declarations, and other applicable terms and conditions of the Policy. **Defense Costs** reduce the **Limit of Liability.**

The Complaint

Plaintiff alleges breach of contract, nuisance, and destruction of property. Plaintiff seeks damages for loss of use of property, property damage, general damages including attorneys' fees and costs. Specifically, Plaintiff alleges that an agreement made between the parties gave the Insured an easement for ingress and egress over Plaintiff's property. The Plaintiff thereafter installed speed bumps to control speeding. On or about March 24, 2018, the Insured allegedly decided to remove the speed bumps which are located on the Plaintiff's property without their approval. Plaintiff further alleges that on May 25, 2018, the Insured's contractor, AMS Paving, began removal. Plaintiff seeks termination of the Insured's easement rights and an injunction.

Denial of Coverage

Liberty recognizes that the allegations in the Complaint have not been proven at this time, and nothing in this letter should be construed as a suggestion that Liberty considers any of the allegations to have any legal or factual merit. Nevertheless, for the reasons set forth below, Liberty must deny coverage for this matter in its entirety.

Please refer to Section III Exclusion D. which provides that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** for any actual or alleged (2) damage to or destruction of any tangible property, including the loss of use thereof.

In light of the allegations in the Complaint which relate to destruction of the speed bumps, damage to property and loss of use, Exclusion D (2) is applicable and precludes coverage for this **Claim.**

Furthermore, please refer to Section III. Exclusion N which provides that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not For Profit Entity** or any **Insured Person** under any express contract or agreement. The Plaintiff alleges breach of the easement agreement by the **Insured** and therefore, Exclusion N is applicable and precludes coverage for this **Claim.**

We trust that you understand Liberty's coverage position as set forth above. However, Liberty reserves the right to supplement and/or to amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions set forth in the Policy and any additional facts that may come to our attention. As such, the within discussion does not purport to be a comprehensive analysis of all potentially applicable coverage issues and policy provisions and mention of specific coverage issues or policy provisions herein does not negate the relevance of any others. Similarly, nothing herein should be construed as an admission of coverage or liability by Liberty, or as a waiver, estoppel or modification of any of the terms, conditions or limitations of the Policy and Liberty reserves all rights, remedies and defenses, legal and equitable.

If you believe that any other information may be relevant or may provide a basis for Liberty to withdraw or modify the comments in this letter, please bring all such information to my attention as soon as possible. Liberty appreciates your consideration of this request. Should you have any questions regarding this matter, please do not hesitate to contact me.

Very truly yours,

*Ashley Grater*

Ashley Grater

cc:
agarnett@tcacoverage.com

easfaw@tcacoverage.com

danad@hoa-insurance.com

rsalpietra@salpietra.com

# EXHIBIT 8

IRONSHORE
A Liberty Mutual Company

Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
Mailstop - Claims 55
New York, NY 10005
Main #646-826-6600

Ashley Grater, Esq.
Senior Claims Specialist
Telephone: (212) 365-3507
Ashley.Grater@LibertyIU.com

July 24, 2018

Mr. Richard Salpietra
Law Offices of Richard Salpietra
P.O. Box 9574
Rancho Santa Fe, CA 92067

Re: ***Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association***

| | |
|---|---|
| Insured: | Crosby Estate at Rancho Santa Fe |
| Policy No.: | 002084803 |
| Policy Period: | July 2, 2017 – July 2, 2018 |
| Claim No.: | PRO00076452 |
| Case No.: | SDSC 37-2018-00026012-CU-BC-NC |

Dear Mr. Salpietra:

As you know, Ironshore acting on behalf of Liberty Insurance Underwriters Inc., ("Liberty") issued Policy No. 002084803 to the Crosby Estate at Rancho Santa Fe ("Crosby"), which provided certain coverage effective July 2, 2017 to July 2, 2018, subject to terms, conditions and exclusions. We understand that Crosby has been named as a defendant in a lawsuit filed by plaintiff Avaron Community Association ("Lawsuit"). The Lawsuit arises out of an alleged breach of contract stemming from a Shared Use Maintenance Agreement, as well as unspecified intentional torts. We understand that Crosby is seeking defense and indemnity for the Lawsuit under the Policy No. 002084803 ("Policy").

We have reviewed and considered your July 16, 2018 correspondence. This letter shall serve to provide you notice that Liberty has determined that there is still no coverage for the Lawsuit against Crosby for the reason discussed below. Based on the available facts and the Policy's

provisions, Liberty reserves its rights as to any other potential issues regarding coverage for the Lawsuit. **Based on this determination, Liberty will not be providing a defense for the Lawsuit and it will be necessary for Crosby to coordinate its own defense and response to the Lawsuit.**

To be clear, Liberty's decision to deny coverage is not a reflection of the merits of the allegations in the Lawsuit. Rather, it is based upon the allegations in the Lawsuit and the Policy's language. This determination is based upon currently available information. If you believe that Liberty has reached this determination in error, please immediately provide us with all relevant information, and the basis for your disagreement with our conclusion.

## I. BACKGROUND FACTS

Based upon the information presently available, in April 2007, plaintiff Avaron Community Association ("Avaron") and defendant Crosby entered into a Shared Use Maintenance Agreement ("SUMA"). Per the SUMA, Crosby was afforded an easement for ingress and egress over Avaron's property. At some point, Avaron installed speed bumps in the easement area.

On or about May 20, 2018, Crosby caused "Operation Honk" to be created. Under "Operation Honk" residents of Crosby coordinated efforts to honk the horns of their vehicles as they passed over each speed bump in the easement area. It is alleged that "Operation Honk" is an intentional effort by Crosby to infringe on the quiet use and enjoyment of the residents of Avaron.

It is also alleged that as of May 24, 2018, Crosby had hired a contractor to remove the speed bumps from the easement area, which is alleged to be a violation of the contractual agreement established by the SUMA. Finally, it is alleged that on May 25, 2018, Crosby via its contractor AMS Paving intentionally destroyed Avaron's property by removing one or more of the speed bumps in the easement area. That same day, Avaron filed the subject Lawsuit, asserting an action for Breach of Contract and two causes of action for unspecified Intentional Torts. The Lawsuit seeks compensatory as well as punitive damages.

