James A. Stankowski (SBN 106367)
james.stankowski@wilsonelser.com
Paul S. White (SBN 146989)
paul.white@wilsonelser.com
David M. Morrow (SBN 175776)
david.morrow@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone: (213) 443-5100
Facsimile: (213) 443-5101

Attorneys for Defendant,
IRONSHORE SPECIALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION,

Plaintiff(s),

v.

IRONSHORE SPECIALTY INSURANCE COMPANY,,

Defendant(s).

Case No.: 19CV2369 WQHNLS

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS; STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Filed concurrently with Memorandum of Points and Authorities; Declaration of Ashley Grater; Request for Judicial Notice; Appendix of Exhibits; Evidentiary Objections to Declaration of Richard Salpietra]

Judge: Hon. William Q. Hayes
Courtroom: 14B
Date: May 4, 2020

Defendant IRONSHORE SPECIALTY INSURANCE COMPANY ("Ironshore" or "Defendant") respectfully submits this brief in opposition to Plaintiff THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION ("Crosby" or "Plaintiff") motion for partial summary judgment:

## RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| PLAINTIFF'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Defendant Ironshore Specialty Insurance Company ("Ironshore") issued Policy Number 00208480 - a Not-For-Profit Entity and Directors, Officers Liability Insurance Policy covering Policy Period July 2, 2017 - July 2, 2018 and providing a $1,000,000.00 limit of liability (the "Policy") to The Crosby.<br><br>Declaration of Richard Salpietra ("Salpietra Decl."), ¶ 2 and Exhibit 1. | 1. Undisputed. |
| 2. Insuring Section I(C) of the Policy provides:<br>"The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment** | 2. Undisputed. |

| | |
|---|---|
| **Practices Claim**) first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII."<br><br>Salpietra Decl., **Ex. 1**, at p. 008. | |
| 3. The Policy defines "**Claim**" in relevant part as "a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading . . ."<br><br>Salpietra Decl., **Ex. 1**, at § II(B), p. 009 | 3. Undisputed. |
| 4. The Policy defines "**Wrongful Act**" in relevant part as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty . . . by the **Not-For-Profit Entity**."<br><br>Salpietra Decl., **Ex. 1**, at § II(X), p. 012. | 4. Undisputed. |
| 5. Item 4 of the Policy's Declarations Page indicates the | 5. Undisputed, <u>but incomplete</u>, and Defendant objects to the |

| | |
|---|---|
| Retention for a "**Claim** other than an **Employment Practices Claim**" is $50,000.<br><br>Salpietra Decl., **Ex. 1**, at p. 003. | characterization of the required Retention as merely "indicated." ITEM 4 of the policy Declarations is conspicuously labelled, "RETENTIONS", and requires that the "Retention" for a "**Claim** other than an **Employment Practices Claim**" is $50,000. (See Salpietra Decl., **Ex. 1**, at p. 003.) |
| 6. Section V of the Policy provides, in part:<br>"The Retention stated in Item 4 of the Declarations shall apply to all covered **Loss**, including **Costs of Defense**."<br><br>Salpietra Decl., **Ex. 1**, at § V, p. 015. | 6. Undisputed, <u>but incomplete</u>, as other policy terms are equally relevant to Plaintiff's obligation to satisfy the $50,000 Retention on **Costs of Defense**.<br>Sections V(B) of the Policy provides:<br>**B.** One Retention shall apply to **Loss** arising from each **Claim** . . .<br>(Salpietra Decl., **Ex. 1**, at § V, p. 015.)<br>Also, the Declarations page of the Policy provides that: "Amounts incurred as **Costs of Defense** shall . . . be applied against the retention[.]" (Salpietra Decl., **Ex. 1**, at DECLARATIONS, p. 003.) |
| 7. Section VI(C) of the Policy | 7. Undisputed that Section VI(C) |

| | |
|---|---|
| provides, in part:<br>"The **Insured**, and not the **Insurer**, have the duty to defend all claims, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim**. Such a tender of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend."<br>Salpietra Decl., **Ex. 1**, at § VI(C), p. 016. | of the Policy provides as stated, although the second sentence of Section VI(C) is irrelevant because Crosby retained counsel of its choice, as agreed upon with Ironshore, and therefore Ironshore had no "duty to defend."<br>Crosby "retain[ed] counsel as is mutually agreed upon with the **Insurer"** Ironshore, thereby dictating that "the **Insured** and not the **Insurer**, has the duty to defend all **Claims"**, and precluding Ironshore from having an alternative "duty to defend" under the second clause of Section VI(C).<br>(See Declaration of Ashley Grater filed herewith ["Grater Decl."], ¶¶ 11, 12, 16 and 17, and "Defendant's Appendix of Exhibits" filed herewith ["Appendix"], Exhibits "F", "H" at pp. 1-3, "K" at p. 2, and "L" at p. 2.) |
| 8. Section VI(F) of the Policy provides, in part:<br>"The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any **Claim**, provided | 8. Undisputed. |

