1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10
11   THE CROSBY ESTATE AT RANCHO            Case No.:  19-cv-2369-WQH-NLS
     SANTA FE MASTER ASSOCIATION,
12                                          **ORDER**
                                Plaintiff,
13
14   v.
15   IRONSHORE SPECIALTY
     INSURANCE COMPANY,
16
                                Defendant.
17

18   HAYES, Judge:

19          The matter before the Court is the Motion for Partial Summary Judgment filed by

20   Defendant Ironshore Specialty Insurance Company (ECF No. 72).

21   **I.    BACKGROUND**

22          On December 10, 2019, Plaintiff The Crosby Estate at Rancho Santa Fe Master

23   Association ("The Crosby") filed a Complaint against Defendant Ironshore Specialty

24   Insurance Company ("Ironshore"), arising from Ironshore's alleged failure to defend and

25   indemnify The Crosby in a 2018 state court lawsuit. (ECF No. 1). The Crosby asserted the

26   following claims against Ironshore: (1) breach of contract (duty to defend); (2) breach of

27   contract (duty to indemnify); (3) breach of contract (unauthorized retention); (4) tortious

28   breach of the implied covenant of good faith and fair dealing; and (5) declaratory relief.

1

On March 30, 2020, The Crosby filed a Motion for Partial Summary Judgment on the first claim for breach of contract (duty to defend), the third claim for breach of contract (unauthorized retention), and the fifth claim for declaratory relief. (ECF No. 15). On November 3, 2020, the Court issued an Order granting The Crosby's Motion for Partial Summary Judgment on the first claim for breach of contract (duty to defend), the third claim for breach of contract (unauthorized retention), and the fifth claim for declaratory relief. (ECF No. 37). The Court found, in relevant part, that Ironshore had a duty to defend The Crosby in the state court lawsuit from the date of The Crosby's June 4, 2018 tender, and Ironshore breached its duty by failing to "immediately mount[] and fund[] a defense." (*Id.* at 21).

On March 10, 2021, The Crosby filed a First Amended Complaint ("FAC"), asserting the same claims as the original Complaint but adding factual allegations. (ECF No. 53). On March 31, 2021, Ironshore filed an Answer to the FAC and a Counterclaim. (ECF No. 57).[1]

On June 10, 2021, Ironshore filed a Motion for Partial Summary Judgment "on the first and second causes of action in The Crosby's First Amended Complaint." (ECF No. 72 at 2).[2] On July 5, 2021, The Crosby filed an Opposition to the Motion for Partial Summary Judgment. (ECF No. 82). On July 12, 2021, Ironshore filed a Reply. (ECF No. 83). On October 28, 2021, the Court heard oral argument on the Motion for Partial Summary Judgment. (ECF No. 101). On November 4, 2021, the parties filed Supplemental Briefing. (ECF Nos. 103, 104). On November 11, 2021, the parties filed Responses to the Supplemental Briefing. (ECF Nos. 105, 106).

///

---

[1] The Counterclaim was dismissed by the Court on July 29, 2021, as untimely. (ECF No. 89).

[2] On the same day, The Crosby filed a Motion to Limit Testimony of Defendant's Expert Witness. (ECF No. 71). The Motion to Limit Testimony of Defendant's Expert Witness (ECF No. 71) is denied without prejudice to refile as a motion in limine after the Final Pretrial Conference.

## II.   CONTENTIONS

Ironshore contends that it "is entitled to partial summary judgment on The Crosby's First Claim for Relief (Duty to Defend)," because any duty to defend The Crosby in the state court lawsuit terminated when the plaintiff filed a second amended complaint. (ECF No. 72-1 at 5). Ironshore contends that it "is entitled to summary judgment on The Crosby's Second Claim for Relief [(Duty to Indemnify)]," because "[a]ll of the matters resolved by the settlement [of the state court lawsuit] . . . are uncovered matters excluded under the Ironshore Policy's express terms." (*Id.*). Ironshore further contends that it "is entitled to partial summary judgment on the basis that The Crosby cannot obtain damages in excess of the Ironshore Policy limits." (*Id.* at 6).