Thereafter, Crosby's defense and indemnity in the Lawsuit was tendered to Liberty under the Policy. On July 13, 2018, Liberty denied coverage pursuant to Section III Exclusion D and Exclusion N. On July 16, 2018, Crosby disputed the denial and asserted that coverage for the Lawsuit was owed under the second cause of action, which was based upon "Operation Honk" and sounded in Nuisance.

## II. THE POLICY

Ironshore acting on behalf of Liberty Insurance Underwriters Inc., ("Liberty") issued Policy No. 002084803 to Crosby, which provided a Not-For-Profit Entity and Directors, Officers Liability Insurance Policy Including Employment Practices and Claims Coverage with Costs of Defense Included in the Limit of Lability, effective July 2, 2017 to July 2, 2018. The Policy provides certain coverage, subject to various terms, limits and exclusion. The Policy has a $1,000,000 aggregate limit of liability with the cost of defense reducing the limits of liability and a $50,000.00 retention applicable to each claim.

## III. COVERAGE ANALYSIS

For your convenience, we set forth certain pertinent Policy provisions that may apply to the Lawsuit. Liberty reserves the right to rely upon all terms, conditions, exclusions and endorsements of the Policy, including but not limited to those listed below.

### A. THE POLICY CONTAINS EXCLUSIONS THAT BAR COVERAGE FOR THE LAWSUIT

The Policy provides certain Non-For-Profit Entity and D&O Coverage, subject to various terms, conditions, exclusions, and endorsements. Specifically, the Policy provides in pertinent part:

> **SECTION II DEFINITIONS**
>
> ***
>
> **B.** **"Claim"** shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt of filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body or other written demand for monetary or non-monetary relief made against any **Insured**. However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.
>
> ***
>
> **J.** **"Insured Person"** shall mean a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Not-For-Profit Entity**), staff or faculty member (salaried or non-salaried), **Employee** of volunteer of the **Not-For-Profit Entity**. Coverage will automatically apply to all new persons who become **Insured Persons** after the inception date of this Policy.
>
> **K.** **"Insurer"** shall mean the company stated in Item 8 of the Declarations.
>
> **L.** **"Loss"** shall mean compensatory damages (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and **Cost of Defense**. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage

for punitive or exemplary damages or the multiple portion of any multiplied damage award.

***

**N.** **"Non-For-Profit Entity"** shall mean the **Not-For-Profit Entity** named in Item 1 of the Declarations and any Subsidiary.

***

**Q.** **"Pollutants"** shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(NFP.002(10/07 Ed.) pgs. 1-4 of 14)

Further, the Policy also contains numerous exclusions for the Lawsuit's claims. Specifically, the Policy expressly excludes coverage for:

**SECTION III EXCLUSIONS**

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:

***

D. for any actual or alleged:

(1) bodily injury, sickness, disease, or death of any person;

(2) damage to or destruction of any tangible property, including the loss of use thereof…

***

J. alleging, arising out of, based upon or attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving **Pollution**, including but not limited to, any **Claim** for financial loss to the **Not-For-Profit Entity**, its members or its creditors;

***

N. alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not-For-Profit Entity** or any **Insured Person** under any express contract or agreement…

(NFP.002(10/07 Ed.) pgs. 6-8 of 14)

Here, all of the Lawsuit's claims against Crosby appear to fall squarely within these exclusions. As addressed in prior correspondence, Plaintiff's claims for breach of contract are expressly excluded by the Policy pursuant to Section III, Sub-section N. Similarly, Plaintiff's claims for Intentional Tort stemming from "Operation Honk" are claims based on noise, which are expressly excluded by the Policy pursuant to Section III, Sub-section J. Finally, the Plaintiff's claims for Intentional Tort stemming from the alleged destruction of Avalon's speed bumps/property is expressly excluded by the Policy pursuant to Section III, Sub-section D.

Accordingly, all of the allegations pled against Crosby are excluded from coverage and Liberty must therefore deny coverage.

### B. PUNITIVE DAMAGES ARE EXCLUDED FROM COVERAGE UNDER CALIFORNIA PUBLIC POLICY

Here, in connection with the claims pled against Crosby, plaintiff Avaron also seeks punitive damages. However, it is well settled law that California public policy bars indemnification of punitive damage awards. This is because Courts have recognized that purpose behind permitting an award of punitive damages would be frustrated by permitting the defendant to pass on such liability to an insurance carrier. *See*, City Products Corp. v. Globe Indem. Co. (1979) 88 Cal.App.3d 31, 35; Peterson v. Sup.Ct. (Thompson) (1982) 31 Cal.3d 147, 157; College Hosp., Inc. v. Sup.Ct. (Crowell) (1994) 8 Cal.4th 704, 724, fn. 11; and PPG Industries, Inc. v. Transamerica Ins. Co. (1999) 20 Cal.4th 310, 317-318.

The prohibition applies even when the insurance policy contains no specific exclusion for punitive damages claims. This is because the public policy limitation is treated as an implied-in-law exclusion. *See*, Ohio Cas. Ins. Co. v. Hubbard (1984) 162 Cal.App.3d 939, 946. To that end, California Insurance Code § 533 expressly provides that "[a]n insurer is not liable for the wilful act of the insured."

Based upon the foregoing authorities, there is no coverage for the punitive damages alleged against Crosby. Liberty must therefore deny coverage.

## IV. COMPLETE RESERVATION OF RIGHTS

For the foregoing reasons, Liberty respectfully denies coverage for the Lawsuit and rejects your tender of Crosby's defense. This letter is based on the facts and information supplied to Liberty to date, along with the Policy and applicable law. Nothing in this letter, or Liberty's continuing investigation, actual or possible defense and indemnity as to any portion of this claim or any claim expenses, shall constitute a waiver or estoppel of Liberty's rights under the Policy. This includes, but is not limited to, the right to challenge coverage, seek subrogation from any other

party or insurer, or file a declaratory judgment action to determine coverage. Liberty hereby reserve all of its rights under the Policy, based on the Policy's provisions, including, but not limited to, those discussed above.