| | |
|---|---|
| such **Claim** is covered by this Policy. Any advancement shall be on the condition that:<br>(1) the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Not-For-Profit Entity**;<br>. . ."<br><br>Salpietra Decl., **Ex. 1**, at § VI(F), p. 016. | |
| 9. The Policy does not contain any language conditioning the Not-For-Profit Entity's right to tender defense of a Claim to Ironshore on satisfaction of the Retention.<br><br>*See generally* Salpietra Decl., **Ex. 1**. | 9. Disputed.<br>Several Policy terms expressly condition Ironshore's payment of defense costs on Crosby's prior satisfaction of the $50,000 Retention, without distinction between whether there is a duty to "advance" defense costs or a "duty to defend". Section IV(A) of the Policy provides that Ironshore's duty to pay policy benefits commences after Crosby's payment of the Retention: "The **Insurer** shall be liable to pay **Loss** [including **Costs of Defense**] in excess of the applicable Retention amount stated in Item 4 of the Declarations. . ." (Salpietra Decl., |

| | |
|---|---|
| | **Ex. 1**, at p. 015.) Sections V(A) and (B) of the Policy further provide, respectively, that the $50,000 Retention "shall apply to all covered **Loss**, including **Costs of Defense** . . .", and that "One Retention shall apply to **Loss** arising from each **Claim**" (Salpietra Decl., **Ex. 1**, at p. 015.) |
| 10. On May 25, 2018, Avaron Community Association ("Avaron") filed a complaint against The Crosby and AMS Paving, Inc. in an action styled *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association*, *et al*. and assigned San Diego County Superior Court Case Number 37-2018-00026012-CU-BC-NC (the "Avaron Lawsuit").<br><br>Salpietra Decl., ¶ 3 & **Exhibit 2**. | 10. Undisputed, but <u>incomplete</u>. The Avaron Lawsuit filed on May 25, 2018 (the "2018 Avaron Lawsuit") lawsuit did not trigger a right to coverage or advancement of defense costs under the Policy because it arose out of, was based upon the same subject matter as, and related to the prior lawsuit that Avaron filed against Crosby in 2015 ("2015 Avaron Lawsuit") also alleging Crosby's breach of duty to maintain and enforce speed limits on Bing Crosby Boulevard. (See Grater Decl., ¶¶ 4-6 and Appendix Exhibits "A," "B", and "C.") |
| 11. The Avaron Lawsuit alleged, among other things, that The Crosby (1) planned to remove speed bumps n | 11. Undisputed, but <u>incomplete</u>. The 2018 Avaron Lawsuit also alleged that Crosby breached the |

| | |
|---|---|
| Avaron's property without approval, which removal would allow The Crosby's residents to speed through the area, in turn endangering the health, welfare, and safety of Avaron's residents; and (2) instigated and caused the creation of "Operation Honk," an alleged coordinated effort through which residents of The Crosby repeatedly honked their car horns when they passed over speed bumps located on Avaron's property, infringing on Avaron's residents' quiet use and enjoyment of their property.<br><br>Salpietra Decl., ¶ 3 & Ex. 2 at p. 005. | "Shared Use Maintenance Agreement" concerning Crosby's duties pertaining to the easement road over Avaron's property. (Salpietra Decl., Ex. 2 at p. 004.) |
| 12. The Avaron Lawsuit asserted causes of action against The Crosby for, among other things, Intentional Tort, Breach of Contract, Nuisance, and Destruction of Property.<br><br>Salpietra Decl., ¶ 3 & Ex. 2 at p. 003. | 12. <u>Disputed</u>.<br>The Complaint in the 2018 Avaron Lawsuit alleged exactly three causes of action against Crosby: (1) Breach of Contract, for breaching the "Shared Use Maintenance Agreement" by removing the speed bumps on the easement road; (2) Nuisance, for Crosby's residents honking the horns of their vehicles and interfering with Avaron's quiet enjoyment; and (3) Intentional Tort, for Crosby and its |

| | |
|---|---|
| | contractor's removal of Avaron's speed bumps.<br>(Salpietra Decl., Ex. 2 at p. 004-006.) |
| 13. The Avaron Lawsuit sought compensatory damages, punitive damages, and injunctive relief.<br>Salpietra Decl., ¶ 3 & Ex. 2 at p. 003. | 13. Undisputed. |
| 14. Avaron also filed an *ex parte* application for an injunction and the matter was initially scheduled for a hearing on June 7, 2018.<br>Salpietra Decl., ¶ 4. | 14. Disputed, as unsupported by the proffered evidence. (See Evidentiary Objections to Declaration of Richard Salpietra, filed herewith ["Evidentiary Objections"].)<br>Irrelevant, as Crosby never provided the "*ex parte* application for an injunction" to Ironshore, and therefore it is irrelevant to coverage and this action. |
| 15. On June 4, 2018, before the Avaron Lawsuit was served, The Crosby tendered the Lawsuit to Ironshore through its third-party claim administrator, York Pro, Inc.<br>Salpietra Decl., ¶ 5. | 15. Disputed, and Defendant objects to the characterization "Crosby tendered the Lawsuit to Ironshore."<br>Crosby notified its broker of an un-served suit, which therefore could not yet constitute a "**Claim**" creating any coverage duties on Ironshore's part. (See Salpietra Decl., **Ex. 1**, at p. 009, Definition "**B.** |