The Crosby contends that Ironshore is not entitled to partial summary judgment. The Crosby contends that Ironshore has failed to establish that the second amended complaint "lacked any potential for coverage," and the duty to defend "cannot be extinguished retroactively." (ECF No. 82 at 19; ECF No. 104 at 2). The Crosby contends that the settlement resolved covered claims. The Crosby contends that its damages are not capped at the Ironshore policy limits.

## III.   FACTS[3]

### a.   The Ironshore Insurance Policy

On June 30, 2017, Ironshore issued "Not-For-Profit Entity and Directors, Officers Liability Insurance Policy No. 002084803 to [The] Crosby, effective July 2, 2017 to July 2, 2018, providing . . . an aggregate liability limit of $1,000,000.00" ("Policy"). (ECF No. 72-2 ¶ 1). "The Policy defines 'Not-for-Profit Entity' and 'Insured' as The Crosby, and 'Insurer' as Ironshore." (*Id.* ¶ 2). The Policy provides coverage for "Claims" for "Wrongful Acts"—"civil . . . proceeding[s]" alleging any "act, omission, error, . . . neglect or breach of duty" by an Insured. (ECF No. 72-6 at 13, 16).

---

[3] The parties submitted evidentiary objections. (ECF Nos. 82-7, 84). The evidentiary objection are denied as moot, because this Order does not rely on the materials objected to by the parties.

The Policy provides that the Insurer is obligated to pay "Loss"—including damages, judgments, settlements, interest, legal fees, costs, and expenses—when a Claim for a Wrongful Act against an Insured is commenced during the Policy Period. (*Id.* at 12). The Insurer is not obligated to pay Loss for Claims that are excluded from coverage. The Policy excludes Claims based on contractual liability, Claims for property damage, and Claims that are related to prior Claims alleging acts or omissions occurring before July 2, 2014.

The Policy provides that "[t]he Insured and the Insurer shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered Loss" when a Claim made against an Insured "includes both covered and uncovered matters." (*Id.* at 20).

### b.  The 2015 Avaron Lawsuit

On August 4, 2015, The Crosby was sued by a neighboring homeowners association, the Avaron Community Association ("Avaron"), in *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association*, Case No. 37-2015-00026055-CU-MC-CTL (San Diego Super. Ct. 2015) ("2015 Avaron Lawsuit"). The complaint alleged that Avaron owns a portion of a private road named Bing Crosby Boulevard, that The Crosby has an easement over the portion of the road owned by Avaron, and that The Crosby breached its duties under the parties' written Easement Agreement to repair, maintain, and enforce speed limits on the road.

"In 2016, the Superior Court referred the matter to judicial referee, Hon. William J. Howatt Jr., who issued a report in 2016 finding, *inter alia*, that The Crosby has 'the responsibility and the duty to effectively, routinely, regularly enforce the 25 MPH speed limit . . . on . . . Bing Crosby Boulevard . . . .'" (ECF No. 72-2 ¶ 16 (alterations in original)). "The report was reduced to a judgment entered by the Superior Court." (*Id.*).

### c.  The 2018 Avaron Lawsuit

On May 25, 2018, The Crosby was sued by Avaron in *Avaron Community Association v. The Crosby Estate at Rancho Santa Fe Master Association, et al.*, Case No. 37-2018-00026012-CU-BC-NC (San Diego Super. Ct. 2018) ("2018 Avaron Lawsuit"). The original complaint alleged that The Crosby: (1) breached the parties' Easement

Agreement by removing speedbumps installed by Avaron on Bing Crosby Boulevard; (2) interfered with "the quiet use and enjoyment" of Avaron residents by instigating "Operation Honk," a coordinated effort in which residents of The Crosby repeatedly honked their car horns when they passed over speedbumps; and (3) intentionally destroyed and removed speedbumps to allow residents of The Crosby to "drive as fast as they can through the easement without regard for the safety or well being of the residents and guests in Avaron." (ECF No. 72-6 at 61-62).