Liberty is committed to the prompt and fair handling of all claims. If you believe that its position is incorrect or constitutes a wrongful reservation of rights, denial or rejection of this claim, you may have the matter reviewed by the California Department of Insurance by calling them at (800) 927-4357, or by writing them at the following address:

State of California Department of Insurance
Consumer Services and Market Conduct Branch- Consumer Services Division
300 South Spring Street, South Tower
Los Angeles, CA 90013

Should you have any further information to provide relating to coverage for the claim, or if you have any questions about the issues raised in this letter, please do not hesitate to contact us.

Very truly yours,

*Ashley Grater*

Ashley Grater

cc:
agarnett@tcacoverage.com

easfaw@tcacoverage.com

danad@hoa-insurance.com

rsalpietra@salpietra.com

# EXHIBIT 9

WSHB WOOD SMITH HENNING BERMAN

505 North Brand Boulevard, Suite 1100
Glendale, California 91203
tel 818 551-6000 fax 818 551-6050

Direct Dial: (818) 551-6012
Email: tlewis@wshblaw.com
Website: www.wshblaw.com
Refer to: 10025-0030

August 20, 2018

***VIA E-MAIL AND U.S. MAIL***

Mr. Richard Salpietra
Law Offices of Richard Salpietra
P.O. Box 9574
Rancho Santa Fe, CA 92067
RSalpietra@Salpietra.com

Re: ***Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association***

| | |
|---|---|
| Insured: | Crosby Estate at Rancho Santa Fe |
| Policy No.: | 002084803 |
| Policy Period: | July 2, 2017 – July 2, 2018 |
| Claim No.: | PRO00076452 |
| Case No.: | SDSC 37-2018-00026012-CU-BC-NC |

Dear Mr. Salpietra:

As you are aware, we have been retained by Ironshore acting on behalf of Liberty Insurance Underwriters Inc., ("Liberty"), which issued Policy No. 002084803 to the Crosby Estate at Rancho Santa Fe ("Crosby"), which affords Non-For-Profit Entity and Directors, Officers Liability Insurance coverage effective July 2, 2017 to July 2, 2018, subject to terms, conditions and exclusions (the "Policy").

We write concerning the lawsuit filed by plaintiff Avaron Community Association ("Avaron") against Crosby, which is identified as San Diego Superior Court case number 37-2018-00026012-CU-BC-NC ("Lawsuit"). The Complaint filed in the Lawsuit generally alleges that Avaron has suffered various damages because of Crosby's breach of the Shared Use Maintenance Agreement ("SUMA") and other intentional acts.

As you know, Crosby initially provided the Lawsuit to Liberty seeking defense and indemnity with respect to this matter. That request was previously denied. In response, on July 30, 2018, you provided additional legal authorities and analysis relevant to the defense and indemnity assessment. It is our understanding that you are counsel for Crosby. Accordingly, this correspondence shall serve to respond to your letter of July 30, 2018.

**Please be advised that as a courtesy to Crosby, Liberty hereby agrees to provide a defense to the Lawsuit without prejudice to Liberty's rights under the Policy.**

Please be advised that Liberty's agreement is made subject to a full reservation of rights under the Policy and applicable law. This includes Liberty's right to limit or deny coverage to the Insured under the applicable law and the terms, conditions, exclusions, endorsements, and limits of the Policy, including, but not limited to, the specific provisions set forth and discussed below.

While Liberty is reserving its rights, it is not suggesting that that any of the allegations in the Lawsuit have any factual basis or legal merit. To be clear, Liberty is not denying coverage, but, is reserving all rights it has under the Policy as it continues this investigation and as additional relevant facts become known. Neither Liberty's reservation of rights, the continued investigation, provision of any defense, nor the acceptance of any tender, is to be considered a waiver or estoppel of any of Liberty's rights under the Policy.

Pursuant to SECTION VI COSTS OF DEFENSE AND SETTLEMENTS, sub-section (C), Crosby shall retain defense counsel that is agreeable to Liberty. Please provide the complete name, contact information and fee schedule for the defense counsel/firm proposed to defend Crosby in this matter.

## I. <u>BACKGROUND FACTS</u>

Based upon the information presently available, in April 2007, plaintiff Avaron and defendant Crosby entered into a Shared Use Maintenance Agreement ("SUMA"). Per the SUMA, Crosby was afforded an easement for ingress and egress over Avaron's property. At some point, Avaron installed speed bumps in the easement area.

On or about May 20, 2018, Crosby allegedly caused "Operation Honk" to be created. Under "Operation Honk" residents of Crosby coordinated efforts to honk the horns of their vehicles as they passed over each speed bump in the easement area. It is alleged that "Operation Honk" is an intentional effort by Crosby to infringe on the quiet use and enjoyment of the residents of Avaron.

It is also alleged that as of May 24, 2018, Crosby had hired a contractor to remove the speed bumps from the easement area, which is alleged to be a violation of the contractual agreement established by the SUMA. Finally, it is alleged that on May 25, 2018, Crosby via its contractor AMS Paving intentionally destroyed Avaron's property by removing one or more of the speed bumps in the easement area.

That same day, Avaron filed the subject Lawsuit, asserting an action for Breach of Contract and two causes of action for unspecified Intentional Torts. The Lawsuit seeks compensatory as well as punitive damages.

## II. THE POLICY

Liberty issued Policy No. 002084803 to Crosby, which provided certain Non-For-Profit Entity and Directors, Officers Liability Insurance coverage effective July 2, 2017 to July 2, 2018. The Policy has limits of $1,000,000.00 aggregate for all claims made or deemed made during the policy period, which are eroded by the costs of defense. Further, all non-employment practices claims have a $50,000.00 retention. However, the retention shall not apply to a Non Indemnifiable Loss.

## III. COVERAGE ANALYSIS

For your convenience, we set forth certain pertinent Policy provisions that may apply to the Lawsuit. Liberty expressly reserves the right to rely upon all terms, conditions, exclusions and endorsements of the Policy, including but not limited to those listed below.

In connection with the Policy, the following definitions are to be utilized.

**SECTION II DEFINITIONS**

***

**B.** **"Claim"** shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt of filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body or other written demand for monetary or non-monetary relief made against any **Insured**. However, in no event shall the term **"Claim"** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

***

**J.** **"Insured Person"** shall mean a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Not-For-Profit Entity**), staff or faculty member (salaried or non-salaried), **Employee** of volunteer of the **Not-For-Profit Entity**. Coverage will automatically apply to all new persons who become **Insured Persons** after the inception date of this Policy.