| | |
|---|---|
| | **Claim**".) |
| 16. In an email dated June 4, 2018, which attached the Avaron Lawsuit, The Crosby's counsel stated, in part:<br>"Pursuant to the terms of its policy, The Crosby hereby tenders its defense to its insurance carriers, and request that counsel be appointed within a reasonable time so that the proper responsive pleading may be filed within the time allowed by the Code of Civil Procedure. It is our understanding that a TRO in this matter is scheduled for Thursday, June 7, 2018. The Board will have the firm of Procopio, Hargreaves & Savitch LLP represent it at the TRO hearing if a defense attorney is not appointed in time.<br>Salpietra Decl., ¶ 5 & Exhibit 3 at 001. | 16. Undisputed. |
| 17. The Crosby was served with Avaron's *ex parte* application on June 6, 2018.<br>Salpietra Decl., ¶ 6. | 17. <u>Disputed</u>, as unsupported by the proffered evidence. (See Evidentiary Objections to Declaration of Richard Salpietra, filed herewith ["Evidentiary Objections"].)<br>Irrelevant, as Crosby never |

| | |
|---|---|
| | provided the "*ex parte* application" to Ironshore, and therefore it is irrelevant to coverage and this action. |
| 18. At the time The Crosby was served with Avaron's *ex parte* application, it understood the matter was scheduled for a hearing on June 7, 2018.<br><br>Salpietra Decl. ¶ 6. | 18. Disputed, as unsupported by the proffered evidence. (See Evidentiary Objections.)<br><br>Irrelevant, as Crosby never provided the "*ex parte* application" to Ironshore, and therefore it is irrelevant to coverage and this action. |
| 19. Ironshore first responded to The Crosby's tender on July 9, 2018 and notified The Crosby that it had assigned Ashley Grater to handle the Claim.<br><br>Salpietra Decl., ¶ 7 & Exhibit 4. | 19. Disputed as to the characterization of Crosby "tender."<br><br>Crosby notified its broker of an un-served suit, which therefore could not yet constitute a "**Claim**" creating any coverage duties on Ironshore's part. (See Salpietra Decl., **Ex. 1**, at p. 009, Definition "**B. Claim**".) |
| 20. In an email dated July 9, 2018, Ms. Grater responded to an inquiry from Mr. Salpietra regarding the status of Ironshore's coverage evaluation and stated, in part:<br><br>"We hope to have coverage determined by the end of this week. Under the Policy, Ironshore does | 20. Undisputed that Ironshore reiterated that Ironshore has not "duty to defend" when the insured has not satisfied its retention, and the insured is defending itself through its counsel of choice. |

| | |
|---|---|
| not have a duty to defend and the Insured has a retention. As such, the Insured can continue to use its counsel of choice pending review by Ironshore."<br><br>Salpietra Decl., ¶ 8 & Exhibit 5 (emphasis added). | |
| 21. On July 11, 2018, The Crosby executed a Notice and Acknowledgment of Receipt with respect to the Summons and Complaint for the Avaron Lawsuit.<br><br>Salpietra Decl., ¶ 9 & Exhibit 6. | 21. Undisputed. |
| 22. Upon executing the Notice and Acknowledgment of Receipt for the Avaron Lawsuit, The Crosby understood that a responsive pleading would be due on August 10, 2018.<br><br>Salpietra Decl. ¶ 10. | 22. Disputed, as unsupported by the proffered evidence as to Crosby's "knowledge." (See Evidentiary Objections.)<br><br>Irrelevant, as the date a responsive pleading is due is irrelevant to coverage and this action if Crosby has not yet satisfied its Retention, and Ironshore's investigation and conduct is reasonable. |
| 23. On July 13, 2018, Ironshore denied coverage of the Avaron Lawsuit, citing the Policy's exclusions | 23. Undisputed. |

| | |
|---|---|
| for breach of contract (Exclusion N) and damage to or destruction of property (Exclusion D).<br><br>Salpietra Decl., ¶ 11 & Exhibit 7 at pp. 002-003. | |
| 24. On July 24, 2018, Ironshore responded to counsel for The Crosby's request for reconsideration and denied coverage of the Avaron Lawsuit again, this time citing the Policy's exclusion for Pollution, among others.<br><br>Salpietra Decl., ¶ 13 & Exhibit 8 at pp. 004-005. | 24. Undisputed. |
| 25. On August 20, 2018, Ironshore reversed its coverage position and agreed to provide a defense to the Avaron Lawsuit. In a letter from its coverage, Tracy Lewis, Ironshore advised that "as a courtesy to Crosby, Liberty hereby agrees to provide a defense to the Lawsuit without prejudice to Liberty's rights under the Policy."<br><br>Salpietra Decl., ¶ 14 & Exhibit 9 at p. 002. | 25. <u>Disputed</u> as incomplete and misleading.<br>The statement of an insurer's agent is irrelevant to the interpretation of an insurance policy or an insurer's duties. *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 865 (1992) ("The opinions of claims adjusters or other agents or employees of the insurer are . . . inadmissible to interpret an insurance contract."); *Feurzeig v. Ins. Co. of the West*, 59 Cal.App.4th 1276, 1285 fn.2 (1997) ("We question whether an agent's subjective |