On June 4, 2018, The Crosby tendered the defense of the 2018 Avaron Lawsuit to Ironshore. Ironshore denied The Crosby's request for a defense on July 13, 2018, and July 24, 2018, on the grounds that the complaint did not allege any covered claims. The Crosby requested reconsideration. On August 20, 2018, Ironshore sent a letter to The Crosby that stated, in relevant part:

> [A]s a courtesy to [The] Crosby, [Ironshore] hereby agrees to provide a defense to the [2018 Avaron] Lawsuit without prejudice to [Ironshore's] rights under the Policy. . . . [Ironshore] reserves all rights available under the applicable law and Policy, including but not limited to the right to . . . seek reimbursement of any defense costs, including but not limited to attorneys' fees, relating to non-covered claims.

(ECF No. 15-4 at 87, 93).

On September 18, 2018, Avaron filed a first amended complaint, adding allegations that The Crosby organized its residents "throwing food and trash from their cars." (ECF No. 15-4 at 101).

On May 30, 2019, Avaron filed a second amended complaint. The second amended complaint summarized the 2015 Avaron Lawsuit, the conclusions of the judicial referee, and the 2016 superior court judgment. The second amended complaint alleged that The Crosby's residents and guests

> are continuing to create safety issues by driving at excessive speed on [Bing Crosby Boulevard], and [The] Crosby is not carrying out its duty to effectively, routinely and regularly enforce the 25 mile per hour speed limit on Bing Crosby Boulevard. To the contrary, [T]he Crosby has actively

1
2

undertaken not to enforce the 25 mile per hour speed limit, including by seeking to prevent Avaron from converting the speed bumps into speed lumps.

3   (ECF No. 72-6 at 89-90).[4] The second amended complaint alleged claims against The

4   Crosby for: (1) breach of the Easement Agreement; (2) private nuisance; (3) public

5   nuisance; (4) declaratory relief; and (5) injunction. The second amended complaint sought

6   damages, including punitive damages; declaratory relief; injunctive relief, including an

7   injunction "prohibiting [The] Crosby and its members and those operating at its direction

8   from engaging in harassing behavior directed to Avaron or its residents, including but not

9   limited to Operation Honk and throwing food and trash from their cars;" and attorneys'

10  fees and costs. (*Id.* at 96).

11         On August 22, 2019, Avaron and The Crosby entered into an agreement to settle the

12  2018 Avaron Lawsuit.

13  **IV.    LEGAL STANDARD**

14         "A party may move for summary judgment, identifying each claim or defense—or

15  the part of each claim or defense—on which summary judgment is sought. The court shall

16  grant summary judgment if the movant shows that there is no genuine dispute as to any

17  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

18  56(a). A material fact is one that is relevant to an element of a claim or defense and whose

19  existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith*

20  *Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the

21  substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477

22  U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

23

24

―――――――――――――――

25  [4] Ironshore requests that the Court take judicial notice of the first amended complaint and the second

26  amended complaint filed in the 2018 Avaron Lawsuit. (ECF No. 72-5). The Crosby requests that the Court

    take judicial notice of the judgment in the 2015 Avaron Lawsuit. (ECF No. 82-3). The parties' requests

27  for judicial notice are granted. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th

    Cir. 2006) (explaining that it is appropriate to take judicial notice of court filings and other matters of

28  public record, such as pleadings in related litigation).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim." (citations omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