K. **"Insurer"** shall mean the company stated in Item 8 of the Declarations.

L. **"Loss"** shall mean compensatory damages (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and **Cost of Defense**. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

***

N. **"Non-For-Profit Entity"** shall mean the **Not-For-Profit Entity** named in Item 1 of the Declarations and any Subsidiary.

***

Q. **"Pollutants"** shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

R. **"Pollution"** shall mean the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water of the atmosphere. **Pollution** shall also mean any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

X. **"Wrongful Act"** shall mean:

***

(5) Wrongful Act shall specifically include:

***

(d) wrongful entry or eviction or other invasion of the right of occupancy

(NFP.002(10/07 Ed.) pgs. 1-4 of 14)

### A. The Policy Excludes Coverage for the Breach of Contract Claim

The Policy contains an exclusion for contractual liability, which modifies coverage and provides as follows:

> **SECTION III EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> ***
>
> N. alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not-For-Profit Entity** or any **Insured Person** under any express contract or agreement. This exclusion shall not apply to an **Employment Practice Claim** to the extent liability does not arise under an express contract or agreement.
>
> (NFP.002 (10/07 Ed.) pgs. 6 and 8 of 14)

Here, the claims asserted by Avaron allege that Crosby has breached the terms of the SUMA, which affords Crosby an easement for ingress and egress over Avaron's property. As these allegations are based exclusively upon Crosby's alleged contractual liability, the foregoing exclusion applies. Accordingly, to the extent that Avaron alleges and/or obtains damages arising of out Crosby's breach of the SUMA, Liberty must reserve all of its rights.

### B. The Policy Excludes Coverage for Property Damage

The Policy also contains an exclusion for property damage at NFP.002 (10/07 Ed.) pg. 6, which modifies coverage and provides as follows:

> **SECTION III EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> ***
>
> **D.** for any actual or alleged:
>
> ***
>
> (2) damage to or destruction of any tangible property, including the loss of use thereof...

Here, the claims asserted by Avaron also allege that Crosby has engaged in the intentional demolition and removal of Avaron's speed bumps. As these allegations are for "damage to or destruction of any tangible property" the foregoing exclusion applies. Accordingly, to the extent that Avaron alleges and/or obtains damages for property damage, Liberty must reserve all of its rights.

C. **<u>The Pollution Exclusion May Bar or Limit Coverage</u>**

The Policy issued to Crosby provides certain Non-For-Profit Entity and Directors, Officers Liability Insurance coverage, subject to various terms, conditions, exclusions, and endorsements. Specifically, the Policy provides in pertinent part:

> **SECTION I INSURING AGREEMENTS**
>
> ***
>
> C. The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the Insurer pursuant to Section VII.
>
> (NFP.002 (10/07 Ed.) pg. 1 of 14)

However, the Policy also contains a pollution exclusion that is relevant to the Lawsuit. The pollution exclusion provides in relevant part:

> **SECTION III EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any Insured:
>
> ***
>
> J. alleging, arising out of, based upon or attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving **Pollution**, including but not limited to, any **Claim** for financial loss to the **Not-For-Profit Entity**, its members or its creditors
>
> (NFP.002 (10/07 Ed.) pg. 7 of 14)

Here, the pollution exclusion clearly and plainly states that claims stemming from the alleged discharge of pollutants, which is expressly defined to include "any noise" are excluded from coverage. The allegations pled by Avaron stem, in part, from Crosby's alleged creation and implementation of "Operation Honk" which is described as a

coordinated effort by Crosby Board members and residents to honk their car horns as they pass over each speed bump in the easement area. Accordingly, these allegations and the related claim for damages arise directly out of noise. Liberty must therefore reserve all of its rights, to the extent this exclusion applies.

**D. California Public Policy Precludes Coverage for Punitive Damages**

In connection with the claims pled against Crosby in the Lawsuit, Avaron also seeks punitive damages. However, it is well settled law that California public policy bars indemnification of punitive damage awards. This is because Courts have recognized that purpose behind permitting an award of punitive damages would be frustrated by permitting the defendant to pass on such liability to an insurance carrier. *See*, City Products Corp. v. Globe Indem. Co. (1979) 88 Cal.App.3d 31, 35; Peterson v. Sup.Ct. (Thompson) (1982) 31 Cal.3d 147, 157; College Hosp., Inc. v. Sup.Ct. (Crowell) (1994) 8 Cal.4th 704, 724, fn. 11; and PPG Industries, Inc. v. Transamerica Ins. Co. (1999) 20 Cal.4th 310, 317-318.

The prohibition applies even when the insurance policy contains no specific exclusion for punitive damages claims. This is because the public policy limitation is treated as an implied-in-law exclusion. *See*, Ohio Cas. Ins. Co. v. Hubbard (1984) 162 Cal.App.3d 939, 946. To that end, California Insurance Code § 533 expressly provides that "[a]n insurer is not liable for the wilful act of the insured."

Based upon the foregoing legal authorities, there is no coverage for the punitive damages alleged against Crosby. Liberty must therefore reserve all of its rights.

**IV. CROSBY'S OBLIGATIONS UNDER THE POLICY**

The Policy also sets forth certain obligations that Crosby is required to fulfil in the event of a claim. To that end, the Policy provides in relevant part:

> **SECTION VII NOTICE OF CLAIM**
>
> ***
>
> C. In addition to furnishing the notice as provided in Section VII, the **Insured** shall, as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

So that Liberty can continue its investigation into the facts and allegations at issue in the Lawsuit, **Liberty hereby requests that Crosby promptly provide the following additional documents: (1) A copy of any and all documents related to the creation**

**or implementation of "Operation Honk"; (2) A copy of any and all other insurance policies affording Crosby coverage between May 2018 and present, including but not limited to the Philadelphia Indemnity Insurance Company Policy identified as PHPK1674015; and (3) a copy of any and all any and all other reservation of rights and/or coverage position letters related to the Lawsuit.**

## V. COMPLETE RESERVATION OF RIGHTS

As discussed above and based on the foregoing, Liberty has agreed to provide Crosby with a courtesy defense, without prejudice and reserving all of the rights available under the Policy. Based on the Policy provisions, including but not limited to those discussed above, Liberty reserves all rights available under the applicable law and Policy, including but not limited to the right to investigate, deny coverage in part or whole, seek a judicial determination in a declaratory judgment and/or rescission action, and seek reimbursement of any defense costs, including but not limited to attorneys' fees, relating to non-covered claims. Buss v. Sup. Ct., (1997)16 Cal.4th 35. In addition, Liberty reserves the right to supplement or amend this reservation of rights letter upon the discovery of additional facts, subject to the Policy's terms, conditions, exclusions, and endorsements, including those not discussed in this letter.