| | |
|---|---|
| | interpretation of policy language is admissible. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3 [subjective understanding of contractual language not competent parol evidence]".)<br>On August 20, 2018, Ironshore agreed to advance Crosby's defense costs in the 2018 Avaron Lawsuit, subject to the terms of the Ironshore Policy, which includes the $50,000 retention. Ironshore did not agree "to defend" Crosby under the Policy, but agreed to advance defense costs pursuant to Section VI(C) of the Policy, and Crosby's own duty to defend through retention of its defense counsel, as follows:<br>"Pursuant to SECTION VI COSTS OF DEFENSE AND SETTLEMENTS, sub-section (C), Crosby shall retain defense counsel that is agreeable to Liberty [i.e., Ironshore] . . ."<br>(Salpietra Decl., Exh. 9 at p. 002; Grater Decl., ¶ 16 and Appendix Exhibit "K," p. 2.) |

| | |
|---|---|
| | (See Ironshore's "Statement of Additional Undisputed Material Facts" ["AUMF"], below, Fact No. 32.) |
| 26. On September 18, 2018, Avaron filed a first amended complaint that, among other things, supplemented Avaron's nuisance allegations by alleging The Crosby's residents engaged in "organized efforts to intentionally disturb, harass and annoy the Avaron members and residents, including but not limited to throwing food and trash from their cars."<br><br>Salpietra Decl., ¶ 15 and Exhibit 10 at ¶ 24, p. 007. | 26. Disputed, as unsupported by the proffered evidence, which lacks foundation and personal knowledge. (See Evidentiary Objections.)<br><br>Irrelevant, as Crosby does not submit evidence that it provided the "first amended complaint" to Ironshore, and therefore it is irrelevant to coverage and this action. See *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995); *Upper Deck Co. v. Federal Ins. Co.*, 358 F.3d 608, 613 (9th Cir. 2004) ("If new extrinsic evidence raises a potential covered claim, the insured should submit a new tender of defense. In the absence of a new tender, the insurer is not charged with knowledge of the extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage."); *Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal.App.4th 99, 110 (2005) ("Even if |

| | |
|---|---|
| | the additional allegations would have triggered Wausau's duty to defend, Mydrin never tendered the later complaint to Wausau. An insurer has no duty to continue to investigate the potential for coverage after it makes an informed decision on coverage at the time of tender.") |
| 27. Ironshore never offered to assign counsel to defend the Avaron Lawsuit.<br><br>Salpietra Decl., ¶ 16. | 27. Undisputed that Crosby retained counsel of its choice, as agreed upon with Ironshore, and therefore Ironshore had no "duty to defend." (Grater Decl., ¶¶ 11, 12, 16 and 17, and Appendix Exhibits "F", "H" at pp. 1-3, "K" at p. 2, and "L" at p. 2.)<br>See Crosby's Fact No. 7, above:<br>"The **Insured**, and not the **Insurer**, have the duty to defend all claims, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**."<br><br>(Salpietra Decl., **Ex. 1**, at § VI(C), p. 016.) |
| 28. Ironshore did not pay for any of The Crosby's defense costs incurred in connection with the Avaron Lawsuit until July 30, 2019, at which time | 28. Undisputed that Ironshore did not commence reimbursement of Crosby's defense costs until after Crosby's counsel's delayed |

| | |
|---|---|
| Ironshore reimbursed a portion of The Crosby's defense costs at significantly reduced rates, not the actual rates paid by The Crosby.<br><br>Salpietra Decl., ¶ 17. | submission of invoices, and delayed provision of an initial case report to permit review of the bills, but <u>incomplete</u>.<br><br>Crosby did not submit any defense bills to Ironshore until November 2018 and, despite numerous requests from Ironshore, Crosby's defense counsel did not provide an initial case report and budget, to allow Ironshore to evaluate the reasonableness of any defense bills, until March 3, 2019. (Grater Decl., ¶¶ 19 and 20, and Appendix Exhibits "M" and "N".) Once Crosby's defense counsel had successfully uploaded its invoices to Ironshore through Ironshore's payment portal, Counsel Link, Ironshore commenced advancing defense amounts in July 2019. (Grater Decl., ¶ 22.)<br><br>Ironshore's obligations only arise after Crosby's satisfaction of the $50K retention, and Crosby has not provided the Court with any evidence that it satisfied the retention, as |