///

## V.   BREACH OF CONTRACT (DUTY TO DEFEND) – CLAIM 1

Ironshore asserts that it "is entitled to partial summary judgment on The Crosby's First Claim for Relief (Duty to Defend)" on the grounds that "the filing of the Second Amended Complaint [in the 2018 Avaron Lawsuit] released Ironshore from its defense obligations as of its filing." (ECF No. 72-1 at 5; ECF No. 83 at 11). Ironshore contends that it agreed to defend The Crosby subject to a reservation of rights, and California case law "authorize[s] insurers [who] advance defense costs subject to a reservation of rights to later recoup defense costs for claims later determined to be uncovered, including where an insurer defends until the end but, at some point, the complaint ceases to include any potentially covered claims." (ECF No. 103 at 6). Ironshore contends that the second amended complaint ceased to include any potentially covered claims, because: (1) the second amended complaint "dropped all 'noise' allegations relating to 'Operation Honk;'" and (2) all of the claims alleged in the second amended complaint are excluded from coverage by the Policy's breach of contract, property damage, and prior acts exclusions. (ECF No. 72-1 at 6).

The Crosby contends that Ironshore's "challenge to its duty to defend is effectively an improper motion for reconsideration," because the Court granted summary judgment in favor of The Crosby on the first claim for breach of contract (duty to defend) on November 3, 2020. (ECF No. 82 at 21 n.6). The Crosby contends that Ironshore's "attempt to extinguish its duty to defend" is improper, because "Ironshore failed to establish the absence of a potential for coverage prior to the conclusion of the underlying action[,] and the duty to defend cannot be extinguished retroactively." (ECF No. 104 at 2). The Crosby contends that the second amended complaint included potentially covered claims, because the second amended complaint alleged two nuisance claims, requested relief for Operation Honk, and included allegations not excluded by the Policy's breach of contract, property damage, and prior acts exclusions.

Where an insurance contract imposes a duty to defend on an insurer, the insurer "owes a broad duty to defend its insured against claims that create a potential for

8

indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993). "[T]he duty to defend is so broad that it only requires 'a bare potential or possibility of coverage as the trigger of a defense duty.'" *Nat'l Union Fire Ins. Co. v. Seagate Techs., Inc.*, 466 F. App'x 653, 655 (9th Cir. 2012) (quoting *Montrose*, 6 Cal. 4th at 300). "[T]he duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001). The duty to defend exists where, "under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005). The duty to defend arises on tender and

> is discharged when the action is concluded. It may be extinguished earlier, if it is shown that no claim can in fact be covered. If it is so extinguished, however, it is extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further.

*Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997); *see Scottsdale*, 36 Cal. 4th at 657 (the duty to defend lasts "until . . . the potential for coverage which previously appeared cannot possibly materialize, or no longer exists").

The California Supreme Court has held that "in a 'mixed' action, in which some of the claims are at least potentially covered and the others are not," the insurer "has a duty to defend the action in its entirety." *Buss*, 16 Cal. 4th at 48. The insurer's duty to defend the entire mixed action is justified, because the "plasticity of modern pleading[] allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa." *Id.* at 49. However, "the insurer has not been paid premiums by the insured [and] did not bargain to bear" defense costs for claims that are not even potentially covered. *Id.* at 51. Accordingly, the insurer "may seek reimbursement for defense costs . . . [a]s to the claims that are not even potentially covered" if the insurer reserves its right to reimbursement. *Id.* at 50.

1    In this case, the 2018 Avaron Lawsuit is a mixed action in which some of the claims
2    are at least potentially covered and others are not. (*See generally* ECF No. 37). On August
3    20, 2018, Ironshore agreed to provide a defense to The Crosby in the 2018 Avaron Lawsuit
4    and reserved its right to "seek reimbursement of any defense costs . . . relating to non-
5    covered claims." (ECF No. 15-4 at 93). The Court finds that Ironshore reserved the right
6    to seek reimbursement for defense costs paid for claims that lacked any potential for
7    coverage when the second amended complaint was filed on May 30, 2019. *See Buss*, 16
8    Cal. 4th at 52 (explaining that "[w]ithout a right of reimbursement [for uncovered defense
9    costs], an insurer might be tempted to refuse to defend an action in any part—especially an
10   action with many claims that are not even potentially covered and only a few that are—lest
11   the insurer give, and the insured get, more than they agreed").