This letter is based on the facts and information supplied to Liberty to date, along with the Policy and applicable law. Nothing in this letter, or Liberty's continuing investigation, actual or possible payment(s) of any portion of this claim or any claim expenses, or provision of a defense, shall constitute a waiver or estoppel of Liberty's right to rely upon any of the terms, conditions, exclusions, and endorsements of the Policy.

I look forward to the prompt receipt of the additional documents requested herein. If you have any other information or documentation, not specifically identified herein, that could impact Liberty's coverage analysis, we would request it be provided to our office as well. Should you have any questions, please contact the undersigned.

Very truly yours,

WOOD, SMITH, HENNING & BERMAN LLP

By: ______________________
TRACY M. LEWIS

TML:tml
LEGAL:10025-0030/9699389.1

# EXHIBIT 10

MARK C. ZEBROWSKI (BAR NO. 110175)
MZebrowski@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Plaintiff
AVARON COMMUNITY ASSOCIATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

| | |
|---|---|
| AVARON COMMUNITY ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION; and DOES 1-10,<br><br>Defendants. | Case No. 37-2018-00026012-CU-BC-NC<br><br>**FIRST AMENDED COMPLAINT**<br><br>Dept: N-27<br>Judge: Hon. Jacqueline M. Stern<br><br>Complaint Filed: May 25, 2018 |

Plaintiff AVARON COMMUNITY ASSOCIATION ("Plaintiff" or "Avaron") complains of THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION ("Crosby"), and DOES 1 through 10, inclusive, and each of them (collectively "Defendants"), and alleges as follows for its First Amended Complaint:

**PARTIES**

1. Plaintiff Avaron is a California Nonprofit Mutual Benefit Corporation that serves as the homeowners' association for the Avaron community. Among other things, Avaron is responsible for taking reasonable measures to assure the safety of its property and the residents of the Avaron community.

2. Defendant Crosby is a California Nonprofit Mutual Benefit Corporation that serves as the homeowners' association for the Crosby community.

3. Plaintiff is currently unaware of the true names and capacities of the defendants named as Does 1-100, and therefore sues those defendants by their fictitious names. Plaintiff is informed and believes that each fictitiously named defendant is liable to Plaintiff as set forth herein, and was acting as the agent of each other defendant at all relevant times. Plaintiff will seek leave of court to amend to name each fictitiously named defendant by its true name when such has been ascertained.

**JURISDICTION AND VENUE**

4. Jurisdiction and venue are proper in this Court because this action involves written agreements entered into, to be performed and breached within this Court's jurisdiction, and real property located within this Court's jurisdiction.

**THE EASEMENT**

5. Avaron and Crosby are separate, adjacent communities.

6. The Avaron and Crosby communities are both accessed through a common gate and via a common road, Bing Crosby Boulevard ("BCB").

7. Avaron owns BCB.

8. Avaron and Crosby are parties to a written EASEMENT AGREEMENT INCLUDING COVENANTS RUNNING WITH THE LAND (Bing Crosby Boulevard and Santa Fe Hills Private Driveway) Recorded April 25, 2007 ("Easement"). Avaron is the successor to Black Mountain Rach, LLC ("BMR") under the Easement.

9. Under the Easement, Avaron (through its predecessor, BMR) granted Crosby a non-exclusive easement for vehicle and pedestrian ingress and egress on, over and across BCB; and a non-exclusive easement for repair and maintenance of certain defined Shared Facilities over the BCB Easement Area. (Easement, Section 1(a) (i), (ii).) The Shared Facilities include BCB. (Easement, Recitals A, F.)

10. Under the Easement, Avaron retains the right to use the BCB Easement Area for all lawful purposes, so long as the uses do not unreasonably interfere with the rights granted to Crosby under the Easement. (Easement, Section 1(b) (ii).)

11. The Easement requires that Crosby shall use commercially reasonable efforts to maintain the Shared Facilities in good repair and safe and attractive condition at all times in accordance with industry standards, and to contract for personnel to operate the security gate that limits access to BCB. (Easement, Section 3(a).)

12. The Easement requires Crosby to defend and indemnify Avaron against any third party claims which arise out of any negligence or intentional misconduct by Crosby. However, the indemnity obligation does not apply to the extent any third party claim arises from Avaron's negligence or willful misconduct. (Easement, Section10.)

13. The Easement also includes the following in Section 15(e):

> Special Remedy. For a Dispute in which the referee finds that the party then responsible for performing the obligations under Section 3 and/or Section 5 materially breached its obligations under Section 3 and/or Section 5 hereunder, if requested by the other party, and provided the referee makes the "Finding" (as defined below), in addition to other remedies the referee may award for such breach, the referee shall have the right and power to impose a special remedy under which the rights and obligations of the parties under Section 3 and Section 5 would be reversed such that the other party would be obligated to maintain the Shared Facilities and Santa Fe Hills Improvements under Section 3 and to operate the Gate, except that Crosby HOA would continue to be obligated under Section 5(d).

## PRIOR LITIGATION

14. Avaron sued Crosby on August 4, 2015 on various claims arising out of the Easement, including issues related to vehicle speed and safety on BCB. (San Diego Superior Court Case No. 37-2015-0026055-CU-MC-CTL (the "First Lawsuit").)

15. Pursuant to the Easement, the Superior Court referred the First Lawsuit to Referee Hon. William J. Howatt, Jr. (Ret.) (the "Referee").