| | |
|---|---|
| | necessary to demonstrate a right to coverage under the Policy. |
| 29. Ironshore has not reimbursed all defense costs incurred by The Crosby in defending the Avaron Lawsuit.<br><br>Salpietra Decl., ¶ 19. | 29. Disputed.<br><br>The Policy obligates Crosby as responsible for the first $50,000 of "Costs of Defense." (See Crosby's Fact No. 5, above.) Ironshore has advanced, at the rates agreed-upon with Crosby, all defense invoices that Crosby has submitted to Ironshore in connection with the 2018 Avaron Lawsuit. (See Ironshore's additional fact AUMF No. 33, below. Grater Decl., ¶ 17, and Appendix Exhibit "L", at pp. 1-2; Grater Decl., ¶ 22.) Crosby agreed to pay all amounts in excess of Ironshore's rates. (See Ironshore's additional fact AUMF No. 34, below. Grater Decl., ¶ 17, and Appendix Exhibit "L", at pp. 1-2.)<br><br>Unsupported by the proffered evidence, which lacks foundation and personal knowledge. (See Evidentiary Objections.) |
| 30. In August 2019, The Crosby entered into an agreement to settle the Avaron Lawsuit and Ironshore | 30. Undisputed, but irrelevant to the instant motion, which addresses the duty to advance defense costs, and |

| | |
|---|---|
| declined The Crosby's request to contribute toward the settlement. Salpietra Decl., ¶ 18. | not a duty to indemnify for a settlement, the terms of which no evidence has been presented. |

Opposing party also contends that the following <u>additional</u> material facts are in dispute, and show genuine issues of fact that preclude granting of Plaintiff's motion for partial summary judgment:

## <u>ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

| **DEFENDANT'S ADDITIONAL UNDISPUTED MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 1. On August 4, 2015, Crosby was sued by a neighboring homeowners association, the Avaron Community Association ("Avaron") in a matter entitled *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association*, San Diego Superior Court Case No. 37-2015-00026055-CU-MC-CTL (the prior "2015 Avaron Lawsuit"). | 1. Declaration of Ashley Grater filed herewith ["Grater Decl."], ¶ 4, and "Defendant's Appendix of Exhibits" filed herewith ["Appendix"], Exhibit "A." |
| 2. In the 2015 Avaron Lawsuit, Avaron alleged that Avaron and Crosby commonly owned a private road named Bing Crosby | 2. Grater Decl., ¶ 4, and Appendix Exhibit "A", and at Paragraphs 9-16, pp. 2-11. |

| | |
|---|---|
| Boulevard, that Crosby had an easement over a portion of the road owned by Avaron, and that that Crosby breached its duties under the parties' Easement Agreement to repair,<br>maintain, and enforce speed limits on the road. | |
| 3. Specifically, in the 2015 Avaron Lawsuit, Avaron alleged:<br>9. AVARON and CROSBY are parties to a recorded "Easement Agreement . . ."<br>10. . . . The private road known as Bing Crosby Boulevard . . . provides access to both communities . . . The Lot J southern segment of Bing Crosby Boulevard . . . separating the two communities is land wholly owned by AVARON.<br>11. The Easement Agreement grants an easement to CROSBY for ingress and egress to the CROSBY community over the | 3. Grater Decl., ¶ 4, and Appendix Exhibit "A", at Paragraphs 9-16, pp. 2-11. |

| | |
|---|---|
| AVARON-owned Lot J segment of Bing Crosby Boulevard . . .<br>12. The Easement Agreement describes certain costs which are to be shared between AVARON and CROSBY . . . [for] "the cost of operation, maintenance, repair, and replacement of the . . . Shared Facilities" . . . The "Shared Facilities" are defined as the "BCB [Bing Crosby Boulevard] Easement Area . . ."<br>13. Pursuant to the terms of the Easement Agreement, CROSBY is responsible for the maintenance of the defined easement area . . .<br>16. . . . CROSBY has repeatedly and continuously breached the Easement Agreement . . . as follows:<br>A. CROSBY fails to maintain the Shared Facilities . . . The prior failure by CROSBY . . . | |

| | |
|---|---|
| resulted in a catastrophic collapse of Bing Crosby Boulevard . . .<br>B. . . . CROSBY has failed to enforce the posted speed limit and stop signs on the shared portion of . . . Bing Crosby Boulevard that is subject to the Easement Agreement . . . | |
| 4. Crosby provided notice of the 2015 Avaron Lawsuit to Ironshore as a claim under the Ironshore policy in effect from 2015-2016. | 4. Grater Decl., ¶¶ 5 and 6, and Appendix Exhibits "B" and "C." |
| 5. Ironshore issued Non-For-Profit Entity and Directors, Officers Liability Insurance Policy No. 002084803 to Crosby, effective July 2, 2017 to July 2, 2018, providing an aggregate liability limit of $1,000,000.00 for all claims made or deemed made during the policy period (the Ironshore "Policy"). | 5. Grater Decl., ¶ 7, and Appendix Exhibit "D." |
| 6. The Policy defines "**Not-For-** | 6. Grater Decl., ¶ 7, and Appendix |