12   On November 3, 2020, this Court issued an Order granting the Crosby's Motion for
13   Partial Summary Judgment on the first claim for breach of contract (duty to defend). (ECF
14   No. 37). The Court concluded that Ironshore breached the terms of the Policy by failing to
15   defend The Crosby from the date of The Crosby's June 4, 2018 tender. The Court analyzed
16   the allegations in the original complaint in the 2018 Avaron Lawsuit—the operative
17   complaint at the time of tender—including allegations that The Crosby interfered with "the
18   quiet use and enjoyment" of Avaron residents by instigating "Operation Honk," a
19   coordinated effort in which residents of The Crosby repeatedly honked their car horns when
20   they passed over speedbumps. (ECF No. 72-6 at 61). The Court determined that 2018
21   Avaron Lawsuit "is a Claim . . . for a Wrongful Act" under the terms of the Policy. (ECF
22   No. 37 at 16). The Court determined that Ironshore had a "duty to defend all claims asserted
23   in the [2018] Avaron Lawsuit," unless "all of the allegations in the [2018] Avaron Lawsuit
24   were barred by the Policy's exclusions at the time of tender." (*Id.* at 13-14, 16). The Court
25   rejected Ironshore's assertion that the noise allegations were excluded from coverage by
26   the Policy's pollution exclusion. The Court stated, in relevant part:

27       [A]t the time of tender, the [pollution] exclusion did not "plainly and clearly"
28       exclude coverage for the allegation that residents of The Crosby repeatedly

honked their car horns when they passed over speedbumps. . . . Construing the exclusions and ambiguities in the Policy in The Crosby's favor, the Court concludes that The Crosby has met its burden to demonstrate that the facts alleged in the [2018] Avaron Lawsuit complaint gave rise to at least one potentially covered claim at the time of tender, requiring Ironshore to immediately defend all claims asserted in the [2018] Avaron Lawsuit.

(*Id.* at 18-19).

The second amended complaint in the 2018 Avaron Lawsuit asserted two causes of action for nuisance and sought an injunction "prohibiting [The] Crosby and its members and those operating at its direction from engaging in harassing behavior directed to Avaron or its residents, including but not limited to Operation Honk." (ECF No. 72-6 at 96). The Court concludes that it is not clear that "the potential for coverage which previously appeared c[ould not] possibly materialize, or no longer exist[ed]" upon the filing of the second amended complaint. *Scottsdale*, 36 Cal. 4th at 657. Ironshore has failed to establish the absence of any potential for coverage at the time the second amended complaint was filed. *See Montrose*, 6 Cal. 4th at 300 (to prevail on a motion for summary judgment regarding the duty to defend, "the insurer must establish *the absence of any [] potential* [for coverage]. In other words, . . . the insurer must prove [that the underlying claim] *cannot*" fall within policy coverage). Ironshore is not entitled to partial summary judgment on the grounds that "the filing of the Second Amended Complaint [in the 2018 Avaron Lawsuit] released Ironshore from its defense obligations as of its filing." (ECF No. 83 at 11).

## VI.   BREACH OF CONTRACT (DUTY TO INDEMNIFY) – CLAIM 2

Ironshore asserts that it "is entitled to summary judgment on The Crosby's Second Claim for Relief [(Duty to Indemnify)]." (ECF No. 72-1 at 5). Ironshore contends that the allegations in the second amended complaint arose from The Crosby's destruction of Avaron's property and duties under the Easement Agreement and are excluded from coverage by the Policy's property damage and breach of contract exclusions. Ironshore contends that the "entire" 2018 Avaron Lawsuit is a single "Claim" related to the 2015

Avaron Lawsuit and excluded from coverage by the Policy's prior acts exclusion. (ECF No. 83 at 12). Ironshore contends that the Policy does not provide for indemnification of The Crosby's settlement payments, which were made to resolve uncovered claims in the second amended complaint. Ironshore contends that the Policy requires The Crosby to allocate settlement payments to covered claims, and The Crosby failed to do so.