16. On October 20, 2016, the Referee submitted his Report. That Report included the following:

a. The most significant safety issue presented during the testimony of residents of the Avaron is the excessive speed of the residents, guests and suppliers of the Crosby travelling along the BCB. (Report, 17:24-28.)

b. [Former Avaron board member Robert Doustdar] felt like he had made significant progress with the Crosby board when he received a copy of Plaintiff's Exhibit 125 which was notice to Crosby residents of increased speed patrols by Crosby patrol units. Unfortunately the speeding violations continue by Crosby residents, visitors and suppliers using the north-south access of the BCB. (Report, 17:27-18:8.)

c. Fariba Babakhani is a resident of Avaron and also a past board member who expressed serious concerns regarding the speeding along the BCB. There are many young children in the community who are at risk due to the speeding by Crosby residents who will not comply with the 25 MPH speed limit. (Report, 18:26-19:3.)

d. Kenneth Taylor is the site manager for GMI, the gate guards and roving patrol personnel for the Crosby and the Avaron. He directs 2 hours of roving patrols along the BCB within the Avaron community for enforcement of stop sign and speed violations. He testified that speeding is a community-wide problem. When he attempts to stop and issue a citation, only 1 in 10 will stop and he has no authority to pull over and enforce a traffic violation in either the Crosby or Avaron community. (Report, 19:4-13.)

e. The [Easement] at page 5, paragraph 3. Maintenance Obligations. subparagraph a. Shared Facilities. States that "Crosby HOA shall use commercially reasonable efforts to maintain the Shared Facilities in good repair, **<u>and safe</u>** and attractive condition at all time in accordance with industry standards." (Emphasis in original Report). This includes the roadway. Avaron argues that this language includes enforcement of the 25

MPH speed limit, stop sign enforcement, and pedestrian crossings. (Report, 20:8-17.)

f. Avaron's argument that the responsibility for safety enforcement of speed limit, stop sign violations and crosswalk violations makes absolute sense. First, this is from an historical prospective a responsibility accepted by Starwood/Crosby in order to obtain the easement for the north/south access along BCB; Second it has been enforced although on a very limited and ineffectual bases per Mr. Taylor, by Crosby which recognizes its responsibility, and Third, Crosby is the only entity that could enforce against its residents as Avaron would have no authority to stop Crosby residents. (Report, 20:18-21:2.)

17. The Referee's Report included the following Declaration:

> **THE CROSBY HOA HAS THE RESPONSIBILITY AND THE DUTY TO EFFECTIVELY, ROUTINELY, REGULARLY, ENFORCE THE 25 MPH SPEED LIMIT, STOP SIGN AND CROSSWALK VIOLATIONS ON BING CROSBY BOULEVARD WITHIN THE AVARON COMMUNITY AND REPORT THE NUMBER OF CITATIONS ISSUED TO CROSBY RESIDENTS, SUPPLIERS, VISITORS AND GOLF COURSE VISITORS ON A MONTLY BASIS TO THE AVARON BOARD ALONG WITH THE DISPOSITION OF EACH CITATION.**

18. The Superior Court entered Judgment in the First Action based on the Referee's Report. The Judgment is final and includes the following:

> SPEED ENFORCEMENT AND STREET SAFETY: THE CROSBY HOA HAS THE RESPONSIBILITY AND THE DUTY TO EFFECTIVELY, ROUTINELY, REGULARLY, ENFORCE THE 25 MPH SPEED LIMIT, STOP SIGN AND CROSSWALK VIOLATIONS ON THE BING CROSBY BOULEVARD WITHIN THE AVARON COMMUINTY AND REPORT THE NUMBER OF CITATIONS ISSUED TO THE CROSBY RESIDENTS, SUPPLIERS, VISITORS AND GOLF COURSE VISITORS ON A MONTHLY BASIS TO THE AVARON BOARD ALONG WITH THE DISPOSITION OF EACH CITATION ISSUED.

19. Pursuant to the California Vehicle Code, no person shall drive a vehicle at a speed greater than is reasonable or prudent or at a speed that endangers the safety of persons or

property. (Cal. Veh. Code § 22350.) Twenty five miles per hour is the *prima facie* speed limit in a residential district. (*Id.*, § 22352(b)(1).)

**THE CURRENT DISPUTE**

20. Contrary to the Easement and the Referee's Report and the Judgment in the First Lawsuit, Crosby has not carried out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB. Therefore, just as in the First Lawsuit, the most significant safety issue presented here is once again the excessive speed of the residents, guests and suppliers of the Crosby travelling along the BCB, and there are many young children (as well as adults) who are at risk due to the speeding by Crosby residents and others who do not comply with the 25 mile per hour speed limit.

21. Crosby installed a speed camera on BCB approximately 20 months after the Referee's Report. However, the speed camera did not serve to effectively, routinely and regularly enforce the 25 mile per hour speed limit. Plaintiff is informed and believes and thereon alleges that the data from the speed camera actually confirms that the 25 mile per hour speed limit is regularly exceeded by traffic on BCB. Additionally the position of the camera is hundreds of yards from Avaron homeowners - hence the camera does nothing to address the significant safety issue to the Avaron members associated with speeding in the location of the Avaron development on BCB.

22. Crosby also continued with patrol efforts on BCB. However, the patrol efforts did not serve to effectively, routinely and regularly enforce the 25 mile per hour speed limit. Plaintiff is informed and believes and thereon alleges that Crosby did not even ticket drivers unless they exceeded 35 miles per hour (40% over the speed limit); that as former Avaron board member Robert Doustdar noted, speeding violations continue despite speed patrols by Crosby patrol units; that as the Crosby gate guard manager stated, speeding is a community-wide problem and that only one in ten speeding vehicles even stop for the Crosby patrols and the Crosby patrols have no actual authority to pull over a vehicle and enforce a traffic violation on BCB; and Avaron has no authority to stop Crosby residents or others who are speeding on BCB.

23. Faced with these circumstances, Avaron caused five speed bumps to be installed on BCB. This was necessary in order for Avaron to perform its duties to maintain the safety of the Avaron community and the road Avaron owns – BCB. Installing the speed bumps was also fully within Avaron's legal rights as the owner of BCB, and were not in violation of the non-exclusive Easement because the speed bumps did not unreasonably interfere with the rights granted to Crosby under the Easement. (Easement, Section 1(b) (ii).)