| | |
|---|---|
| **Profit Entity**" and "**Insured**" as Crosby, and "**Insurer**" as Ironshore. | Exhibit "D" at p. 10 (Definitions I and K). |
| 7. ITEM 4 of the policy Declarations, "RETENTIONS", provides that the "Retention" for a "**Claim** other than an **Employment Practices Claim**" is $50,000. | 7. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 3. |
| 8. The Declarations page of the Policy provides that: "**Amounts incurred as Costs of Defense shall . . . be applied against the retention**[.]**"** | 8. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 3. |
| 9. The Declarations page of the Policy also provides that: "**This Policy does not provide for any duty by the Insurer to defend those insured under the Policy**." | 9. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 3. |
| 10. Under Section I(C) of the Policy, the applicable Insuring Agreement provides: The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as | 10. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 8. |

| | |
|---|---|
| a result of a **Claim** . . . first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII. | |
| 11. Section II of the Policy, DEFINITIONS, provides:<br>**B.** "**Claim**" shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading . . .<br>**C.** **"Costs of Defense"** shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim** . . .<br>**L.** "**Loss**" shall mean compensatory damages . . ., | 11. Grater Decl., ¶ 7, and Appendix Exhibit "D" at pp. 8-12. |

| | |
|---|---|
| punitive or exemplary damages [where insurable], the multiple portion of any multiplied damage award,<br>judgments, settlements, pre- and post-judgment interest, <u>and **Costs of Defense**</u>.<br>. . .<br>**Q.** "**Pollutants**" shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any . . . counterpart thereof . . . **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and <u>*any noise*</u>. (Emphasis added.)<br>**R.** "**Pollution**" shall mean the actual, alleged or threatened | |

| | |
|---|---|
| discharge, release, escape or disposal of **Pollutants**<br>**S**. "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are the same, related or continuous, or **Wrongful Acts** which arise from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.<br>**X.** "**Wrongful Act**" shall mean: . . .<br>**(4)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty . . . by the **Not-For-Profit Entity**. | |
| 12. Section III of the Policy, EXCLUSIONS, provides that Ironshore "shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:" | 12. Grater Decl., ¶ 7, and Appendix Exhibit "D" at pp. 13-15. |

| | |
|---|---|
| **B**. alleging, arising out of, based upon or attributable to, any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;<br>**D**. for any actual or alleged . . . (2) damage to or destruction of any tangible property . . .<br>**J.** alleging, arising out of, based upon or attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**<br>**N.** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not-For-Profit Entity** . . | |

| | |
|---|---|
| . under any express contract or agreement. | |
| 13. Section IV(A) of the Policy provides: "The **Insurer** shall be liable to pay **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations . . ." | 13. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 15. |
| 14. Sections V(A) and (B) the Policy provide:<br>**A.** The Retention stated in Item 4 of the Declarations shall apply to all covered **Loss**, including **Costs of Defense**. . . .<br>**B.** One Retention shall apply to **Loss** arising from each **Claim** . . . | 14. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 15. |
| 15. Section VI(C) of the Policy provides:<br>"The **Insured**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim**. Such a tender | 15. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 16. |

| | |
|---|---|
| of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. Upon such a tender of the defense of a **Claim**, the Insurer shall assume the duty to defend." (Underlining added.) | |
| 16. Section VI(F) of the Policy provides: "The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any Claim, provided such Claim is covered by this Policy. Any advancement shall be on the condition that: (1) the appropriate Retention has been satisfied . . ." | 16. Grater Decl., ¶ 7, and Appendix Exhibit "D" at p. 16. |
| 17. On May 25, 2018, Crosby was again sued by Avaron in a matter entitled *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association*, San Diego Superior Court Case No. 37-2018-00026012-CU-BC-NC (the "2018 Avaron Lawsuit"), alleging Avaron | 17. Grater Decl., ¶ 8, and Appendix Exhibit "E." |

| | |
|---|---|
| had suffered damages due to Crosby's breach of a "Shared Use Maintenance Agreement" entered with Avaron, and other intentional acts. | |
| 18. In the Complaint filed in the 2018 Avaron Lawsuit, Avaron alleged that on April 27, 2007, plaintiff Avaron and defendant Crosby entered into a Shared Use Maintenance Agreement ("SUMA"), giving Crosby "an easement for ingress and egress over Avaron's property", identified as a "road." | 18. Grater Decl., ¶ 8, and Appendix Exhibit "E" at p. 4, Section BC-1. |
| 19. Avaron alleged that it installed speed bumps in the easement area, and that as of May 24, 2018 Crosby hired a contractor to remove the speed bumps in violation of the SUMA, and that on May 25, 2018 Crosby intentionally destroyed Avaron's property by removing one or more of the speed bumps. | 19. Grater Decl., ¶ 8, and Appendix Exhibit "E" at p. 4, Sections BC-1 and BC-2. |
| 20. Avaron also alleged that on or about May 20, 2018, Crosby created "Operation Honk," whereby | 20. Grater Decl., ¶ 8, and Appendix Exhibit "E" at p. 5. |