The Crosby contends that the second amended complaint included two nuisance claims and a request for relief from Operation Honk, which did not arise out of the Easement Agreement and are not excluded by the Policy's property damage or breach of contract exclusions. The Crosby contends that the 2018 Avaron Lawsuit included several "claims within [the] lawsuit" that are not excluded by the Policy's prior acts exclusion. (ECF No. 82 at 21). The Crosby contends that it is entitled to indemnification, because the "Avaron Settlement, in part, resolved covered claims." (*Id.* at 12). The Crosby contends that Ironshore has the burden to demonstrate that the settlement payments resolved only uncovered claims to be entitled to summary judgment, and Ironshore failed to do so.

An insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved." *Buss*, 16 Cal. 4th at 46. "By definition, [the duty to indemnify] entails the payment of money in order to resolve liability." *Id.* The duty to indemnify "arises only after liability has been established." *Id.*; *see Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994) ("[A]n insured . . . has a duty to indemnify only where a judgment has been entered" against the insured "on a theory which is actually (not potentially) covered by the policy."). "By settling, [] the parties forgo their right to have liability established by a trier of fact, and the settlement becomes presumptive evidence of the [insured's] liability and the amount thereof, which presumption is subject to being overcome by proof." *Safeco Ins. Co. of Am. v. Superior Ct.*, 140 Cal. App. 4th 874, 880 (2006). An insurer has no obligation to pay money in a settlement of a uncovered claim. *See DeWitt v. Monterey Ins. Co.*, 204 Cal. App. 4th 233, 234 (2012).

In this case, the Policy provides that the Insurer is obligated to pay "all Loss which the Not-For-Profit shall be legally obligated to pay as a result of a claim . . . for a Wrongful

Act." (ECF No. 72-6 at 12). "Loss" includes "settlements" for which the Insured is financially liable. (*Id.* at 14). On August 22, 2019, Avaron and The Crosby entered into an agreement to settle the 2018 Avaron Lawsuit. The Settlement Agreement required The Crosby to make payments to Avaron to resolve the 2018 Avaron Lawsuit.[5] Pursuant to the plain language of the Policy, any settlement payments made by The Crosby to resolve covered claims in the 2018 Avaron Lawsuit are Loss for which Ironshore is required to indemnify The Crosby.

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured . . . ." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003*), as modified on denial of reh'g* (Sept. 17, 2003). The insurer bears the burden of proving that a claim is excluded from coverage. *See id.* at 638. "[E]xclusionary clauses are interpreted narrowly against the insurer." *Id.* (quoting *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)). The court "must attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language." *Id.* at 649. [T]he burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 201-02 (1973).

The "Exclusions" section of the Policy provides, in relevant part:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
> . . .
> (D) for any actual or alleged: . . . (2) damage to or destruction of any tangible property, including the loss of use thereof;
> . . .
> (N) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Not-For-Profit Entity or any Insured Person under any express contract or agreement.

---

[5] The Court granted the parties' requests to file documents under seal that identify the terms and conditions of the confidential settlement of the 2018 Avaron Lawsuit. (*See* ECF No. 93). The portions of the Settlement Agreement referenced in this Order provide information that is publicly available and not covered by this Court's sealing Order.

(ECF No. 72-6 at 17, 19).

At the time of the settlement, the second amended complaint was the operative complaint in the 2018 Avaron Lawsuit. The second amended complaint included two claims for nuisance and a request for an injunction "prohibiting [The] Crosby and its members and those operating at its direction from engaging in harassing behavior directed to Avaron or its residents, including but not limited to Operation Honk and throwing food and trash from their cars." (ECF No. 72-6 at 96). Avaron's request for relief from Operation Honk and throwing food and trash does not allege any damage to or destruction of tangible property. Avaron's request for relief from Operation Honk and throwing food and trash could exist irrespective of the Easement Agreement between the parties. *See Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 831 (2006) (in applying a breach of contract exclusion to non-contract claims, the relevant consideration is whether the claims would exist without the relevant underlying contracts). The Court concludes that Ironshore has failed to meet its burden to show that all of the "theor[ies]" in the second amended complaint are excluded from coverage by the Policy's property damage and breach of contract exclusions. *Collin*, 21 Cal. App. 4th at 803 ("[A]n insured . . . has a duty to indemnify" on "a theory" that is actually covered by the policy).