24. After the speed bumps were installed, Crosby and its members began an organized protest referred to as "Operation Honk," whereby drivers would honk their horns every time they drove over a speed bump in order to intentionally disturb, harass and annoy the Avaron members and residents. Crosby residents also engaged in other organized efforts to intentionally disturb, harass and annoy the Avaron members and residents, including but not limited to throwing food and trash from their cars.

25. On or about May 25, 2018, Crosby's contractor, AMS Paving, began removing the speed bumps on BCB without Avaron's consent, and did succeed in removing one of the five speed bumps. Therefore, Avaron filed this case.

26. On or about June 7, 2018, the Superior Court issued an Order in this action that there will be no further removal of speed bumps on BCB pending further order of the court.

27. Crosby complained that the speed bumps were not in conformity with certain requirements that apply to such speed control devices based on the fact that BCB is a designated access road for emergency personnel.

28. In response to Crosby's stated concern, Avaron coordinated with the emergency responders in order to bring the speed bumps into compliance with their requirements.

29. On or about August 24, 2018, San Diego Fire-Rescue representative Eddie Villavicencio approved in writing installing what he referred to as "speed lumps" on BCB, contingent on factors including (a) existing speed bumps are removed; (b) speed lumps will be installed per city requirements and specifications; and (c) speed lumps are installed in same locations as the speed bumps.

30. Avaron contracted with paving contractor NPG, Inc. ("NPG") to have the necessary work done to assure that the speed control devices were modified to be compliant speed lumps.

31. In order to assure the modification was performed properly, the speed bumps could not be converted into speed lumps; instead, it was necessary to remove the speed bumps and replace them with speed lumps.

32. NPG began the work to modify the speed bumps into compliant speed lumps on September 14, 2018.

33. On September 14, 2018, during the course of NPG's work converting the speed bumps to speed lumps, the Referee ordered as follows on Crosby's ex parte application:

1. Avaron may continue its removal of all speed bumps located on Bing Crosby Boulevard ("'BCB") to comply with the San Diego Municipal Code and provide unimpeded fire and emergency access on and through BCB.
2. Avaron shall not replace the speed bumps that have been removed with speed lumps or any other traffic calming device or improvement during the pendency of this dispute.
3. Avaron may modify existing speed bumps that have not been removed to come into compliance with San Diego City requirements provided that if removed, even for modification, once removed the speed bumps shall remain removed and may not be replaced with a "speed lump"
4. This Order shall remain in effect until a final adjudication is made on the merits of this case or further order by the Referee.

34. As a result of the Referee's September 14, 2018 Order, Avaron could not complete the process of converting the speed bumps to speed lumps; BCB currently has no speed bumps or speed lumps; Crosby residents and their guests are continuing to create safety issues by driving at excessive speed on BCB; and Crosby is not carrying out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB. To the contrary, the Crosby has

actively undertaken to not enforce the 25 mile per hour speed limit, including by seeking to prevent Avaron from converting the speed bumps into speed lumps.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

35. Plaintiff incorporates paragraphs 1-34 of the First Amended Complaint by reference.

36. The Easement is a binding contract between Avaron and Crosby.

37. Avaron fully complied with its obligations and duties under the Easement, except such obligations and duties whose performance was excused.

38. Crosby breached, and has continued to breach, its obligations and duties under the Easement by, *inter alia*:

a. Failing and refusing to carry out its duty to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards.

b. Failing and refusing to carry out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB.

c. Damaging the speed bumps installed by Avaron.

d. Interfering with Avaron's right to install speed lumps on BCB.

39. As a direct result of Crosby's breaches of the Easement, Avaron has been damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**(Private Nuisance)**

40. Plaintiff incorporates paragraphs 1-39 of the First Amended Complaint by reference.

41. Defendants' conduct in (i) failing and refusing to carry out its duty to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; (ii) failing and refusing to carry out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit

on BCB; (iii) damaging the speed bumps installed by Avaron; and (iv) interfering with Avaron's right to install speed lumps on BCB constitutes a private nuisance in that it obstructs Avaron's use of its property (BCB) and interferes with the quiet use of Avaron's property and the property owned by Avaron's members.

42. The private nuisance caused by Defendants' conduct has interfered, and continues to interfere, with the quiet use and enjoyment by Avaron's members of BCB and the Avaron residents' and members' private property.

43. The private nuisance caused by Defendants' conduct has created, and continues to create, an unreasonable risk of harm to the residents of Avaron and their guests.

44. Defendants also caused further private nuisance directed toward Avaron and its members in the form of Operation Honk and throwing food and trash from their cars.

45. Plaintiff properly engaged in self-help to abate the nuisance caused by Defendants, but Defendants interfered with Avaron's self-help remedies as well.

46. Avaron has been damaged by the Defendants' continuing private nuisance in an amount to be proven at trial.

47. Defendants' conduct in creating and continuing the private nuisance has been willful, malicious and intentional, entitling Plaintiff to punitive damages.

48. Plaintiff also seeks an injunction preventing Defendants from continuing their private nuisance and, *inter alia*, permitting Plaintiff to install speed lumps on BCB in accord with the directions from San Diego Fire-Rescue and any other applicable rules or regulations.

49. Avaron also seeks an injunction against other forms of nuisance by Crosby and its members and those operating at its direction, including but not limited to Operation Honk and throwing food and trash from their cars.

**THIRD CAUSE OF ACTION**

**(Public Nuisance)**

50. Plaintiff incorporates paragraphs 1-49 of the First Amended Complaint by reference.

51. Defendants' conduct in (i) failing and refusing to carry out its duty to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; (ii) failing and refusing to carry out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB; (iii) damaging the speed bumps installed by Avaron; and (iv) interfering with Avaron's right to install speed lumps on BCB constitutes a public nuisance in that it obstructs Avaron's and others' use of Avaron's property (BCB) and interferes with the quiet use of Avaron's property and the property owned by Avaron's members by those members and others.

52. The public nuisance caused by Defendants' conduct has interfered, and continues to interfere, with the quiet use and enjoyment by Avaron's members of BCB and the Avaron residents' and members' private property.