| | |
|---|---|
| Crosby's residents honked the horns of their vehicles as they passed over Avaron's speed bump in the easement area, infringing on the quiet use and enjoyment of Avaron's property. | |
| 21. Avaron's Complaint in the 2018 Avaron Lawsuit alleged against Crosby: (1) Breach of Contract, for breaching the "Shared Use Maintenance Agreement" by removing the speed bumps on the easement road; (2) Nuisance, for Crosby's residents honking the horns of their vehicles and interfering with Avaron's quiet enjoyment; and (3) Intentional Tort, for Crosby and its contractor's removal of Avaron's speed bumps. | 21. Grater Decl., ¶ 8, and Appendix Exhibit "E" at p. 3, Paragraph 10, and pp. 4-6. |
| 22. On or about June 4, 2018, before the Avaron suit had been served, Crosby's private counsel Richard Salpietra ("Salpietra") e-mailed the Avaron suit to Dana Diset at Crosby's insurance broker, among others, notifying them of the 2018 Avaron Lawsuit. | 22. Grater Decl., ¶ 9, and Appendix Exhibit "F". |

| | |
|---|---|
| 23. In his e-mail, Crosby's private counsel advised that Crosby had selected Rebecca Reed, Esq. and the Procopio, Cory, Hargreaves & Savitch LLP firm ("Procopio") to represent Crosby if defense counsel is not appointed beforehand. | 23. Grater Decl., ¶ 9, and Appendix Exhibit "F". |
| 24. On July 9, 2018, Ironshore sent a letter to Crosby's property manager, Vartan Yacoubian at keystonepacific.com, acknowledging receipt of the Avaron claim, and assigning Ironshore representative Ashley Grater ("Grater") to the claim. | 24. Grater Decl., ¶ 10, and Appendix Exhibit "G". |
| 25. On July 9, 2018, Crosby's private counsel sent a follow up email to Ironshore's representative asking if Crosby could keep the Procopio firm as defense counsel in the Avaron lawsuit, as follows: "Crosby retained Rebecca Reed of Procopio firm . . . If possible, the Crosby would like to keep her as defense counsel if they are acceptable to Ironshore." | 25. Grater Decl., ¶ 11, and Appendix Exhibit "H" at pp. 2-3. |
| 26. On July 9, 2018, Ironshore's | 26. Grater Decl., ¶ 11, and Appendix |

| | |
|---|---|
| representative sent an e-mail to Crosby's private counsel reiterating the Policy terms that Crosby, and not Ironshore, had a duty to defend itself through its retained counsel, subject to the Retention in the Policy, and provisionally agreeing to Crosby's chosen defense counsel, stating:<br>"Under the Policy, Ironshore does not have a duty to defend and the Insured has a retention. As such, the Insured can continue to use its counsel of choice pending review by Ironshore." | Exhibit "H" at p. 1. |
| 27. On July 11, 2018, the Avaron lawsuit was served when Crosby acknowledged service of it. | 27. Exhibit "O" to Request for Judicial Notice filed herewith ["RJN"]. |
| 28. On July 13, 2018, Ironshore's representative issued correspondence declining a duty to advance defense costs in connection with the Avaron Lawsuit. | 28. Grater Decl., ¶ 13, and Appendix Exhibit "I." |
| 29. On July 24, 2018, Ironshore's representative issued | 29. Grater Decl., ¶ 14, and Appendix Exhibit "J." |

| | |
|---|---|
| correspondence reaffirming Ironshore's declination of coverage. | |
| 30. Crosby requested reconsideration of Ironshore's declination of coverage. | 30. Grater Decl., ¶ 15. |
| 31. On August 20, 2018, Ironshore, through its coverage counsel Tracy Lewis, sent correspondence to Salpietra agreeing to advance Crosby's defense costs in the 2018 Avaron Lawsuit, subject to the terms of the Ironshore Policy, which includes the $50,000 retention, and reserving all of Ironshore's rights under the Policy and law, including the right to later seek a judicial determination that the Policy does not provide coverage in whole or part, and to seek reimbursement of any defense costs relating to non-covered claims pursuant to *Buss v. Sup. Ct.*, 16 Cal.4th 35 (1997). | 31. Grater Decl., ¶ 16, and Appendix Exhibit "K." |
| 32. Ironshore's agreement to advance Crosby's defense costs in the 2018 Avaron Lawsuit was explicitly subject to Section VI(C) of the Policy, and Crosby's own duty to | 32. Grater Decl., ¶ 16, and Appendix Exhibit "K", at p. 2. |