The Policy further provides:

> [T]he Insurer shall not be liable to make any payment for Loss in connection with any Claim alleging, arising out of, based upon or attributable to any Wrongful Act prior to July 2, 2014. Loss arising out of the same Wrongful Act or Related Wrongful Acts shall be deemed to arise from the first such same Wrongful Act.

(ECF No. 72-6 at 54). "Related Wrongful Acts" are "Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts." (*Id.* at 15).

The California Court of Appeal has explained that the term "Claim" as used in an exclusions section of an insurance policy "does not mean 'entire action,' but is in fact limited to the relevant claims within the action.'" *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal.

App. 4th 232, 261 (2012) (explaining that interpreting the term "Claim" to mean "entire action," rather than specified acts "that are actually excluded," would "result in numerous unreasonable interpretations" of the policy's exclusions); *see also Millennium Labs. v. Allied World Assur. Co.*, 726 F. App'x 571, 574-75 (9th Cir. 2018) (explaining that a Department of Justice investigation did not constitute a single "claim," and the investigation was properly viewed as multiple claims, one for each alleged "wrongful act," "error, or omission"). The second amended complaint in the 2018 Avaron Lawsuit alleged several claims, including two claims for nuisance, and included a request for relief from Operation Honk. The complaint in the 2015 Avaron Lawsuit alleged that "[d]uring the last four (4) years, [The] Crosby has repeatedly and continuously breached the Easement Agreement" by failing to enforce the posted speed limit and stop signs on the shared portion of Bing Crosby Boulevard. (ECF No. 72-6 at 103-04). There were no allegations in the 2015 Avaron Lawsuit regarding noise or throwing food and trash. The Court concludes that Ironshore has failed to meet its burden to show that all of the "theor[ies]" in the second amended complaint are excluded from coverage by the Policy's prior acts exclusion. *Collin*, 21 Cal. App. 4th at 803. The Policy's definition of a "Claim" as a "civil . . . proceeding" does not change this result. ECF No. 72-6 at 13; *see Health Net*, 206 Cal. App. 4th at 261. Ironshore has failed to demonstrate that all of the claims in the second amended complaint are excluded from coverage.[6]

Generally, "[t]he burden rests on the insured initially to show that at least a portion of the settlement involved compensation for damages attributable to claims that were covered by the insurance policy. Once the insured has satisfied that burden, the burden of proof shifts to the insurer to show what portion of the settlement is attributable to covered claims." *Peterson Tractor Co v. Travelers Indem. Co.*, 156 F. App'x 21, 24 (9th Cir. 2005);

---

[6] For the same reasons, the Policy's breach of contract, property damage, and prior acts exclusions did not eliminate any potential for coverage upon the filing of the second amended complaint.

*see Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 566 (1970). The Settlement Agreement between Avaron and The Crosby stated, in relevant part:

> WHEREAS, on May 25, 2018, Avaron filed a lawsuit captioned *Avaron Community Association vs. The Crosby Estate at Rancho Santa Fe Master Association* [San Diego] Superior Court Case No. 37-3018-00026012-CU-BC-NC alleging breach of contract, nuisance and destruction of property [the "Lawsuit"];
>
> . . .
>
> WHEREAS, on September 18, 2018, Avaron filed a First Amended Complaint alleging breach of contract, private nuisance, public nuisance and declaratory relief;
>
> . . .
>
> WHEREAS, on May 30, 2019, Avaron filed a Second Amended Complaint removing certain allegations from its F[irst] Amended Complaint;
>
> Now subject to the terms and conditions below, the Parties wish to settle the Lawsuit and each claim raised by the respective Parties under the terms described herein.

(ECF No. 94 at 5-6). The Settlement Agreement required The Crosby make payments to Avaron.