53. The public nuisance caused by Defendants' conduct has created, and continues to create, an unreasonable risk of harm to the residents of Avaron and their guests.

54. Defendants also caused further private nuisance directed toward Avaron and its members in the form of Operation Honk and throwing food and trash from their cars.

55. Avaron has been damaged by the Defendants' continuing public nuisance in an amount to be proven at trial.

56. Defendants' conduct in creating and continuing the public nuisance has been willful and intentional, entitling Plaintiff to punitive damages.

57. Plaintiff also seeks an injunction preventing Defendants from continuing their public nuisance and, *inter alia*, permitting Plaintiff to install speed lumps on BCB in accord with the directions from San Diego Fire-Rescue and any other applicable rules or regulations.

58. Avaron also seeks an injunction against other forms of nuisance by Crosby and its members and those operating at its direction, including but not limited to Operation Honk and throwing food and trash from their cars.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief)**

59. Plaintiff incorporates paragraphs 1-58 of the First Amended Complaint by reference.

60. A controversy has arisen between the Parties regarding their respective rights and duties under the Easement.

61. Avaron contends that the Easement requires Crosby, *inter alia*, (i) to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and (ii) to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB. Avaron further contends that the Easement and the law permit Avaron to install speed lumps on its own road – BCB – and preclude Crosby from removing any speed lumps.

62. Avaron contends that Crosby has not (i) used commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and/or (ii) effectively, routinely and regularly enforced the 25 mile per hour speed limit on BCB. Avaron further contends that Crosby has improperly interfered with Avaron installing speed lumps on its own road.

63. Avaron is informed and believes that Crosby contends that the Easement does not require Crosby (i) to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and/or (ii) to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB. Avaron is further informed and believes that Crosby contends contends that the Easement and the law do not permit Avaron to install speed lumps on its own road – BCB – or preclude Crosby from removing any speed lumps.

64. Avaron is further informed and believes that Crosby contends that Crosby has (i) used commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and/or (ii) effectively, routinely and regularly enforced the 25 mile per hour speed limit on BCB, and that Crosby has not improperly interfered with Avaron installing speed lumps on its own road.

65. The safety of those using BCB and the Avaron community and residents are at risk so long as this dispute continues.

66. Avaron seeks a prompt judicial declaration regarding the Parties' rights and obligations under the Easement and at law.

67. Avaron has no adequate and speedy remedy at law.

**FIFTH CAUSE OF ACTION**

**(Injunction)**

68. Plaintiff incorporates paragraphs 1-67 of the First Amended Complaint by reference.

69. The safety of those using BCB and the Avaron community and residents are at risk so long as Crosby continues to (i) fail and refuse to carry out its duty to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; (ii) fail and refuse to carry out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB; and bumps installed by Avaron; and (iii) interfere with Avaron's right to install speed lumps on BCB.

70. Avaron seeks an injunction against Crosby's continuing interference with Avaron's right to install speed lumps on BCB.

71. Avaron also seeks an injunction against other forms of nuisance by Crosby and its members and those operating at its direction, including but not limited to Operation Honk and throwing food and trash from their cars.

72. Avaron and its members will suffer irreparable injury if an injunction is not issued.

73. Avaron has no plain, speedy or adequate remedy at law for the unsafe condition of BCB due to Crosby's failure to perform its duties under the Easement and Crosby's interference with Avaron's rights with respect to BCB.

## PRAYER

**WHEREFORE**, Avaron prays for judgment against Defendants, and each of them, as follows:

1. For damages according to proof;
2. For punitive damages;
3. For a declaration that:
   a. The Easement requires Crosby, *inter alia*, (i) to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and (ii) to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB;
   b. Crosby has failed (i) to use commercially reasonable efforts to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards to maintain the Shared Facilities in good repair, and safe and attractive condition at all time in accordance with industry standards; and (ii) to effectively, routinely and regularly enforce the 25 mile per hour speed limit on BCB.
   c. Avaron may install speed lumps BCB; and
   d. Crosby may not remove any speed lumps.
4. For an injunction permitting Avaron to install speed lumps on BCB and prohibiting Defendants from interfering with, damaging, harming, removing or altering the speed lumps;

5. For an order that Crosby must pay the cost incurred by Avaron to remove the speed bumps;

6. For an order that Crosby must pay 81.5% of the costs to design, install and maintain the speed lumps;

7. For an injunction prohibiting Crosby and its members and those operating at its direction from engaging in harassing behavior directed to Avaron or its residents, including but not limited to Operation Honk and throwing food and trash from their cars;

8. For attorneys' fees;

9. For costs of suit; and

10. For such other and further relief as the Court may deem proper.

Dated: September 18, 2018

MORRISON & FOERSTER LLP

By: ______________________
Mark C. Zebrowski

Attorneys for Plaintiff
AVARON COMMUNITY ASSOCIATION

MARK C. ZEBROWSKI (BAR NO. 110175)
MZebrowski@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Plaintiff
AVARON COMMUNITY ASSOCIATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

| | |
|---|---|
| AVARON COMMUNITY ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION; and DOES 1-10,<br><br>Defendants. | Case No. 37-2018-00026012-CU-BC-NC<br><br>**PROOF OF SERVICE**<br><br>Dept: N-27<br>Judge: Hon. Jacqueline M. Stern<br><br>Complaint Filed: May 25, 2018 |

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 12531 High Bluff Drive, San Diego, California, 92130-2040. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on September 18, 2018, I served a copy of:

**FIRST AMENDED COMPLAINT**

☒ **BY U.S. MAIL [Code Civ. Proc sec. 1013(a)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 12531 High Bluff Drive, San Diego, California, 92130-2040 in accordance with Morrison & Foerster LLP's ordinary business practices.

☒ **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

Rebecca L. Reed
Alex G. Brizolis
Procopio Cory Hargreaves & Savitch, LLP
525 B Street, Suite 2200
San Diego, CA 92101
Tel: 619-238-1900
rebecca.reid@procopio.com
alex.brizolis@procopio.com

Attorneys for Defendant
THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 18, 2018, at San Diego, California.

Christine Gordon