| | |
|---|---|
| defend through retention of its defense counsel, as follows: "Pursuant to SECTION VI COSTS OF DEFENSE AND SETTLEMENTS, sub-section (C), Crosby shall retain defense counsel that is agreeable to Liberty [i.e., Ironshore] . . ." | |
| 33. On September 14, 2018, Ironshore's representative communicated Ironshore's agreement to advance Crosby's defense costs incurred by Crosby's selected defense counsel, the Procopio firm, at Ironshore's customary defense rates. | 33. Grater Decl., ¶ 17, and Appendix Exhibit "L", at p. 2. |
| 34. On September 18, 2018, Crosby's counsel sent Ironshore's representative an email agreeing that Crosby would pay any amount of Crosby's defense bills in excess of Ironshore's customary defense rates. | 34. Grater Decl., ¶ 18, and Appendix Exhibit "L", at p. 1. |
| 35. Crosby did not submit any defense bills to Ironshore until November 2018. | 35. Grater Decl., ¶ 19, and Appendix Exhibit "M." |
| 36. Despite numerous requests from Ironshore, Crosby's defense | 36. Grater Decl., ¶ 20, and Appendix Exhibit "N." |

| | |
|---|---|
| counsel, Procopio, also failed to provide an initial case report and budget, so that Ironshore could evaluate the reasonableness of the bills, until March 3, 2019. | |
| 37. When Crosby's defense counsel at Procopio sent her first defense report to Ironshore on March 3, 2019, Crosby's independent counsel admitted that both the 2018 Avaron Lawsuit and the 2015 lawsuit between Crosby and Avaron each concerned maintenance and speed enforcement on same road, Bing Crosby Boulevard ("BCB"), advising:<br>"**II. Prior Litigation Between Avaron and Crosby.**<br>The easement and Easement Agreement were the subject of prior litigation between the parties, which directly impacts the current litigation. In 2015, Avaron sued Crosby in connection with, inter alia, Crosby's repair and maintenance obligations with respect to BCB [the "Prior Litigation"]. The matter was referred to a judicial referee, Hon. William Howatt, as required by the Easement Agreement. In that litigation, | 37. Grater Decl., ¶ 20, and Appendix Exhibit "N", at p. 2. |

| | |
|---|---|
| Hon. Howatt found, among other things, that the Crosby bears the obligation to enforce speed on BCB. Judge Howatt's decision was reduced to a judgment.<br><br>Following the Prior Litigation, Crosby hired an expert to evaluate speed on BCB, who opined that a traffic camera was appropriate to calm speed on one section of BCB. Crosby followed the advice of its expert and installed a lidar traffic camera. However, before it went live, Avaron contended that the camera was insufficient to calm speed on BCB, and that the Crosby had not complied with its duty to enforce speed on BCB. Avaron then unilaterally installed five illegal speed bumps on BCB contending that it has a right to do so because it is the owner of BCB." (Emphasis added.) | |
| 38. On June 25, 2019, Crosby's defense counsel at Procopio sent a communication to Ironshore referring to the 2015 Avaron Lawsuit between Crosby and Avaron as "phase 1" of the 2018 Avaron Lawsuit, and that Crosby in fact intended to litigate its attorneys' fees claim from the 2015 litigation | 38. Grater Decl., ¶ 21. |

| | |
|---|---|
| in the 2018 Avaron Lawsuit itself, as follows: "Crosby prevailed in phase 1 of the litigation, obtaining a ruling from J. Howatt that Crosby, alone, has the duty and obligation to enforce speed on BCB. Should the [current 2018] case proceed to trial, Crosby will seek to recover fees and costs expended litigating this initial phase of the case (in addition to fees for phase 2, if it prevails)." | |
| 39. Following the Procopio firm's successful uploading of invoices to Ironshore through Ironshore's payment portal, Counsel Link, Ironshore commenced advancing defense amounts in July 2019. | 39. Grater Decl., ¶ 22. |
| 40. The Crosby entered into an agreement with Avaron to settle the Avaron Lawsuit in August 2019. | 40. Grater Decl., ¶ 23. |
| 41. Ironshore has advanced, at the agreed-upon rates, all defense invoices that Crosby has submitted to Ironshore in connection with the 2018 Avaron Lawsuit. | 41. Grater Decl., ¶ 22. |

Dated: April 20, 2020

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ David M. Morrow*
James A. Stankowski
Paul S. White
David M. Morrow
Attorneys for Defendant,
IRONSHORE SPECIALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

## FEDERAL COURT PROOF OF SERVICE

**United States District Court, Southern District of California**
**Case No. 19CV2369 WQHNLS**

At the time of service, I was over 18 years of age and not a party to the action. My business address is 555 South Flower Street, Suite 2900, Los Angeles, California, 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On **April 20, 2020**, I served the following document(s): **DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS; STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on the following persons:

| | |
|---|---|
| FRANKLIN \| SOTO LLP<br>Joshua D. Franklin (SBN 264536)<br>josh@franklinsotolaw.com<br>Cheryl Dunn Soto (SBN 250892)<br>cheryl@franklinsotolaw.com<br>445 Marine View Avenue, Suite 300<br>Del Mar, CA 92014<br>Tel: (619) 872-2520<br>Fax: (619) 566-0221 | Attorneys for Plaintiff<br>THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION |

The documents were served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **April 20, 2020**, at Los Angeles, California.

*/s/Noemi Santiago*
Noemi Santiago