The Settlement Agreement is "presumptive evidence of the [insured's] liability and the amount thereof . . . ." *Safeco*, 140 Cal. App. 4th at 880. The Settlement Agreement agreed to settle the "Lawsuit," which is defined as "the lawsuit captioned *Avaron Community Association vs. The Crosby Estate at Rancho Santa Fe Master Association* [San Diego] Superior Court Case No. 37-3018-00026012-CU-BC-NC alleging breach of contract, nuisance and destruction of property." (ECF No. 94 at 5). The Settlement Agreement did not limit the settlement to claims asserted in the second amended complaint and did not attribute any settlement payment to any particular claim. The original complaint alleged that The Crosby interfered with Avaron residents' quiet use and enjoyment by instigating Operation Honk and sought relief for that claim. The second amended complaint continued to request an injunction for Operation Honk, supporting an inference that Avaron sought relief from The Crosby for that alleged behavior. The Court concludes that The

Crosby has met its burden to make a prima facie showing that the settlement included compensation for claims that were covered by the Policy. Ironshore has failed to meet its burden to demonstrate that the settlement did not include compensation for claims that were covered by the Policy.

The Policy further provides:

> If a Claim made against any Insured includes both covered and uncovered matters, or is made against any Insured and others not insured, the Insured and the Insurer recognize that there must be an allocation between covered and uncovered Loss. The Insured and the Insurer shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered Loss, taking into account the relative legal and financial exposures, and the relative benefits obtained by each Insured as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure. If the Insured and the Insurer are not able to come to some agreement regarding the amount of the allocation, then the Insurer shall pay only those amounts, excess of the applicable retention amount, which the Insurer deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and the above standards.

(ECF No. 72-6 at 20). In *Safeway Stores v. National Union Fire Insurance Co.*, the Court of Appeals for the Ninth Circuit explained that this language requiring the parties to "use their best efforts to determine a fair and proper allocation" of the settlement "is not mandatory." 64 F.3d 1282, 1289 (9th Cir. 1995). The Court explained that this language "requires an allocation *analysis*, but not necessarily an allocation," and does not circumvent the burden framework. *Id*. Ironshore is not entitled to summary judgment on "The Crosby's Second Claim for Relief [(Duty to Indemnify)]." (ECF No. 72-1 at 5).

## VII.   DECLARATORY RELIEF

Ironshore contends that it is "entitled to partial summary judgment on the basis that The Crosby cannot obtain damages in excess of the Ironshore Policy limits." (ECF No. 72-1 at 6). The Crosby contends that its damages are not capped at the Policy limits, and the damages limit issue "will become moot if The Crosby prevails on its bad faith claim." (ECF No. 95 at 30).

17

Courts have discretion in deciding whether to entertain declaratory judgments. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44 (9th Cir. 1994). Section 3300 of the California Civil Code provides that the measure of damages for breach of contract is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. The California Supreme Court has held that "[i]t is clear that section 3300 of the Civil Code authorizes a recovery in excess of the policy limits" of an insurance contract. *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 661 (1958); *see also State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 9 Cal. App. 3d 508, 529 (1970) ("[D]amages for breach of the duty to defend are not inexorably imprisoned within the policy limit but are measured by the consequences proximately caused by the breach."). The Court cannot conclude that this stage in the litigation that The Crosby cannot obtain damages in excess of the Policy limits. The Court declines to issue the requested declaration.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that Ironshore's Motion for Partial Summary Judgment (ECF No. 72) is denied.

IT IS FURTHER ORDERED that The Crosby's Motion to Limit Testimony of Defendant's Expert Witness (ECF No. 71) is denied without prejudice.

IT IS FURTHER ORDERED that this case is referred to the Magistrate Judge for scheduling consistent with Civil Local Rule 16.1. (*See* ECF No. 86 (vacating Final Pretrial Conference); ECF No. 91 (vacating pretrial filing deadlines)).

Dated: January 6, 2022

Hon. William Q. Hayes
United States District Court